COPY

1    CHRISTOPHER H. McGRATH (SB# 149129)
     chrismcgrath@paulhastings.com
2    OLEG CROSS (SB# 246680)
     olegcross@paulhastings.com
3    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     3579 Valley Centre Drive
4    San Diego, CA 92130
     Telephone: (858) 720-2500
5    Facsimile: (858) 720-2555

6    THOMAS A. ZACCARO (SB# 183241)
     thomaszaccaro@paulhastings.com
7    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     515 South Flower Street, Twenty-Fifth Floor
8    Los Angeles, CA 90074-2228
     Telephone: (213) 683-6000
9    Facsimile: (213) 627-0705

10   EDWARD HAN (SB# 196924)
     edwardhan@paulhastings.com
11   PAUL, HASTINGS, JANOFSKY & WALKER LLP
     55 Second Street, 24th Floor
12   San Francisco, CA 94105
     Telephone: (415) 856-7000
13   Facsimile: (415) 856-7100

14   *Attorneys for Defendant VeriSign, Inc.*

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18

19   THOMAS MYKITSHYN, Individually          Civil Action No. _____
     and On Behalf of All Others Similarly
20   Situated,
                                             State Case No. 1-07-CV-085890
21              Plaintiff,

22        vs.                                CLASS ACTION

23   D. JAMES BIDZOS, WILLIAM L.             **DECLARATION OF OLEG CROSS IN**
     CHENEVICH, DAVID J. COWAN,              **SUPPORT OF DEFENDANT VERISIGN,**
24   MICHELLE GUTHRIE, SCOTT G.              **INC.'S NOTICE OF REMOVAL OF**
     KRIENS, LEN J. LAUER, ROGER H.          **ACTION**
25   MOORE, EDWARD A. MUELLER,
     GREGORY L. REYES, WILLIAM A.
26   ROPER, JR., STRATTON D. SCLAVOS,
     LOUIS A. SIMPSON, VERISIGN, INC.,
27
                Defendants.
28

     Case No. _____

                                      CROSS DECLARATION ISO
                                   NOTICE OF REMOVAL OF ACTION

ORIGINAL
FILED
JUN 2 5 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
E-filing

RMW
HRL

C 07 3332

1    I, Oleg Cross, hereby state:

2       I am an attorney at law, licensed to practice before this Court and all courts of the State of

3    California. I am associated with the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel

4    of record for VeriSign, Inc. ("VeriSign"), Defendant in the above-captioned matter. I make this

5    declaration in support of the Notice of Removal pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2),

6    and 28 U.S.C. §§ 1441(a) and (b) and 1446, removing this action from the Superior Court of the

7    State of California, County of Santa Clara, in which the action is currently pending, to the United

8    States District Court for the Northern District of California.

9       1.    On May 15, 2007, Plaintiff filed a Class Action Complaint for Breaches of

10   Fiduciary Duty ("Complaint") in the Superior Court of the State of California, County of Santa

11   Clara, in the matter captioned *Mykityshyn v. Bidzos, et al.*, 1-07-CV-0855890. Attached hereto as

12   Exhibit A is a true and correct copy of the Complaint. Attached hereto as Exhibit B is a true and

13   correct copy of the Civil Case Cover Sheet and Civil Lawsuit Notice. Attached hereto as Exhibit

14   C is a true and correct copy of the Summons. Attached hereto as Exhibit D is a true and correct

15   copy of the Proof of Service of Summons on Defendant VeriSign, Inc.

16      2.    On June 22, 2007, VeriSign filed an Answer to Plaintiff's Complaint. Attached

17   hereto as Exhibit E is a true and correct copy of VeriSign's Answer to Plaintiff's Complaint.

18      3.    Other than VeriSign, none of the Defendants named in the Complaint have been

19   served. Attached hereto as Exhibit F is a true and correct copy of the docket in the matter

20   *Mykityshyn v. Bidzos, et al.*, 1-07-CV-0855890, which reflects that, as of this date, VeriSign is the

21   only Defendant to have been served. Furthermore, VeriSign has contacted all of the other

22   Defendants named in the Complaint, and all of the Defendants who responded to VeriSign's

23   inquiry confirmed that they have not been served.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

-1-

Case No. _____

1    4.    On June 25, 2007, the above-captioned case was determined to be complex within

2    the meaning of California Rules of Court 3.400.  Attached hereto as Exhibit G is a true and

3    correct copy of Order Deeming Case Complex.

4    I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct and that I have executed this Declaration on the 25th day of June,

6    2007 at San Diego, California.

7

8    By: _Oleg Cross_____

9    OLEG CROSS

10   LEGAL_US_W # 56514406.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. _____        -2-        CROSS DECLARATION ISO
NOTICE OF REMOVAL OF ACTION

# EXHIBIT A

# EXHIBIT A

1   Patrice L. Bishop (182256)
    STULL, STULL & BRODY
2   10940 Wilshire Boulevard
    Suite 2300
3   Los Angeles, CA  90024
    Tel:    (310) 209-2468
4   Fax:    (310) 209-2087

5   [Additional Counsel Appear
    on Signature Page]

6
    Counsel for Plaintiff
7

**UCS**

FILED  Santa Clara Co
05/15/07   3:44pm
Kiri Torre
Chief Executive Offic
By: ssancayco DTSCIVD
R#200700048119
CK              $870.00
TL              $870.00
Case: 1-07-CV-085890

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  FOR THE COUNTY OF SANTA CLARA

12

13   THOMAS MYKITYSHYN, on Behalf of        )    FILE VIA FAX
     Himself and All Others Similarly Situated, )
14                                          )    CASE NO. 107  CV085890
                     Plaintiff,             )
15                                          )    CLASS ACTION
            v.                              )
16                                          )    COMPLAINT FOR BREACHES OF
     D. JAMES BIDZOS,                       )    FIDUCIARY DUTY
17   WILLIAM L. CHENEVICH,                  )
     DAVID J. COWAN,                        )    JURY TRIAL DEMANDED
18   MICHELLE GUTHRIE,                      )
     SCOTT G. KRIENS,                       )
19   LEN J. LAUER,                          )
     ROGER H. MOORE,                        )
20   EDWARD A. MUELLER,                     )
     GREGORY L. REYES,                      )
21   WILLIAM A. ROPER, JR.,                 )
     STRATTON D. SCLAVOS,                   )
22   LOUIS A. SIMPSON,                      )
     VERISIGN, INC.,                        )
23                                          )
                     Defendants.            )
24

25

26

27

28

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

1    Plaintiff, through his attorneys, brings this Complaint against defendant VeriSign, Inc.

2    ("VeriSign" or the "Company") and certain directors of the Company, alleges on personal

3    knowledge as to his self and his activities, and on information and belief as to all other matters,

4    based on investigation and discovery conducted by counsel:

5                                              SUMMARY

6        1.    This is a shareholders' action on behalf of all individuals who owned VeriSign

7    common stock between April 3, 2002 and August 9, 2006, alleging that certain current and former

8    officers and members of its Board of Directors (the "Board") breached their fiduciary duties when

9    they failed to inform shareholders that they had issued backdated VeriSign stock options to certain

10   senior executives.

11       2.    VeriSign, a publicly traded company whose common stock is traded on Nasdaq

12   under the ticker symbol "VRSN," develops and markets high-performance digital audio and video

13   imaging applications for purchase by original equipment manufacturers of digital televisions, DVD

14   products, digital cameras, digital printing, multimedia phones and IP cores.

15                                            JURISDICTION

16       3.    This Court has jurisdiction over the subject matter of this action pursuant to the

17   California Constitution Article VI, Section 10, because the case is an action not given by statute to

18   other trial courts.

19       4.    Venue is proper in this County under Section 395(a) of the California code of Civil

20   Procedure in that some or all of the Individual Defendants reside in this County.

21                                              PARTIES

22       5.    Plaintiff Thomas Mykityshyn owned 100 shares of VeriSign common stock between

23   April 3, 2002 and August 9, 2006.

24       6.    Defendant D. James Bidzos ("Bidzos") has served as Vice Chairman of the Board of

25   VeriSign since December 2001. He served as the Company's Chairman of the Board from April

26   1995 until December 2001, and as CEO from April 1995 to July 1995. During all relevant times

27   herein, defendant Bidzos served on the Compensation Committee. Upon information and belief,

28   defendant Bidzos is a resident of the State of California.

                                                    2

7.    Defendant William Chenevich ("Chenevich") has been a member of the Board of Directors since the Company's founding in 1995. He has been a member of the Compensation Committee for the period 1999 through 2002. Upon information and belief, defendant Chenevich resides in Wisconsin.

8.    Defendant David J. Cowan ("Cowan") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein. Upon information and belief, defendant Cowan resides in California.

9.    Defendant Michelle Guthrie ("Guthrie") has been a member of the Board of Directors since December 2005. Upon information and belief, defendant Guthrie resides in Asia.

10.    Defendant Scott G. Kriens ("Kriens") has been a member of the Board of Directors since January 2001. He was a member of the Compensation Committee in 2001 and 2002. Defendant Kriens is the Chairman and CEO of Juniper Networks, a company that is also under investigation for backdating of its options to top executives. Upon information and belief, defendant Kriens resides in California.

11.    Defendant Len J. Lauer ("Lauer") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein.

12.    Defendant Roger H. Moore ("Moore") has been a member of the Board of Directors since February 2002, and served on its Compensation Committee in 2002. Upon information and belief, defendant Moore is a resident of the State of California.

13.    Defendant Edward A. Mueller ("Mueller") has been a member of the Board of Directors since March 2005.

14.    Defendant Gregory L. Reyes ("Reyes") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein. Upon information and belief, defendant Reyes is a resident of the State of California.

15.    Defendant William A. Roper, Jr. ("Roper") has been a member of the Board of Directors since November 2003. Upon information and belief, defendant Roper is a resident of the State of California.

3

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

16.    Defendant Stratton D. Sclavos ("Sclavos") has served as President, Chief Executive Officer and a director of VeriSign since July 1995, and became Chairman of the Board of Directors in December 2001. He was also member of the Compensation Committee for all relevant times herein. Upon information and belief, defendant Sclavos is a resident of the State of California.

17.    Defendant Louis A. Simpson ("Simpson") has been a member of the Board of Directors since May 2005, and is currently the is Chair of the Compensation Committee.

18.    Defendant VeriSign is a Delaware corporation with its executive offices and principal place of business located at 487 East Middlefield Road, Mountain View, California 94043.

19.    Defendants Bidzos, Chenevich, Cowan, Guthrie, Kriens, Lauer, Moore, Mueller, Reyes, Roper, Sclavos and Simpson are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.    Each Individual Defendant owed VeriSign and its public shareholders the duty to exercise due care, loyalty and good faith in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing, reckless or grossly negligent and culpable violation of their obligations as directors and/or officers of VeriSign, the absence of good faith on their part and a reckless disregard for their duties to the Company and its shareholders, all of which the Individual Defendants were aware or should have been aware, presented a risk of, and in fact did cause, serious injury to the Company.

21.    By reason of their positions as officers, directors, and fiduciaries of VeriSign and its shareholders and because of their ability to control the business and corporate affairs of VeriSign, the Individual Defendants owed VeriSign and its shareholders fiduciary obligations of trust, good faith, loyalty, and due care, and were and are required to use their utmost ability to control and manage VeriSign in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of VeriSign and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit.

4

22.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of VeriSign, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

23.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of VeriSign, and was at all times acting within the course and scope of such agency.

24.    To discharge the aforesaid duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial affairs of VeriSign. The Individual Defendants were required, among other things, to: in good faith manage, conduct, supervise and direct the business and affairs of VeriSign carefully and prudently and in accordance with all applicable laws, rules and regulations; neither violate nor knowingly permit any officer, director, employee or agent of VeriSign to violate applicable federal and state laws, rules and regulations or any rule or regulation of VeriSign; exercise reasonable control and supervision over the officers and employees and agents of VeriSign; remain informed as to the status of VeriSign's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with federal and state securities laws, supervise the preparation, filing and/or dissemination of any SEC filings, press releases, audits, reports or other information required by law, and examine and evaluate any reports or examinations, audits, or other financial information concerning the financial condition of VeriSign; maintain and implement an adequate system of internal financial, accounting and management information systems and controls; and ensure that VeriSign's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

25.    Because of their Board membership and/or executive and managerial positions with VeriSign and their access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and their receipt of reports and other information

5

1   provided to them in connection therewith, each of the Individual Defendants had access to

2   undisclosed information about VeriSign's business prospects, financial condition, performance,

3   accounting and revenue recognition practices, as alleged herein.

4                              **CLASS ACTION ALLEGATIONS**

5          26.      Plaintiffs bring this action pursuant to §382 of the California Code of Civil

6   Procedure on his own behalf and as a class action on behalf of all holders of VeriSign common

7   stock, who are being and will be harmed by defendants' actions described below (the "Class").

8   Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other

9   entity related to or affiliated with any defendants.

10         27.      This action is properly maintainable as a class action because:

11              a.    The class is so numerous that joinder of all members is impracticable.  There

12                    are millions of VeriSign stock issued and outstanding.  The shares trade on

13                    the Nasdaq National Market under the ticker symbol "VRSN", and thousands

14                    of VeriSign stockholders of record are located throughout the United States;

15              b.    There are questions of law and fact which are common to the Class, including

16                    whether the defendants have engaged or are continuing to act in a manner

17                    calculated to benefit themselves at the expense of VeriSign's minority

18                    stockholders and whether Plaintiff and other members of the Class would be

19                    irreparably damaged if the defendants are not enjoined in the manner

20                    described below;

21              c.    The defendants have acted or refused to act on grounds generally applicable

22                    to the Class thereby making appropriate final injunctive relief with respect to

23                    the Class as a whole;

24              d.    Plaintiff is committed to prosecuting this action and has retained competent

25                    counsel experienced in litigation of this nature.  The claims of Plaintiff are

26                    typical of the claims of the other members of the class and Plaintiff has the

27                    same interest as the other members of the Class. Accordingly, Plaintiff is an

28

6

**COMPLAINT FOR BREACHES OF FIDUCIARY DUTY**
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

1    adequate representative of the Class and will fairly and adequately protect the

2    interests of the Class; and

3        e.    Plaintiff anticipates that there will be no difficulty in the management of this

4    litigation as a class action.

5    28.    For the reasons stated herein, a class action is superior to other available methods for

6    the fair and efficient adjudication of this controversy.

7    <u>SUBSTANTIVE ALLEGATIONS</u>

8    <u>Background</u>

9    29.    Stock options give employees of a publically traded company the right to purchase

10    company stock at a fixed price in the future.  The general policy behind a grant of stock options is to

11    link employees' compensation to the value of the company's shares and, therefore, to the wealth of

12    the company's shareholders.  Typically, the options' fixed price is aligned with the price of the stock

13    on the day of the grant.  If the stock price rises from the fixed grant price the employee profits by

14    exercising the options and selling the shares.  In contrast, backdated stock options allow the

15    employees of a publically traded company, such as VeriSign, to maximize their wealth at the

16    expense of its shareholders.

17    30.    During relevant times herein, VeriSign had two stock option plans, the 1998 Equity

18    Incentive Plan and the 1998 Directors Plan (the "Option Plans").  The Option Plans covered both

19    Incentive Stock Options, which were granted to employees, and Non-Statutory Stock Options,

20    which were granted to employees, directors and consultants.  According to the company's Definitive

21    Proxies filed with the Securities and Exchange Commission ("SEC") on April 22, 1999, April 12,

22    2001 and April 3, 2002, April 16, 2003, April 26, 2004, April 26, 2005 and April 10, 2006, the

23    Compensation Committee "determines the persons who are to receive the Awards, and the number

24    of shares subject to each such Award.  The Compensation Committee has the authority to construe

25    and interpret any of the provisions of the 1998 Equity Incentive Plan or any Awards granted

26    thereunder."  The Option Plans require that the exercise price of all incentive stock options granted

27    "must be at least equal to the fair market value of the common stock on the date of the grant."

28

7

31.    The 1998 Directors Plan, adopted by the board in October 1997 and approved by shareholders in January 1998, reserved 125,000 Company shares for distribution to members of the Board. Under the plan, each director is to receive the option to purchase 15,000 VeriSign shares on the date they become a member of the Board (the "Initial Grant") and an additional 7,500 shares on each of their Initial Grant anniversary dates thereafter.

32.    The 1998 Equity Incentive Plan, also adopted by the board in October 1997 and approved by shareholders in January 1998, reserved 2,000,000 VeriSign shares for distribution to Company employees, officers, directors and consultants. In addition, all shares issued under the 1995 and 1997 equity plans were transferred to the 1998 Equity Incentive Plan. According to the Definitive Proxy filed with the SEC on Form DEF 14A on May 27, 1999 (the "1999 Definitive Proxy"), as of December 31, 1998, defendants had granted options to purchase 2,187,456 shares of common stock under the 1998 Equity Incentive Plan and 268,221 shares remained for distribution.

33.    In March 1999, the Board approved an amendment to increase the shares to be issued under the 1998 Equity Incentive Plan by an additional 2,000,000 shares. Moreover, via the 1999 Definitive Proxy, the Board requested that shareholders, *inter alia*, approve the 2,000,000 share increase already approved by the directors. The 1999 Definitive Proxy stated:

> The Board believes that the increase in the number of shares reserved under the Equity Incentive Plan proposed by this amendment is **necessary in order to enable VeriSign to continue to use the grant of stock options and other Awards to retain and attract qualified employees** and to also encourage stock ownership by Equity Incentive Plan participants, thereby aligning their interests with those of VeriSign's stockholders.

(Emphasis Added.)

34.    The 1999 Definitive Proxy also provided a table setting forth the option grants issued during the fiscal year ended December 31, 1998. A footnote associated with and directly below the table stated:

> The exercise price and number of options to be granted in the future under the Equity Incentive Plan is unknown, as the exercise price **will be equal to fair market value on the date of grant**, and option grants are made at the discretion of the Compensation Committee.

(Emphasis Added.)

8

35.    According to the 2003 Proxy, defined *supra*, in March 2000 the Board adopted, and in June 2000 the shareholders approved, a reservation of an additional 250,000 shares to be issued to the Directors under the 1998 Directors Plan.

36.    On April 12, 2001, the defendants filed another proxy with the SEC on Form DEF 14A (the "2001 Definitive Proxy") requesting shareholders approve certain directors for election/reelection to the Board and, *inter alia*, approve an amendment to the 1998 Equity Incentive Plan. According to the 2001 Definitive Proxy, the Individual Defendants had already approved the amendment authorizing another 8,000 VeriSign shares for issuance to Company employees, officers, directors and/or consultants, and now needed the shareholders to also approve the amendment. As with the prior definitive proxies filed by the Company, defendants once again erroneously claimed that "the exercise price [of options issued] will be equal to the fair market value on the day of the grant."

37.    Defendants again requested VeriSign shareholders approve another an amendment to the 1998 Equity Incentive Plan through a proxy filed with the SEC on Form DEF 14A (the "2002 Definitive Proxy") on April 3, 2002. According to the 2001 Definitive Proxy, the Individual Defendants had approved another 10,000,000 VeriSign shares for issuance to Company employees, officers, directors and/or consultants. The amendment also increased the number of options an eligible person could receive under the plan to 1,500,000 shares in the aggregate in any calendar year. Prior to this amendment, a new employee could receive up to 1,000,000 shares during their first year of employment and all other eligible persons could receive up to 4,000,000 shares in the aggregate during any calendar year.

38.    As with the prior definitive proxies filed by the Company, the 2002 Definitive Proxy once again erroneously claimed that "the exercise price will be equal to the fair market value on the day of the grant."

39.    Defendants requested VeriSign shareholders approve an amendment to the 1998 Directors Plan through a proxy filed with the SEC on Form DEF 14A (the "2003 Definitive Proxy") on April 16, 2003. The amendment, approved by the directors in February 2003, called for an additional 500,000 shares to be issued under the 1998 Directors Plan.

9

40.    On April 26, 2004, the defendants filed another proxy with the SEC on Form DEF 14A (the "2004 Definitive Proxy"). The 2004 Definitive Proxy emphasized that the "option grants under the 1998 Directors Plan are automatic and nondiscretionary, and the exercise price of the options is 100% of the fair market value of the common stock on the date of grant." The 2004 Definitive Proxy also repeatedly stated that options granted under the 1998 Equity Incentive Plan were also issued at the fair market value on the date of the grant.

41.    On April 26, 2005, the defendants filed a proxy with the SEC on Form DEF 14A (the "2005 Definitive Proxy") which again requested that shareholders approve an amendment to the 1998 Directors Plan. This amendment requested shareholders vote "to increase the size of initial option grants and annual option grants to non-employee directors to 50,000 shares and 25,000 shares, respectively." The 2005 Definitive Proxy again emphasized that the "option grants under the 1998 Directors Plan are automatic and nondiscretionary, and the exercise price of the options is 100% of the fair market value of the common stock on the date of grant."

42.    On April 10, 2006, the Individual Defendants filed another proxy with the SEC on Form DEF 14A (the "2006 Definitive Proxy"). In the 2006 Definitive Proxy, in addition to outlining options granted over the prior year and requesting shareholders vote for certain of directors, the Individual Defendants also requested shareholders approve the VeriSign 2006 Equity Incentive Plan (the "2006 Plan"). The 2006 Plan was to designed to replace the 1998 Directors Plan, the 1998 Equity Incentive Plan, and the 2001 Stock Incentive Plan. Under the plan, the Individual Defendants requested shareholders approve a reservation of 27,000,000 shares to be distributed under the plan. Moreover, if approved, the 2006 Plan would provide members of the board with the "ability to utilize various equity awards, including stock options, restricted stock awards, restricted stock units, stock appreciation rights and stock bonus awards, as deemed appropriate by the compensation committee and management." According to the 2006 Definitive Proxy:

> The exercise price of stock options or stock appreciation rights granted under the 2006 Plan may not be less than 100% of the closing price of VeriSign stock on the day of grant. In the event a grant is made on a day when the Nasdaq National Market (or other applicable principal national securities exchange on which VeriSign's common

10

1  stock is traded) is closed, the fair market value will be determined as
2  of the next trading day. On December 31, 2005, the last sale price of
   VeriSign's common stock was $21.90 per share as reported by the
3  NASDAQ National Market.

4  **Backdated Stock Options at VeriSign**

5  43.  From 1998 to 2002, the Individual Defendants repeatedly granted themselves and the

6  certain officers of the Company backdated stock options, in violation of their fiduciary duties owed

7  to the Company. The Company's backdating practice is evidenced by the revealing pattern outlined

8  below. For example:

9  a.  On October 30, 1998, defendants Sclavos, Gallivan, Yanowitch, Evan and

10     Shaeffer were purportedly granted 100,000, 45,000, 45,000, 60,000, and

11     90,000 VeriSign shares, respectively, at an exercise price of $30.69 per share.

12     A mere month later, the Company's stock price was trading at $40.12 per

13     share, resulting in a substantial rise in the value of the options;

14  b.  On December 15, 1998 and December 18, 1999, defendant Sclavos was

15     purportedly granted 100,000 VeriSign shares at an exercise price of $49.25

16     per share and 200,000 VeriSign shares at an exercise price of $51.13 per

17     share, respectively. Approximately one later, the Company's stock price was

18     trading at $88.62 per share, resulting in a substantial rise in the value of the

19     options;

20  c.  On August 1, 2000, defendants Gallivan, Evan, and Keith were purportedly

21     granted 125,000, 125,000 and 50,000 VeriSign shares at an exercise price of

22     $151.25, respectively.  A mere month later, the Company's stock price was

23     trading at $198.88, resulting in a substantial rise in the value of the options;

24  d.  On March 15, 2001, defendant Evan was purportedly awarded 40,000

25     VeriSign shares and defendants Gallivan, Korzeniewski and Pereira were

26     purportedly awarded each granted 35,000 VeriSign shares at an exercise price

27     of $34.44. A month later, the Company's stock price was trading at $47.00,

28     resulting in a substantial rise in the value of the options;

11

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

e.   On September 6, 2001, defendants Evan, Gallivan, and Korzeniewski were purportedly each granted 90,000 shares and defendant Pereira was purportedly granted 50,000 at an exercise price of $34.16. Approximately a month later, the Company's stock price was trading at $47.80, resulting in a substantial rise in the value of the options.

**Defendants Begin to Reveal the Truth**

44.   On June 27, 2006, the Defendants filed a Form 8-K with the SEC. The accompanying press release which was disseminated to the investing public stated:

> On June 26, 2006, VeriSign, Inc. received a grand jury subpoena from the U.S. Attorney for the Northern District of California requesting documents relating to VeriSign's stock option grants and practices. VeriSign intends to cooperate fully with the U.S. Attorney's Office in connection with this subpoena.
>
> VeriSign has also received an informal inquiry from the Securities and Exchange Commission requesting documents related to VeriSign's stock option grants and practices. VeriSign is voluntarily responding to this request and intends to cooperate fully with the Securities and Exchange Commission.
>
> Prior to receiving either of these requests, VeriSign's Board of Directors had commenced an internal review and analysis of VeriSign's historical stock option grants. This internal review is continuing. The Board of Directors is being assisted in its review by independent legal counsel.

45.   Prior to this announcement, the investing public had no information that Defendants had backdated stock options at the expense of the Class. As a result of the announcement, VeriSign's stock price began to steadily decline.

46.   On August 2, 2006, the Company filed an 8-K with the SEC which stated:

> VeriSign, Inc., a Delaware corporation (the "Company"), announced that Len J. Lauer and Gregory L. Reyes have resigned from the Company's Board of Directors, effective July 31, 2006. Mr. Lauer and Mr. Reyes were members of the Compensation Committee of the Board; Michelle Guthrie and Edward A. Mueller have been appointed to the Compensation Committee effective August 1, 2006. Neither Mr. Lauer's nor Mr. Reyes' resignation from the Board of Directors involved any disagreement with the Company.

47.   On August 3, 2006, the Company's stock hit a low of $15.95, a drop of $6.83 from the stock's June 27, 2006 closing price of $22.78.

12

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

48. On August 9, 2006, the Company acknowledged that it could not meet its financial obligations when it filed a Form 12b-25, Notice of Inability to Timely File 10-Q, with the SEC. The Notice stated:

> VeriSign, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2006 ("Form 10-Q") by the prescribed due date of August 9, 2006. The Company announced on June 27, 2006 that its Board of Directors has commenced an independent review of VeriSign's historical stock option grants. The Board of Directors is being assisted in its independent review by independent legal counsel. Until this independent review is completed, the Company will not be able to file its Form 10-Q. The Company intends to file the Form 10-Q as promptly as practicable after completion of the independent review, but does not expect that such filing will be made by August 14, 2006, the extended deadline.

49. On that same day, the Company also filed an 8-K and Press Release outlining the Company's delay of its 8-K filing. The Company's stock price closed at $17.46 on August 9, 2006, a drop of $5.32 from the stock's June 26, 2006 closing price of $22.78.

**Ongoing Aftermath**

50. On August 17, 2006, the Company filed another 8-K with the SEC. The accompanying press release stated:

> VeriSign, Inc. (Nasdaq: VRSN), the leading provider of intelligent infrastructure services for the Internet and telecommunications networks, announced today that it received a Nasdaq Staff Determination letter from The Nasdaq Stock Market on August 14, 2006 stating that VeriSign is not in compliance with the filing requirements under Nasdaq Marketplace Rule 4310(c)(14) due to the delay in filing of its Form 10-Q for the fiscal quarter ended June 30, 2006. VeriSign will request a hearing before a Nasdaq Listing Qualifications Panel ("Panel") to review the Nasdaq Staff Determination. Pending a decision by the Panel, VeriSign shares will remain listed on the Nasdaq Stock Market.
>
> As previously disclosed, VeriSign's Board of Directors has commenced an independent review and analysis of VeriSign's historical stock option grants. VeriSign intends to file its Form 10-Q as soon as practicable after completion of its internal review.

//

//

//

13

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

1    51..    On November 9, 2006, the Company filed another Form 12b-25, Notice of Inability

2    to Timely File 10-Q, with the SEC. The Notice stated:

3    VeriSign, Inc. (the "Company") is unable to file its Quarterly Report
     on Form 10-Q for the quarter ended September 30, 2006 ("Form 10-
4    Q") by the prescribed due date of November 9, 2006. The Company
     announced on June 27, 2006 that its Board of Directors has
5    commenced an independent review of VeriSign's historical stock
     option grants. The Board of Directors is being assisted in its
6    independent review by independent legal counsel. Until this
     independent review is completed, the Company will not be able to file
7    its Form 10-Q. The Company intends to file the Form 10-Q as
     promptly as practicable after completion of the independent review,
8    but does not expect that such filing will be made by November 14,
     2006, the extended deadline.

9

10    52.    On November 16, 2006, Defendants filed an 8-K and accompanying press release

11    with the SEC. The press release stated:

12    VeriSign, Inc. (Nasdaq: VRSN), the leading provider of intelligent
      infrastructure services for the networked world, announced today that
13    it received a Nasdaq Staff Determination Letter from The Nasdaq
      Stock Market on November 10, 2006 stating that VeriSign is not in
14    compliance with the filing requirements under Nasdaq Marketplace
      Rule 4310(c)(14) due to the delayed filing of its Form 10-Q for the
15    quarter ended September 30, 2006. VeriSign received a similar notice
      on August 14, 2006 due to the delay in filing its Form 10-Q for the
16    second quarter of 2006. On September 26, 2006, VeriSign appeared
      at a hearing before a Nasdaq Listing Qualifications Panel ("Panel")
17    and presented a plan for compliance with Nasdaq's listing
      requirements, which also contemplated the September 30, 2006 Form
18    10-Q. Pending a decision by the Panel, VeriSign's common stock
      will remain listed on The Nasdaq Global Market.

19

20    As previously disclosed, VeriSign's Board of Directors has
      commenced an independent review and analysis of VeriSign's
21    historical stock option grants. VeriSign intends to file its quarterly
      reports as soon as practicable after completion of its internal review.

22    53.    On November 21, 2006, the Defendants filed an 8-K and accompanying press release

23    announcing that the Company will be required to restate its historical financial statements as a result

24    of the issuance of backdated and/or spring loaded stock options to certain Company employees,

25    officers, and/or directors. The 8-K stated:

26    VeriSign, Inc. (VeriSign) today announced that it will restate its
      historical financial statements. As previously announced, an ad hoc
27    group of independent Directors of VeriSign's Board of Directors has
      been reviewing VeriSign's historical stock option grant practices.
28    Although the review is not complete, on November 15, 2006, the

14

1   Board concluded that the company must restate its historical financial
    statements for the years and interim periods from 2001-2005 and for
2   the first quarter of 2006 to record additional non-cash, stock-based
    compensation expense related to past stock option grants having
3   incorrect measurement dates and other administrative inconsistencies
    related to certain stock option grant dates and prices. Based on the
4   findings to date, the non-cash charge to the financial statements for
    the periods 2001-2005 is not expected to exceed $250 million,
5   however the investigation is still on-going.

6   Accordingly, the financial statements and all earnings press releases
    and similar communications issued by the company relating to those
7   periods should not be relied upon pending completion of the
    restatements. The amount of additional non-cash stock-based
8   compensation expense to be recorded in any specific period or in any
    future period and the resulting tax and accounting impact have not
9   been determined.

10  The ad hoc group of independent Directors anticipates its review of
    VeriSign's historical stock option grant practices will be completed by
11  the end of the year. As soon as practicable following the completion
    of the review, VeriSign intends to prepare restated financial
12  statements for all affected periods and thereafter become current on
    the filing of its periodic reports required under the Securities
13  Exchange Act of 1934, as amended. VeriSign is evaluating the
    impact of this matter on its internal controls over financial reporting
14  and on its disclosure controls and procedures.

15  VeriSign has discussed the above matters with KPMG LLP, the
    Company's independent registered public accounting firm
16

17      54.    On December 19, 2006, VeriSign filed an 8-K with the SEC stating that Nasdaq

18  Listing Qualifications Panel allowed the Company's continued listing on Nasdaq despite the

19  Company's inability to file certain of its Form 10-Qs. The 8-K stated:

20          On December 15, 2006, VeriSign, Inc. (the "Company") received a
            written notification from the staff of The Nasdaq Stock Market stating
21          that the Nasdaq Listing Qualifications Panel has granted the
            Company's request for continued listing on The Nasdaq Stock
22          Market, subject to the conditions that the Company shall file its Form
            10-Q for the quarter ended June 30, 2006, Form 10-Q for the quarter
23          ended September 30, 2006 and any required restatements, by January
            24, 2007.
24
            If the Company is unable to file its quarterly reports by January 24,
25          2007, it intends to seek an additional extension of time from the
            Nasdaq Listing Qualifications Panel.
26

27

28

                                        15

1    55.    On January 4, 2007, the Company filed an 8-K concerning IRS penalties certain of

2    the Individual Defendants face due to their receipt of backdated stock options. The 8-K stated, in

3    relevant part:

> Section 409A of the Internal Revenue Code ("Section 409A")
> imposes significant penalties on individual income taxpayers who
> were granted stock options that were unvested as of December 31,
> 2004 and that have an exercise price of less than the fair market value
> of the stock on the date of grant ("Affected Options"). These tax
> consequences include income tax at vesting, an additional 20% tax
> and interest charges. In addition, the issuer of Affected Options must
> comply with certain reporting and withholding obligations under
> Section 409A.
>
> These adverse tax consequences can be avoided for unexercised
> Affected Options if the exercise price of the Affected Option is
> adjusted to reflect the fair market value at the time the option was
> granted (as such measurement date is determined for financial
> reporting purposes). For Section 16 reporting persons, Internal
> Revenue Service rules require that this adjustment in the exercise
> price be made on or before December 31, 2006. Effective December
> 31, 2006, certain current executive officers (Stratton Sclavos,
> Aristotle Balogh, Dana Evan, Judy Lin, and Mark McLaughlin), and a
> former executive officer, each elected to increase the exercise price of
> unexercised Affected Options that they hold to the fair market value
> of VeriSign common stock on the date of grant (as such measurement
> date is determined for financial reporting purposes). The election shall
> not be deemed to ratify any purportedly unauthorized stock options.
>
> Ms. Evan, the principal financial officer, elected to adjust the exercise
> price of two Affected Option grants: exercise prices of options to
> purchase 1,667 and 11,250 shares of VeriSign common stock were
> adjusted from $34.44 to $42.26 and from $34.16 to $38.30,
> respectively. Judy Lin elected to adjust the exercise price of options
> to purchase 37,812 shares of VeriSign common stock from $13.46 to
> $14.93.
>
> None of VeriSign's current directors, including Mr. Sclavos, is
> believed by the Company to hold Affected Options. However, in the
> event it is later determined that a director does in fact hold an
> Affected Option, certain directors, including Mr. Sclavos, have
> chosen to make the election with respect to such options.
>
> The foregoing is a summary of the terms and conditions of the
> Options Election Form and related documentation and does not
> purport to be complete. The foregoing is qualified in its entirety by
> reference to the Options Election Form and related documentation, a
> copy of which is filed as Exhibit 99.01 to this Current Report on Form
> 8-K and is incorporated herein by reference.

16

56.   On March 1, 2007, the Company an 8-K notifying shareholders that VeriSign had

filed another Form 12b-25, Notice of Inability to Timely File 10-Q, with the SEC. The 8-K stated:

> VeriSign, Inc. (the "Company" or "VeriSign") today filed a
> Notification of Late Filing on Form 12b-25 with the Securities and
> Exchange Commission ("SEC") stating that it is unable to file its
> Annual Report on Form 10-K for the year ended December 31, 2006
> ("Form 10-K") by the prescribed due date of March 1, 2007. As
> previously announced, VeriSign has determined that it must restate its
> historical financial statements for the years 2002-2005 and for the first
> quarter of 2006 to record additional non-cash, stock-based
> compensation expense in connection with the review of historical
> stock option grant practices conducted by an ad hoc group of
> independent directors. On January 31, 2007, the Company announced
> that the ad hoc group of independent directors had substantially
> completed its review of VeriSign's historical stock option grants. The
> Company has not completed the audit of its restatement as of the date
> of this disclosure. The Company will not be able to file its Form 10-K
> until the restatement audit is completed. The Company intends to file
> the Form 10-K as promptly as practicable after completion of the
> restatement audit, but does not expect that such filing will be made by
> March 16, 2007, the extended deadline.

> Nasdaq Proceedings

> In a related matter, on January 19, 2007, the company received written
> notification from the staff of The Nasdaq Stock Market stating that the
> Nasdaq Listing Qualifications Panel granted the company's request
> for continued listing on The Nasdaq Stock Market, subject to the
> conditions that the company file its Form 10-Q for the quarter ended
> June 30, 2006, Form 10-Q for the quarter ended September 30, 2006
> and any required restatements, by February 12, 2007. On February 7,
> 2007, the Nasdaq Listing and Hearings Review Council notified the
> company that, at the company's request, it had called the January 19,
> 2007 decision for review and has stayed any future determinations to
> suspend the company's securities from trading until the review
> process runs its course. If the Listing Council determines it is
> appropriate, it may grant the company additional time to regain
> compliance with Nasdaq's filing requirement, until the earlier of 60
> days from the date of its decision or 180 days from the Panel's
> decision. The Listing Council has not issued a decision in this matter
> as of the date of this disclosure.

> VeriSign will continue to cooperate with the Nasdaq Listing and
> Hearings Review Council in this matter.

> Internal Revenue Code Section 409A Disclosure Update

> In a Form 8-K filed on January 4, 2007, the Company reported that
> certain of the Company's Section 16 reporting persons elected to
> increase the exercise price of certain unexercised stock option grants
> that were subject Section 409A of the Internal Revenue Code
> ("Section 409A"). Section 409A imposes an additional tax and
> interest charge on deferred income of individual income taxpayers

17

1    who were granted stock options that were unvested as of December
     31, 2004 and have an exercise price of less than the fair market value
2    of the stock on the date of grant ("Affected Options"). This additional
     tax and interest charge on deferred income is avoided if the taxpayer
3    agrees to adjust the options' exercise price to reflect the fair market
     value at the time the option was granted (as such measurement date is
4    determined for financial reporting purposes). For Section 16 reporting
     persons, Internal Revenue Service rules require that this adjustment in
5    the exercise price be made on or before Decem'rer 31, 2005 in order to
     remove the Affected Options from the scope of Section 409A.
6
     The Company's January 4, 2007 8-K also reported that none of the
7    Company's current directors holds Affected Options. The Company
     has determined that two current directors hold Affected Options.
8    Neither director elected to increase the exercise price before
     December 31, 2006.
9
     The Company intends to file a Form 8-K/A amending the Form 8-K
10   filed on January 4, 2007.

11        57.    On March 9, 2007, the Company filed another 8-K with the SEC and issued an

12   accompanying press release entitled "Verisign Receives Anticipated Letter from Nasdaq" which

13   stated, in relevant part:

14        VeriSign, Inc. (Nasdaq: VRSN) announced today that it received a
          Nasdaq Staff Determination letter from The Nasdaq Stock Market on
15        March 5, 2007 stating that VeriSign is not in compliance with the
          filing requirements under Nasdaq Marketplace Rule 4310(c)(14) due
16        to the delay in filing of its Form 10-K for the fiscal year ended
          December 31, 2006 ("2006 10-K"). As previously announced on
17        March 1, 2007, the Nasdaq Listing and Hearings Review Council
          ("Listing Council") notified the Company that the Listing Council has
18        stayed any future determinations to suspend the Company's securities
          from trading until the Nasdaq review process has been completed.
19        The Listing Council's decision to stay any future determinations to
          suspend the Company's securities from trading until the review
20        process has been completed also applies to the Company's failure to
          timely file its 2006 10-K. If the Listing Council determines it is
21        appropriate, it may grant the Company additional time to regain
          compliance with Nasdaq's filing requirement, until the earlier of 60
22        days from the date of its decision or 180 days from the date of the
          Panel's decision. The Listing Council has not issued a decision in this
23        matter as of the date of this announcement.

24        VeriSign has previously announced that it must restate its historical
          financial statements for the years 2002-2005 and for the first quarter
25        of 2006 to record additional non-cash, stock-based compensation
          expense in connection with the review of historical stock option grant
26        practices conducted by an ad hoc group of independent directors. On
          January 31, 2007, the Company announced that the ad hoc group of
27        independent directors had substantially completed its review of
          VeriSign's historical stock option grants. On March 1, 2007,
28        VeriSign filed a notice with the SEC disclosing that it would be

                                        18

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

1    unable to timely file its 2006 10-K because it had not completed the
     audit of its restatement, that it intends to file the 2006 10-K as
2    promptly as practicable after completion of the restatement audit, and
     that it does not expect that such filing will be made by March 16,
3    2007, the extended deadline.

4    58.    The Defendants disseminated false and misleading financial statements in, *inter alia*,

5    the following "Form 10-K" filings:

6        a.    Form 10-K405 for fiscal year ended December 31, 1998, and filed with the
               SEC on February 22, 1999;
7
         b.    Form 10-K405 for fiscal year ended December 31, 1999, and filed with the
8              SEC on May 22, 2000;

9        c.    Form 10-K/A for fiscal year ended December 31, 1999, and filed with the
               SEC on April 27, 2000;
10
         d.    Form 10-K for fiscal year ended December 31, 2000, and filed with the SEC
11             on March 28, 2001;

12       e.    Form 10-K for fiscal year ended December 31, 2001, and filed with the SEC
               on March 19, 2002;
13
         f.    Form 10-K for fiscal year ended December 31, 2002, and filed with the SEC
14             on March 31, 2003;

15       g.    Form 10-K for fiscal year ended December 31, 2003, and filed with the SEC
               on March 15, 2004; and
16
         h.    Form 10-K for fiscal year ended December 31, 2004, and filed with the SEC
17             on March 16, 2005.

18       i.    Form 10-K for fiscal year ended December 31, 2004, and filed with the SEC
               on March 16, 2005.
19

20   59.    The Company's 2001, 2002, 2003, 2004 and 2005 Form 10-Ks were issued in

21   violation of GAAP, and in particular Accounting Principles Board ("APB") Opinion No. 25 ("APB

22   25"), "Accounting for Stock Issued to Employees." Pursuant to APB 25, if the market price on the

23   date of grant exceeds the exercise price of the options, the company must recognize the difference as

24   an expense. Defendants' backdating practice resulted in understated expenses on each Form 10-K

25   because the difference between the market price and option exercise price was not expensed by the

26   Company.

27

28

---

19

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

60.  The Individual Defendants also caused and/or participated in issuing, filing and disseminating the false and misleading information regarding Company issued options on the Form(s) DEF 14A (the "Definitive Proxies") filed with the SEC on:

    a.    April 22, 1999;

    b.    April 12, 2001;

    c.    April 3, 2002;

    d.    April 16, 2003;

    e.    April 26, 2004;

    f.    April 26, 2005; and

    g.    April 10, 2006.

61.  The Definitive Proxies were each false and misleading because they failed to correct prior information regarding the issuance of backdated stock options and caused the Class to approve the Individual Defendants request to be appointed as directors of the Company based on that false and misleading information.

62.  Defendants' backdating of options grants also violated provisions of the Internal Revenue Code relating to deduction of option payments and thereby rendered the Company's financial statements in Form 10-K filings for the years 1998, 1999, 2000 and 2001, as well as interim Form 10-Qs, materially false and misleading.

## TOLLING OF THE STATUTE OF LIMITATIONS

63.  The Defendants concealed their violations of law until at least June 27, 2006, the date the Company issued its press release entitled "VeriSign Responds to Stock Option Inquiries." Further, it was not until August 9, 2006, that the investing public was informed that the Defendants would be unable to meet their financial reporting requirements as a result of backdating schemes. Indeed, while the Defendants partially admitted to their violations of law in their November 21, 2006, 8-K filing with the SEC, outlined *infra*, when they admitted that they would be required to restate the earnings for certain accounting periods relevant to plaintiff's allegations herein, the full extent of their violations is not yet known. Instead, VeriSign shareholders and the investing public

20

1  have only been advised that the Company will restate its earnings and take a pre-tax charge of no

2  more than $250 million for the fiscal years 2001 through 2005 as a result of their violations of law.

3      64.    As a result, the Individual Defendants have systematically and wrongfully concealed

4  their manipulation of Company stock option plans, falsely asserting that the grants were being

5  administered by a committee of independent directors, while in fact, as outlined herein, the

6  Compensation Committee Defendants were colluding with other Individual Defendants to violate

7  GAAP and Section 162(m).  Moreover, the Compensation Committee Defendants were colluding

8  with the other Individual Defendants to make, *inter alia*, false and misleading filings with the SEC.

9      65.    Similarly, the Audit Committee Defendants were systematically and wrongfully

10  concealing wrongdoings of each of the Individual Defendants by disseminating to VeriSign

11  shareholders and the market false financial statements that improperly recorded and accounted for

12  backdated options grants in violation of GAAP and Section 162(m).

13      66.    At no time prior to June 27, 2006, did VeriSign shareholders or any other member of

14  the investing public have reason to know of Defendants' breaches of their fiduciary duties and

15  violations of the Corporations Code.  Therefore, the Individual Defendants cannot rely on a statute

16  of limitations defense as they have withheld from VeriSign shareholders and the investing public the

17  facts that give rise to the claims asserted herein.

18      <u>COUNT I</u>

19      (Against All Defendants Except VeriSign)
    <u>Class Claim for Breach of the Duty of Disclosure</u>

20

21      67.    Plaintiff hereby realleges and incorporates by reference the allegations in the

22  preceding paragraphs as if fully set forth herein.

23      68.    Plaintiff brings this claim as a direct claim, on behalf of himself and the Class,

24  against defendants for breach of their fiduciary duty of disclosure.

25      69.    Defendants caused the Company to publish and/or disseminate its 2002, 2003, 2004,

26  2005 and 2006 Definitive Proxies with the false representation that option grants were made with

27  strike prices no less than the fair market value on the date of the grant.  Defendants failed to disclose

28  that they knew and/or recklessly disregarded a pervasive options backdating scheme form 1999 to

21

1  2006 causing the options to be issued during much of that time to carry a much lower price than the

2  strike price.

3       70.    As a result of the Individual Defendants' backdating scheme, the 2002, 2003, 2004,

4  2005 and 2006 Definitive Proxies and the Form 10-K for the years 2001, 2002, 2003, 2004, and

5  2005, and respective Form 10-Qs, materially overstated VeriSign's net income and retained

6  earnings. Moreover, as a result of the Individual Defendants' backdating scheme, the Company has

7  been unable to file its Form 10-Qs for the quarters ending June 30, 2006 and September 30, 2006,

8  and Form 10-K for the fiscal year ending December 31, 2006. Further, as a result of the materially

9  overstatements, the Company faces delisting from the Nasdaq National Market.

10       71.    The foregoing misleading statements were material to VeriSign shareholders'

11  consideration of the: (i) 1999 amendment (as outlined in the 1999 Definitive Proxy), 2001

12  amendment (as outlined in the 2001 Definitive Proxy) and 2002 amendment (as outlined in the 2002

13  Definitive Proxy) to the 1998 Equity Incentive Plan; (ii) 2000 amendment (as outlined in the 2000

14  Definitive Proxy), 2003 amendment (as outlined in the 2003 Definitive Proxy) and 2005

15  amendment (as outlined in the 2005 Definitive Proxy) to the 1998 Directors Plan; and (iii) 2006

16  Plan. Indeed, if shareholders had known the truth regarding the Individual Defendants' false and

17  misleading statements, they would have not approved any of the amendments to the 1998 Option

18  Plans and/or adoption of the 2006 Plan which added over 47,750,000 shares to the amount approved

19  to the amount available under the terms of the 1998 Option Plans.

20       72.    The Class was harmed as a result of the dilution of its voting power and

21  proportionate share of the Company due to the dedication of over 47 million VeriSign shares as a

22  result of the amendments to the 1998 Option Plans and adoption of the 2006 Plan.

23  //

24  //

25

26

27

28

22

## COUNT II

### (Against All Defendants)
### Claim for Rescission

73.    Plaintiff hereby realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

74.    Plaintiff brings this claim as a direct claim, on behalf of himself and the Class, against defendants for: (A) rescission of the: (i) 1999 amendment (as outlined in the 1999 Definitive Proxy), 2001 amendment (as outlined in the 2001 Definitive Proxy) and 2002 amendment (as outlined in the 2002 Definitive Proxy) to the 1998 Equity Incentive Plan; (ii) 2000 amendment (as outlined in the 2003 Definitive Proxy), 2003 amendment (as outlined in the 2003 Definitive Proxy) and 2005 amendment (as outlined in the 2005 Definitive Proxy) to the 1998 Directors Plan; and (iii) 2006 Plan; and (B) cancellation of the 47.75 million shares added via amendments to the 1998 Plan and through adoption of the 2006 Plan.

75.    In the Definitive Proxies, defendants made the false representation that option grants were made with strike prices no less than the fair market value on the date of the grant. Defendants failed to disclose that in fact they either knew and/or recklessly disregarded a pervasive backdating scheme from 1999 to 2006 under which options granted were backdated and/or spring-loaded.

76.    The Definitive Proxies and relevant Form 10-Ks each materially misrepresented VeriSign's net income and retained earnings. Indeed, if the Defendants, and each of them, had not disseminated the materially false and misleading information, plaintiff and the Class would not have approved the amendments to the 1998 Option Plans and the adoption of the 2006 Plan.

77.    The Class was harmed as a result of the foregoing as they were deprived of the opportunity to cast a fully informed vote with regards to each of the amendments to the 1998 Option Plans and adoption of the 2006 Plan.

78.    The Class was also harmed as a result of the dilution of its voting power and proportionate share of the Company due to the dedication of over 47 million VeriSign shares as a result of the amendments to 1998 Option Plans and adoption of the 2006 Plan.

23

79.    Defendants secured adoption of the amendments to the 1998 Option Plans and the 2006 Plan through false and misleading statements.  Accordingly the amendments to the 1998 Options Plans and the 2006 Plan must be rescinded and the 47.75 million shares added to the 1998 Option Plans must be cancelled.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative;

2.    Declaring that defendants have breached and/or are aiding and abetting breaches of fiduciary and other duties to Plaintiff and the other members of the Class;

3.    Rescinding: (i) all amendments to the 1998 Option Plans; and (ii) the 2006 Plan, and cancelling the 47.75 million shares added to the 1998 Plan as a result of the amendments and adoption of the 2006 Plan.

4.    Preliminarily and permanently enjoining the defendants from granting any stock options and from allowing the exercise of any of the currently outstanding options granted under the 1998 Option Plans or 2006 Plan;

5.    Awarding compensatory damages against defendants, individually and severally, as the facts may justify, in an amount to be determined at trial, together with pre-judgment interest thereon at the maximum rate allowed by law from date of judicial demand until paid;

6.    Awarding costs and disbursements, including Plaintiff's counsel's fees and experts' fees; and

7.    Granting such other and further relief as the Court may deem just and proper.

//

//

//

24

1

## JURY DEMAND

2          Plaintiff demands a trial by jury.

3

4

5    Dated: May 15, 2007                    Patrice L. Bishop
                                            STULL, STULL & BRODY
6

7

8                            By:   *Patrice Bishop*
                                   Patrice L. Bishop
9                                  10940 Wilshire Boulevard
                                   Suite 2300
10                                 Los Angeles, CA  90024
                                   Tel:   (310) 209-2468
11                                 Fax:   (310) 209-2087

12                                 Jules Brody
                                   Aaron L. Brody
13                                 STULL, STULL & BRODY
                                   6 East 45th Street
14                                 New York, NY 10017
                                   Tel:   (212) 687-7230
15                                 Fax:   (212) 490-2022

16                                 Joseph H. Weiss
                                   WEISS & LURIE
17                                 551 Fifth Avenue
                                   Suite 1600
18                                 New York, NY 10176
                                   Tel:   (212) 682-3025
19                                 Fax:   (212) 682-3010

20                                 Counsel for Plaintiff

21

22

23

24

25

26

27

28

25

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd