**COPY**

1    CHRISTOPHER H. McGRATH (SB# 149129)
     chrismcgrath@paulhastings.com
2    OLEG CROSS (SB# 246680)
     olegcross@paulhastings.com
3    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     3579 Valley Centre Drive
4    San Diego, CA  92130
     Telephone:  (858) 720-2500
5    Facsimile:  (858) 720-2555

6    THOMAS A. ZACCARO (SB# 183241)
     thomaszaccaro@paulhastings.com
7    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     515 South Flower Street, Twenty-Fifth Floor
8    Los Angeles, CA  90074-2228
     Telephone:  (213) 683-6000
9    Facsimile:  (213) 627-0705

10   EDWARD HAN (SB# 196924)
     edwardhan@paulhastings.com
11   PAUL, HASTINGS, JANOFSKY & WALKER LLP
     55 Second Street, 24th Floor
12   San Francisco, CA  94105
     Telephone:  (415) 856-7000
13   Facsimile:  (415) 856-7100

14   *Attorneys for Defendant VeriSign, Inc.*

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18

19   THOMAS MYKITSHYN, Individually      Civil Action No. _____
     and On Behalf of All Others Similarly
20   Situated,
                                          State Case No. 1-07-CV-085890
21             Plaintiff,

22        vs.                             CLASS ACTION

23   D. JAMES BIDZOS, WILLIAM L.          **DECLARATION OF OLEG CROSS IN**
     CHENEVICH, DAVID J. COWAN,           **SUPPORT OF DEFENDANT VERISIGN,**
24   MICHELLE GUTHRIE, SCOTT G.           **INC.'S NOTICE OF REMOVAL OF**
     KRIENS, LEN J. LAUER, ROGER H.       **ACTION**
25   MOORE, EDWARD A. MUELLER,
     GREGORY L. REYES, WILLIAM A.
26   ROPER, JR., STRATTON D. SCLAVOS,
     LOUIS A. SIMPSON, VERISIGN, INC.,
27
               Defendants.
28

ORIGINAL
FILED

JUN 2 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**RMW**

**HRL**

C 07 3332

                              CROSS DECLARATION ISO
                              NOTICE OF REMOVAL OF ACTION

Case No. _____

1    I, Oleg Cross, hereby state:

2        I am an attorney at law, licensed to practice before this Court and all courts of the State of

3    California. I am associated with the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel

4    of record for VeriSign, Inc. ("VeriSign"), Defendant in the above-captioned matter. I make this

5    declaration in support of the Notice of Removal pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2),

6    and 28 U.S.C. §§ 1441(a) and (b) and 1446, removing this action from the Superior Court of the

7    State of California, County of Santa Clara, in which the action is currently pending, to the United

8    States District Court for the Northern District of California.

9        1.    On May 15, 2007, Plaintiff filed a Class Action Complaint for Breaches of

10   Fiduciary Duty ("Complaint") in the Superior Court of the State of California, County of Santa

11   Clara, in the matter captioned *Mykityshyn v. Bidzos, et al.*, 1-07-CV-0855890. Attached hereto as

12   Exhibit A is a true and correct copy of the Complaint. Attached hereto as Exhibit B is a true and

13   correct copy of the Civil Case Cover Sheet and Civil Lawsuit Notice. Attached hereto as Exhibit

14   C is a true and correct copy of the Summons. Attached hereto as Exhibit D is a true and correct

15   copy of the Proof of Service of Summons on Defendant VeriSign, Inc.

16       2.    On June 22, 2007, VeriSign filed an Answer to Plaintiff's Complaint. Attached

17   hereto as Exhibit E is a true and correct copy of VeriSign's Answer to Plaintiff's Complaint.

18       3.    Other than VeriSign, none of the Defendants named in the Complaint have been

19   served. Attached hereto as Exhibit F is a true and correct copy of the docket in the matter

20   *Mykityshyn v. Bidzos, et al.*, 1-07-CV-0855890, which reflects that, as of this date, VeriSign is the

21   only Defendant to have been served. Furthermore, VeriSign has contacted all of the other

22   Defendants named in the Complaint, and all of the Defendants who responded to VeriSign's

23   inquiry confirmed that they have not been served.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1      4.      On June 25, 2007, the above-captioned case was determined to be complex within

2  the meaning of California Rules of Court 3.400.  Attached hereto as <u>Exhibit G</u> is a true and

3  correct copy of Order Deeming Case Complex.

4      I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct and that I have executed this Declaration on the 25th day of June,

6  2007 at San Diego, California.

7

8      By: _____

9                    OLEG CROSS

10  LEGAL_US_W # 56514406.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. _____

CROSS DECLARATION ISO
NOTICE OF REMOVAL OF ACTION

# EXHIBIT A

# EXHIBIT A



1 | Patrice L. Bishop (182256)
  | STULL, STULL & BRODY
2 | 10940 Wilshire Boulevard
  | Suite 2300
3 | Los Angeles, CA 90024
  | Tel:    (310) 209-2468
4 | Fax:   (310) 209-2087
5 | [Additional Counsel Appear
  | on Signature Page]
6 | Counsel for Plaintiff
7 |
8 |
9 |

**UCS**

FILED  Santa Clara Co
05/15/07   3:44pm
Kiri Torre
Chief Executive Offic
By: ssancayco DTSCIVD
R#200700048119
CK                    $870.00
TL                    $870.00
Case: 1-07-CV-085890

10 |           SUPERIOR COURT OF THE STATE OF CALIFORNIA
11 |                FOR THE COUNTY OF SANTA CLARA
12 |

FILE VIA FAX

13 | THOMAS MYKITYSHYN, on Behalf of    ) CASE NO. 107 CV085890
   | Himself and All Others Similarly Situated, )
14 |                                     )
   |                    Plaintiff,       )  **CLASS ACTION**
15 |        v,                           )
   |                                     )  **COMPLAINT FOR BREACHES OF**
16 | D. JAMES BIDZOS,                    )  **FIDUCIARY DUTY**
   | WILLIAM L. CHENEVICH,               )
17 | DAVID J. COWAN,                     )  **JURY TRIAL DEMANDED**
   | MICHELLE GUTHRIE,                   )
18 | SCOTT G. KRIENS,                    )
   | LEN J. LAUER,                       )
19 | ROGER H. MOORE,                     )
   | EDWARD A. MUELLER,                  )
20 | GREGORY L. REYES,                   )
   | WILLIAM A. ROPER, JR.,              )
21 | STRATTON D. SCLAVOS,                )
   | LOUIS A. SIMPSON,                   )
22 | VERISIGN, INC.,                     )
   |                                     )
23 |                    Defendants.      )
24 |
25 |
26 |
27 |
28 |

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\Di\redComplaint.001.wpd

1       Plaintiff, through his attorneys, brings this Complaint against defendant VeriSign, Inc.

2   ("VeriSign" or the "Company") and certain directors of the Company, alleges on personal

3   knowledge as to his self and his activities, and on information and belief as to all other matters,

4   based on investigation and discovery conducted by counsel:

5                          **SUMMARY**

6       1.    This is a shareholders' action on behalf of all individuals who owned VeriSign

7   common stock between April 3, 2002 and August 9, 2006, alleging that certain current and former

8   officers and members of its Board of Directors (the "Board") breached their fiduciary duties when

9   they failed to inform shareholders that they had issued backdated VeriSign stock options to certain

10  senior executives.

11      2.    VeriSign, a publicly traded company whose common stock is traded on Nasdaq

12  under the ticker symbol "VRSN," develops and markets high-performance digital audio and video

13  imaging applications for purchase by original equipment manufacturers of digital televisions, DVD

14  products, digital cameras, digital printing, multimedia phones and IP cores.

15                         **JURISDICTION**

16      3.    This Court has jurisdiction over the subject matter of this action pursuant to the

17  California Constitution Article VI, Section 10, because the case is an action not given by statute to

18  other trial courts.

19      4.    Venue is proper in this County under Section 395(a) of the California code of Civil

20  Procedure in that some or all of the Individual Defendants reside in this County.

21                         **PARTIES**

22      5.    Plaintiff Thomas Mykityshyn owned 100 shares of VeriSign common stock between

23  April 3, 2002 and August 9, 2006.

24      6.    Defendant D. James Bidzos ("Bidzos") has served as Vice Chairman of the Board of

25  VeriSign since December 2001. He served as the Company's Chairman of the Board from April

26  1995 until December 2001, and as CEO from April 1995 to July 1995. During all relevant times

27  herein, defendant Bidzos served on the Compensation Committee. Upon information and belief,

28  defendant Bidzos is a resident of the State of California.

2

7.     Defendant William Chenevich ("Chenevich") has been a member of the Board of Directors since the Company's founding in 1995. He has been a member of the Compensation Committee for the period 1999 through 2002. Upon information and belief, defendant Chenevich resides in Wisconsin.

8.     Defendant David J. Cowan ("Cowan") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein. Upon information and belief, defendant Cowan resides in California.

9.     Defendant Michelle Guthrie ("Guthrie") has been a member of the Board of Directors since December 2005. Upon information and belief, defendant Guthrie resides in Asia.

10.     Defendant Scott G. Kriens ("Kriens") has been a member of the Board of Directors since January 2001. He was a member of the Compensation Committee in 2001 and 2002. Defendant Kriens is the Chairman and CEO of Juniper Networks, a company that is also under investigation for backdating of its options to top executives. Upon information and belief, defendant Kriens resides in California.

11.     Defendant Len J. Lauer ("Lauer") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein.

12.     Defendant Roger H. Moore ("Moore") has been a member of the Board of Directors since February 2002, and served on its Compensation Committee in 2002. Upon information and belief, defendant Moore is a resident of the State of California.

13.     Defendant Edward A. Mueller ("Mueller") has been a member of the Board of Directors since March 2005.

14.     Defendant Gregory L. Reyes ("Reyes") was a member of the Board of Directors and served on its Compensation Committee during times relevant herein. Upon information and belief, defendant Reyes is a resident of the State of California.

15.     Defendant William A. Roper, Jr. ("Roper") has been a member of the Board of Directors since November 2003. Upon information and belief, defendant Roper is a resident of the State of California.

3

16.    Defendant Stratton D. Sclavos ("Sclavos") has served as President, Chief Executive Officer and a director of VeriSign since July 1995, and became Chairman of the Board of Directors in December 2001. He was also member of the Compensation Committee for all relevant times herein. Upon information and belief, defendant Solavos is a resident of the State of California.

17.    Defendant Louis A. Simpson ("Simpson") has been a member of the Board of Directors since May 2005, and is currently the is Chair of the Compensation Committee.

18.    Defendant VeriSign is a Delaware corporation with its executive offices and principal place of business located at 487 East Middlefield Road, Mountain View, California 94043.

19.    Defendants Bidzos, Chenevich, Cowan, Guthrie, Kriens, Lauer, Moore, Mueller, Reyes, Roper, Sclavos and Simpson are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.    Each Individual Defendant owed VeriSign and its public shareholders the duty to exercise due care, loyalty and good faith in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing, reckless or grossly negligent and culpable violation of their obligations as directors and/or officers of VeriSign, the absence of good faith on their part and a reckless disregard for their duties to the Company and its shareholders, all of which the Individual Defendants were aware or should have been aware, presented a risk of, and in fact did cause, serious injury to the Company.

21.    By reason of their positions as officers, directors, and fiduciaries of VeriSign and its shareholders and because of their ability to control the business and corporate affairs of VeriSign, the Individual Defendants owed VeriSign and its shareholders fiduciary obligations of trust, good faith, loyalty, and due care, and were and are required to use their utmost ability to control and manage VeriSign in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of VeriSign and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit.

4

22.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of VeriSign, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

23.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of VeriSign, and was at all times acting within the course and scope of such agency.

24.    To discharge the aforesaid duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial affairs of VeriSign. The Individual Defendants were required, among other things, to: in good faith manage, conduct, supervise and direct the business and affairs of VeriSign carefully and prudently and in accordance with all applicable laws, rules and regulations; neither violate nor knowingly permit any officer, director, employee or agent of VeriSign to violate applicable federal and state laws, rules and regulations or any rule or regulation of VeriSign; exercise reasonable control and supervision over the officers and employees and agents of VeriSign; remain informed as to the status of VeriSign's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with federal and state securities laws, supervise the preparation, filing and/or dissemination of any SEC filings, press releases, audits, reports or other information required by law, and examine and evaluate any reports or examinations, audits, or other financial information concerning the financial condition of VeriSign; maintain and implement an adequate system of internal financial, accounting and management information systems and controls; and ensure that VeriSign's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

25.    Because of their Board membership and/or executive and managerial positions with VeriSign and their access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and their receipt of reports and other information

5

1    provided to them in connection therewith, each of the Individual Defendants had access to

2    undisclosed information about VeriSign's business prospects, financial condition, performance,

3    accounting and revenue recognition practices, as alleged herein.

4                              **CLASS ACTION ALLEGATIONS**

5         26.    Plaintiffs bring this action pursuant to §382 of the California Code of Civil

6    Procedure on his own behalf and as a class action on behalf of all holders of VeriSign common

7    stock, who are being and will be harmed by defendants' actions described below (the "Class").

8    Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other

9    entity related to or affiliated with any defendants.

10        27.    This action is properly maintainable as a class action because:

11               a.    The class is so numerous that joinder of all members is impracticable. There

12                     are millions of VeriSign stock issued and outstanding. The shares trade on

13                     the Nasdaq National Market under the ticker symbol "VRSN", and thousands

14                     of VeriSign stockholders of record are located throughout the United States;

15               b.    There are questions of law and fact which are common to the Class, including

16                     whether the defendants have engaged or are continuing to act in a manner

17                     calculated to benefit themselves at the expense of VeriSign's minority

18                     stockholders and whether Plaintiff and other members of the Class would be

19                     irreparably damaged if the defendants are not enjoined in the manner

20                     described below;

21               c.    The defendants have acted or refused to act on grounds generally applicable

22                     to the Class thereby making appropriate final injunctive relief with respect to

23                     the Class as a whole;

24               d.    Plaintiff is committed to prosecuting this action and has retained competent

25                     counsel experienced in litigation of this nature. The claims of Plaintiff are

26                     typical of the claims of the other members of the class and Plaintiff has the

27                     same interest as the other members of the Class. Accordingly, Plaintiff is an

28

                                            6

1             adequate representative of the Class and will fairly and adequately protect the

2             interests of the Class; and

3         e.     Plaintiff anticipates that there will be no difficulty in the management of this

4             litigation as a class action.

5     28.     For the reasons stated herein, a class action is superior to other available methods for

6 the fair and efficient adjudication of this controversy.

7                          **SUBSTANTIVE ALLEGATIONS**

8 **Background**

9     29.     Stock options give employees of a publicly traded company the right to purchase

10 company stock at a fixed price in the future. The general policy behind a grant of stock options is to

11 link employees' compensation to the value of the company's shares and, therefore, to the wealth of

12 the company's shareholders. Typically, the options' fixed price is aligned with the price of the stock

13 on the day of the grant. If the stock price rises from the fixed grant price the employee profits by

14 exercising the options and selling the shares. In contrast, backdated stock options allow the

15 employees of a publicly traded company, such as VeriSign, to maximize their wealth at the

16 expense of its shareholders.

17     30.     During relevant times herein, VeriSign had two stock option plans, the 1998 Equity

18 Incentive Plan and the 1998 Directors Plan (the "Option Plans"). The Option Plans covered both

19 Incentive Stock Options, which were granted to employees, and Non-Statutory Stock Options,

20 which were granted to employees, directors and consultants. According to the company's Definitive

21 Proxies filed with the Securities and Exchange Commission ("SEC") on April 22, 1999, April 12,

22 2001 and April 3, 2002, April 16, 2003, April 26, 2004, April 26, 2005 and April 10, 2006, the

23 Compensation Committee "determines the persons who are to receive the Awards, and the number

24 of shares subject to each such Award. The Compensation Committee has the authority to construe

25 and interpret any of the provisions of the 1998 Equity Incentive Plan or any Awards granted

26 thereunder." The Option Plans require that the exercise price of all incentive stock options granted

27 "must be at least equal to the fair market value of the common stock on the date of the grant."

28

7

31. The 1998 Directors Plan, adopted by the board in October 1997 and approved by shareholders in January 1998, reserved 125,000 Company shares for distribution to members of the Board. Under the plan, each director is to receive the option to purchase 15,000 VeriSign shares on the date they become a member of the Board (the "Initial Grant") and an additional 7,500 shares on each of their Initial Grant anniversary dates thereafter.

32. The 1998 Equity Incentive Plan, also adopted by the board in October 1997 and approved by shareholders in January 1998, reserved 2,000,000 VeriSign shares for distribution to Company employees, officers, directors and consultants. In addition, all shares issued under the 1995 and 1997 equity plans were transferred to the 1998 Equity Incentive Plan. According to the Definitive Proxy filed with the SEC on Form DEF 14A on May 27, 1999 (the "1999 Definitive Proxy"), as of December 31, 1998, defendants had granted options to purchase 2,187,456 shares of common stock under the 1998 Equity Incentive Plan and 268, 221 shares remained for distribution.

33. In March 1999, the Board approved an amendment to increase the shares to be issued under the 1998 Equity Incentive Plan by an additional 2,000,000 shares. Moreover, via the 1999 Definitive Proxy, the Board requested that shareholders, *inter alia*, approve the 2,000,000 share increase already approved by the directors. The 1999 Definitive Proxy stated:

> The Board believes that the increase in the number of shares reserved under the Equity Incentive Plan proposed by this amendment is necessary in order to enable VeriSign to continue to use the grant of stock options and other Awards to retain and attract qualified employees and to also encourage stock ownership by Equity Incentive Plan participants, thereby aligning their interests with those of VeriSign's stockholders.

(Emphasis Added.)

34. The 1999 Definitive Proxy also provided a table setting forth the option grants issued during the fiscal year ended December 31, 1998. A footnote associated with and directly below the table stated:

> The exercise price and number of options to be granted in the future under the Equity Incentive Plan is unknown, as the exercise price will be equal to **fair market value on the date of grant**, and option grants are made at the discretion of the Compensation Committee.

(Emphasis Added.)

8

35.     According to the 2003 Proxy, defined *supra*, in March 2000 the Board adopted, and in June 2000 the shareholders approved, a reservation of an additional 250,000 shares to be issued to the Directors under the 1998 Directors Plan.

36.     On April 12, 2001, the defendants filed another proxy with the SEC on Form DEF 14A (the "2001 Definitive Proxy") requesting shareholders approve certain directors for election/reelection to the Board and, *inter alia*, approve an amendment to the 1998 Equity Incentive Plan. According to the 2001 Definitive Proxy, the Individual Defendants had already approved the amendment authorizing another 8,000 VeriSign shares for issuance to Company employees, officers, directors and/or consultants, and now needed the shareholders to also approve the amendment. As with the prior definitive proxies filed by the Company, defendants once again erroneously claimed that ."the exercise price [of options issued] will be equal to the fair market value on the day of the grant."

37.     Defendants again requested VeriSign shareholders approve another an amendment to the 1998 Equity Incentive Plan through a proxy filed with the SEC on Form DEF 14A (the "2002 Definitive Proxy") on April 3, 2002. According to the 2001 Definitive Proxy, the Individual Defendants had approved another 10,000,000 VeriSign shares for issuance to Company employees, officers, directors and/or consultants. The amendment also increased the number of options an eligible person could receive under the plan to 1,500,000 shares in the aggregate in any calendar year. Prior to this amendment, a new employee could receive up to 1,000,000 shares during their first year of employment and all other eligible persons could receive up to 4,000,000 shares in the aggregate during any calendar year.

38.     As with the prior definitive proxies filed by the Company, the 2002 Definitive Proxy once again erroneously claimed that "the exercise price will be equal to the fair market value on the day of the grant."

39.     Defendants requested VeriSign shareholders approve an amendment to the 1998 Directors Plan through a proxy filed with the SEC on Form DEF 14A (the "2003 Definitive Proxy") on April 16, 2003. The amendment, approved by the directors in February 2003, called for an additional 500,000 shares to be issued under the 1998 Directors Plan.

9

40.    On April 26, 2004, the defendants filed another proxy with the SEC on Form DEF 14A (the "2004 Definitive Proxy"). The 2004 Definitive Proxy emphasized that the "option grants under the 1998 Directors Plan are automatic and nondiscretionary, and the exercise price of the options is 100% of the fair market value of the common stock on the date of grant." The 2004 Definitive Proxy also repeatedly stated that options granted under the 1998 Equity Incentive Plan were also issued at the fair market value on the date of the grant.

41.    On April 26, 2005, the defendants filed a proxy with the SEC on Form DEF 14A (the "2005 Definitive Proxy") which again requested that shareholders approve an amendment to the 1998 Directors Plan. This amendment requested shareholders vote "to increase the size of initial option grants and annual option grants to non-employee directors to 50,000 shares and 25,000 shares, respectively." The 2005 Definitive Proxy again emphasized that the "option grants under the 1998 Directors Plan are automatic and nondiscretionary, and the exercise price of the options is 100% of the fair market value of the common stock on the date of grant."

42.    On April 10, 2006, the Individual Defendants filed another proxy with the SEC on Form DEF 14A (the "2006 Definitive Proxy"). In the 2006 Definitive Proxy, in addition to outlining options granted over the prior year and requesting shareholders vote for certain of directors, the Individual Defendants also requested shareholders approve the VeriSign 2006 Equity Incentive Plan (the "2006 Plan"). The 2006 Plan was to designed to replace the 1998 Directors Plan, the 1998 Equity Incentive Plan, and the 2001 Stock Incentive Plan. Under the plan, the Individual Defendants requested shareholders approve a reservation of 27,000,000 shares to be distributed under the plan. Moreover, if approved, the 2006 Plan would provide members of the board with the "ability to utilize various equity awards, including stock options, restricted stock awards, restricted stock units, stock appreciation rights and stock bonus awards, as deemed appropriate by the compensation committee and management." According to the 2006 Definitive Proxy:

> The exercise price of stock options or stock appreciation rights granted under the 2006 Plan may not be less than 100% of the closing price of VeriSign stock on the day of grant. In the event a grant is made on a day when the Nasdaq National Market (or other applicable principal national securities exchange on which VeriSign's common

10

1  stock is traded) is closed, the fair market value will be determined as
   of the next trading day. On December 31, 2005, the last sale price of
2  VeriSign's common stock was $21.90 per share as reported by the
   NASDAQ National Market.

3

4  **Backdated Stock Options at VeriSign**

5      43.    From 1998 to 2002, the Individual Defendants repeatedly granted themselves and the

6  certain officers of the Company backdated stock options, in violation of their fiduciary duties owed

7  to the Company. The Company's backdating practice is evidenced by the revealing pattern outlined

8  below. For example:

9       a.    On October 30, 1998, defendants Sclavos, Gallivan, Yanowitch, Evan and

10             Shaeffer were purportedly granted 100,000, 45,000, 45,000, 60,000, and

11             90,000 VeriSign shares, respectively, at an exercise price of $30.69 per share.

12             A mere month later, the Company's stock price was trading at $40.12 per

13             share, resulting in a substantial rise in the value of the options;

14      b.    On December 15, 1998 and December 18, 1999, defendant Sclavos was

15             purportedly granted 100,000 VeriSign shares at an exercise price of $49.25

16             per share and 200,000 VeriSign shares at an exercise price of $51.13 per

17             share, respectively. Approximately one later, the Company's stock price was

18             trading at $88.62 per share, resulting in a substantial rise in the value of the

19             options;

20      c.    On August 1, 2000, defendants Gallivan, Evan, and Keith were purportedly

21             granted 125,000, 125,000 and 50,000 VeriSign shares at an exercise price of

22             $151.25, respectively.  A mere month later, the Company's stock price was

23             trading at $198.88, resulting in a substantial rise in the value of the options;

24      d.    On March 15, 2001, defendant Evan was purportedly awarded 40,000

25             VeriSign shares and defendants Gallivan, Korzeniewski and Pereira were

26             purportedly awarded each granted 35,000 VeriSign shares at an exercise price

27             of $34.44. A month later, the Company's stock price was trading at $47.00,

28             resulting in a substantial rise in the value of the options;

11

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

e.    On September 6, 2001, defendants Evan, Gallivan, and Korzeniewski were

purportedly each granted 90,000 shares and defendant Pereira was

purportedly granted 50,000 at an exercise price of $34.16. Approximately a

month later, the Company's stock price was trading at $47.80, resulting in a

substantial rise in the value of the options.

**Defendants Begin to Reveal the Truth**

44.    On June 27, 2006, the Defendants filed a Form 8-K with the SEC. The accompanying press release which was disseminated to the investing public stated:

> On June 26, 2006, VeriSign, Inc. received a grand jury subpoena from the U.S. Attorney for the Northern District of California requesting documents relating to VeriSign's stock option grants and practices. VeriSign intends to cooperate fully with the U.S. Attorney's Office in connection with this subpoena.
>
> VeriSign has also received an informal inquiry from the Securities and Exchange Commission requesting documents related to VeriSign's stock option grants and practices. VeriSign is voluntarily responding to this request and intends to cooperate fully with the Securities and Exchange Commission.
>
> Prior to receiving either of these requests, VeriSign's Board of Directors had commenced an internal review and analysis of VeriSign's historical stock option grants. This internal review is continuing. The Board of Directors is being assisted in its review by independent legal counsel.

45.    Prior to this announcement, the investing public had no information that Defendants had backdated stock options at the expense of the Class. As a result of the announcement, VeriSign's stock price began to steadily decline.

46.    On August 2, 2006, the Company filed an 8-K with the SEC which stated:

> VeriSign, Inc., a Delaware corporation (the "Company"), announced that Len J. Lauer and Gregory L. Reyes have resigned from the Company's Board of Directors, effective July 31, 2006. Mr. Lauer and Mr. Reyes were members of the Compensation Committee of the Board; Michelle Guthrie and Edward A. Mueller have been appointed to the Compensation Committee effective August 1, 2006. Neither Mr. Lauer's nor Mr. Reyes' resignation from the Board of Directors involved any disagreement with the Company.

47.    On August 3, 2006, the Company's stock hit a low of $15.95, a drop of $6.83 from the stock's June 27, 2006 closing price of $22.78.

12

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

48. On August 9, 2006, the Company acknowledged that it could not meet its financial obligations when it filed a Form 12b-25, Notice of Inability to Timely File 10-Q, with the SEC. The Notice stated:

> VeriSign, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2006 ("Form 10-Q") by the prescribed due date of August 9, 2006. The Company announced on June 27, 2006 that its Board of Directors has commenced an independent review of VeriSign's historical stock option grants. The Board of Directors is being assisted in its independent review by independent legal counsel. Until this independent review is completed, the Company will not be able to file its Form 10-Q. The Company intends to file the Form 10-Q as promptly as practicable after completion of the independent review, but does not expect that such filing will be made by August 14, 2006, the extended deadline.

49. On that same day, the Company also filed an 8-K and Press Release outlining the Company's delay of its 8-K filing. The Company's stock price closed at $17.46 on August 9, 2006, a drop of $5.32 from the stock's June 26, 2006 closing price of $22.78.

## Ongoing Aftermath

50. On August 17, 2006, the Company filed another 8-K with the SEC. The accompanying press release stated:

> VeriSign, Inc. (Nasdaq: VRSN), the leading provider of intelligent infrastructure services for the Internet and telecommunications networks, announced today that it received a Nasdaq Staff Determination letter from The Nasdaq Stock Market on August 14, 2006 stating that VeriSign is not in compliance with the filing requirements under Nasdaq Marketplace Rule 4310(c)(14) due to the delay in filing of its Form 10-Q for the fiscal quarter ended June 30, 2006. VeriSign will request a hearing before a Nasdaq Listing Qualifications Panel ("Panel") to review the Nasdaq Staff Determination. Pending a decision by the Panel, VeriSign shares will remain listed on the Nasdaq Stock Market.
>
> As previously disclosed, VeriSign's Board of Directors has commenced an independent review and analysis of VeriSign's historical stock option grants. VeriSign intends to file its Form 10-Q as soon as practicable after completion of its internal review.

//

//

//

13

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

1    51.  On November 9, 2006, the Company filed another Form 12b-25, Notice of Inability

2  to Timely File 10-Q, with the SEC. The Notice stated:

3         VeriSign, Inc. (the "Company") is unable to file its Quarterly Report
          on Form 10-Q for the quarter ended September 30, 2006 ("Form 10-
4         Q") by the prescribed due date of November 9, 2006. The Company
          announced on June 27, 2006 that its Board of Directors has
5         commenced an independent review of VeriSign's historical stock
          option grants. The Board of Directors is being assisted in its
6         independent review by independent legal counsel. Until this
          independent review is completed, the Company will not be able to file
7         its Form 10-Q. The Company intends to file the Form 10-Q as
          promptly as practicable after completion of the independent review,
8         but does not expect that such filing will be made by November 14,
          2006, the extended deadline.

9

10    52.  On November 16, 2006, Defendants filed an 8-K and accompanying press release

11  with the SEC. The press release stated:

12         VeriSign, Inc. (Nasdaq: VRSN), the leading provider of intelligent
          infrastructure services for the networked world, announced today that
13         it received a Nasdaq Staff Determination Letter from The Nasdaq
          Stock Market on November 10, 2006 stating that VeriSign is not in
14         compliance with the filing requirements under Nasdaq Marketplace
          Rule 4310(c)(14) due to the delayed filing of its Form 10-Q for the
15         quarter ended September 30, 2006. VeriSign received a similar notice
          on August 14, 2006 due to the delay in filing its Form 10-Q for the
16         second quarter of 2006. On September 26, 2006, VeriSign appeared
          at a hearing before a Nasdaq Listing Qualifications Panel ("Panel")
17         and presented a plan for compliance with Nasdaq's listing
          requirements, which also contemplated the September 30, 2006 Form
18         10-Q. Pending a decision by the Panel, VeriSign's common stock
          will remain listed on The Nasdaq Global Market.

19

20         As previously disclosed, VeriSign's Board of Directors has
          commenced an independent review and analysis of VeriSign's
          historical stock option grants. VeriSign intends to file its quarterly
21         reports as soon as practicable after completion of its internal review.

22    53.  On November 21, 2006, the Defendants filed an 8-K and accompanying press release

23  announcing that the Company will be required to restate its historical financial statements as a result

24  of the issuance of backdated and/or spring loaded stock options to certain Company employees,

25  officers, and/or directors. The 8-K stated:

26         VeriSign, Inc. (VeriSign) today announced that it will restate its
          historical financial statements. As previously announced, an ad hoc
27         group of independent directors of VeriSign's Board of Directors has
          been reviewing VeriSign's historical stock option grant practices.
28         Although the review is not complete, on November 15, 2006, the

14

1    Board concluded that the company must restate its historical financial
     statements for the years and interim periods from 2001-2005 and for
2    the first quarter of 2006 to record additional non-cash, stock-based
     compensation expense related to past stock option grants having
3    incorrect measurement dates and other administrative inconsistencies
     related to certain stock option grant dates and prices. Based on the
4    findings to date, the non-cash charge to the financial statements for
     the periods 2001-2005 is not expected to exceed $250 million,
5    however the investigation is still on-going.

6    Accordingly, the financial statements and all earnings press releases
     and similar communications issued by the company relating to those
7    periods should not be relied upon pending completion of the
     restatements. The amount of additional non-cash stock-based
8    compensation expense to be recorded in any specific period or in any
     future period and the resulting tax and accounting impact have not
9    been determined.

10   The ad hoc group of independent Directors anticipates its review of
     VeriSign's historical stock option grant practices will be completed by
11   the end of the year. As soon as practicable following the completion
     of the review, VeriSign intends to prepare restated financial
12   statements for all affected periods and thereafter become current on
     the filing of its periodic reports required under the Securities
13   Exchange Act of 1934, as amended. VeriSign is evaluating the
     impact of this matter on its internal controls over financial reporting
14   and on its disclosure controls and procedures.

15   VeriSign has discussed the above matters with KPMG LLP, the
     Company's independent registered public accounting firm

16

17       54.    On December 19, 2006, VeriSign filed an 8-K with the SEC stating that Nasdaq

18   Listing Qualifications Panel allowed the Company's continued listing on Nasdaq despite the

19   Company's inability to file certain of its Form 10-Qs. The 8-K stated:

20           On December 15, 2006, VeriSign, Inc. (the "Company") received a
             written notification from the staff of The Nasdaq Stock Market stating
21           that the Nasdaq Listing Qualifications Panel has granted the
             Company's request for continued listing on The Nasdaq Stock
22           Market, subject to the conditions that the Company shall file its Form
             10-Q for the quarter ended June 30, 2006, Form 10-Q for the quarter
23           ended September 30, 2006 and any required restatements, by January
             24, 2007.
24
             If the Company is unable to file its quarterly reports by January 24,
25           2007, it intends to seek an additional extension of time from the
             Nasdaq Listing Qualifications Panel.
26

27

28

                                          15

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

1    55.   On January 4, 2007, the Company filed an 8-K concerning IRS penalties certain of

2  the Individual Defendants face due to their receipt of backdated stock options. The 8-K stated, in

3  relevant part:

4          Section 409A of the Internal Revenue Code ("Section 409A")
imposes significant penalties on individual income taxpayers who

5          were granted stock options that were unvested as of December 31,
2004 and that have an exercise price of less than the fair market value

6          of the stock on the date of grant ("Affected Options"). These tax
consequences include income tax at vesting, an additional 20% tax

7          and interest charges. In addition, the issuer of Affected Options must
comply with certain reporting and withholding obligations under

8          Section 409A.

9          These adverse tax consequences can be avoided for unexercised
Affected Options if the exercise price of the Affected Option is

10         adjusted to reflect the fair market value at the time the option was
granted (as such measurement date is determined for financial

11         reporting purposes). For Section 16 reporting persons, Internal
Revenue Service rules require that this adjustment in the exercise

12         price be made on or before December 31, 2006. Effective December
31, 2006, certain current executive officers (Stratton Sclavos,

13         Aristotle Balogh, Dana Evan, Judy Lin, and Mark McLaughlin), and a
former executive officer, each elected to increase the exercise price of

14         unexercised Affected Options that they hold to the fair market value
of VeriSign common stock on the date of grant (as such measurement

15         date is determined for financial reporting purposes). The election shall
not be deemed to ratify any purportedly unauthorized stock options.

16

17         Ms. Evan, the principal financial officer, elected to adjust the exercise
price of two Affected Option grants: exercise prices of options to

18         purchase 1,667 and 11,250 shares of VeriSign common stock were
adjusted from $34.44 to $42.26 and from $34.16 to $38.30,

19         respectively. Judy Lin elected to adjust the exercise price of options
to purchase 37,812 shares of VeriSign common stock from $13.46 to

20         $14.93.

21         None of VeriSign's current directors, including Mr. Sclavos, is
believed by the Company to hold Affected Options. However, in the

22         event it is later determined that a director does in fact hold an
Affected Option, certain directors, including Mr. Sclavos, have

23         chosen to make the election with respect to such options.

24         The foregoing is a summary of the terms and conditions of the
Options Election Form and related documentation and does not

25         purport to be complete. The foregoing is qualified in its entirety by
reference to the Options Election Form and related documentation, a

26         copy of which is filed as Exhibit 99.01 to this Current Report on Form
8-K and is incorporated herein by reference.

27

28

16

56.  On March 1, 2007, the Company an 8-K notifying shareholders that VeriSign had filed another Form 12b-25, Notice of Inability to Timely File 10-Q, with the SEC. The 8-K stated:

VeriSign, Inc. (the "Company" or "VeriSign") today filed a Notification of Late Filing on Form 12b-25 with the Securities and Exchange Commission ("SEC") stating that it is unable to file its Annual Report on Form 10-K for the year ended December 31, 2006 ("Form 10-K") by the prescribed due date of March 1, 2007. As previously announced, VeriSign has determined that it must restate its historical financial statements for the years 2002-2005 and for the first quarter of 2006 to record additional non-cash, stock-based compensation expense in connection with the review of historical stock option grant practices conducted by an ad hoc group of independent directors. On January 31, 2007, the Company announced that the ad hoc group of independent directors had substantially completed its review of VeriSign's historical stock option grants. The Company has not completed the audit of its restatement as of the date of this disclosure. The Company will not be able to file its Form 10-K until the restatement audit is completed. The Company intends to file the Form 10-K as promptly as practicable after completion of the restatement audit, but does not expect that such filing will be made by March 16, 2007, the extended deadline.

Nasdaq Proceedings

In a related matter, on January 19, 2007, the company received written notification from the staff of The Nasdaq Stock Market stating that the Nasdaq Listing Qualifications Panel granted the company's request for continued listing on The Nasdaq Stock Market, subject to the conditions that the company file its Form 10-Q for the quarter ended June 30, 2006, Form 10-Q for the quarter ended September 30, 2006 and any required restatements, by February 12, 2007. On February 7, 2007, the Nasdaq Listing and Hearings Review Council notified the company that, at the company's request, it had called the January 19, 2007 decision for review and has stayed any future determinations to suspend the company's securities from trading until the review process runs its course. If the Listing Council determines it is appropriate, it may grant the company additional time to regain compliance with Nasdaq's filing requirement, until the earlier of 60 days from the date of its decision or 180 days from the Panel's decision. The Listing Council has not issued a decision in this matter as of the date of this disclosure.

VeriSign will continue to cooperate with the Nasdaq Listing and Hearings Review Council in this matter.

Internal Revenue Code Section 409A Disclosure Update

In a Form 8-K filed on January 4, 2007, the Company reported that certain of the Company's Section 16 reporting persons elected to increase the exercise price of certain unexercised stock option grants that were subject to Section 409A of the Internal Revenue Code ("Section 409A"). Section 409A imposes an additional tax and interest charge on deferred income of individual income taxpayers

17

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLDG\DirectComplaint.001.wpd

1    who were granted stock options that were unvested as of December
     31, 2004 and have an exercise price of less than the fair market value
2    of the stock on the date of grant ("Affected Options). This additional
     tax and interest charge on deferred income is avoided if the taxpayer
3    agrees to adjust the options' exercise price to reflect the fair market
     value at the time the option was granted (as such measurement date is
4    determined for financial reporting purposes). For Section 16 reporting
     persons, Internal Revenue Service rules require that this adjustment in
5    the exercise price be made on or before Decern'ner 31, 2006 in order to
     remove the Affected Options from the scope of Section 409A.
6
     The Company's January 4, 2007 8-K also reported that none of the
7    Company's current directors holds Affected Options. The Company
     has determined that two current directors hold Affected Options.
8    Neither director elected to increase the exercise price before
     December 31, 2006.
9
     The Company intends to file a Form 8-K/A amending the Form 8-K
10   filed on January 4, 2007.

11        57.    On March 9, 2007, the Company filed another 8-K with the SEC and issued an

12   accompanying press release entitled "Verisign Receives Anticipated Letter from Nasdaq" which

13   stated, in relevant part:

14        VeriSign, Inc. (Nasdaq: VRSN) announced today that it received a
          Nasdaq Staff Determination letter from The Nasdaq Stock Market on
15        March 5, 2007 stating that VeriSign is not in compliance with the
          filing requirements under Nasdaq Marketplace Rule 4310(c)(14) due
16        to the delay in filing of its Form 10-K for the fiscal year ended
          December 31, 2006 ("2006 10-K"). As previously announced on
17        March 1, 2007, the Nasdaq Listing and Hearings Review Council
          ("Listing Council") notified the Company that the Listing Council has
18        stayed any future determinations to suspend the Company's securities
          from trading until the Nasdaq review process has been completed.
19        The Listing Council's decision to stay any future determinations to
          suspend the Company's securities from trading until the review
20        process has been completed also applies to the Company's failure to
          timely file its 2006 10-K. If the Listing Council determines it is
21        appropriate, it may grant the Company additional time to regain
          compliance with Nasdaq's filing requirement, until the earlier of 60
22        days from the date of its decision or 180 days from the date of the
          Panel's decision. The Listing Council has not issued a decision in this
23        matter as of the date of this announcement.

24        VeriSign has previously announced that it must restate its historical
          financial statements for the years 2002-2005 and for the first quarter
25        of 2006 to record additional non-cash, stock-based compensation
          expense in connection with the review of historical stock option grant
26        practices conducted by an ad hoc group of independent directors. On
          January 31, 2007, the Company announced that the ad hoc group of
27        independent directors had substantially completed its review of
          VeriSign's historical stock option grants. On March 1, 2007,
28        VeriSign filed a notice with the SEC disclosing that it would be

                                        18

1          unable to timely file its 2006 10-K because it had not completed the
audit of its restatement, that it intends to file the 2006 10-K as

2          promptly as practicable after completion of the restatement audit, and
that it does not expect that such filing will be made by March 16,

3          2007, the extended deadline.

4      58.    The Defendants disseminated false and misleading financial statements in, *inter alia*,

5  the following "Form 10-K" filings:

6          a.    Form 10-K405 for fiscal year ended December 31, 1998, and filed with the
SEC on February 22, 1999;

7

8          b.    Form 10-K405 for fiscal year ended December 31, 1999, and filed with the
SEC on May 22, 2000;

9          c.    Form 10-K/A for fiscal year ended December 31, 1999, and filed with the
SEC on April 27, 2000;

10

11         d.    Form 10-K for fiscal year ended December 31, 2000, and filed with the SEC
on March 28, 2001;

12         e.    Form 10-K for fiscal year ended December 31, 2001, and filed with the SEC
on March 19, 2002;

13

14         f.    Form 10-K for fiscal year ended December 31, 2002, and filed with the SEC
on March 31, 2003;

15         g.    Form 10-K for fiscal year ended December 31, 2003, and filed with the SEC
on March 15, 2004; and

16

17         h.    Form 10-K for fiscal year ended December 31, 2004, and filed with the SEC
on March 16, 2005.

18         i.    Form 10-K for fiscal year ended December 31, 2004, and filed with the SEC
on March 16, 2005.

19

20      59.    The Company's 2001, 2002, 2003, 2004 and 2005 Form 10-Ks were issued in

21  violation of GAAP, and in particular Accounting Principles Board ("APB") Opinion No. 25 ("APB

22  25"), "Accounting for Stock Issued to Employees." Pursuant to APB 25, if the market price on the

23  date of grant exceeds the exercise price of the options, the company must recognize the difference as

24  an expense. Defendants' backdating practice resulted in understated expenses on each Form 10-K

25  because the difference between the market price and option exercise price was not expensed by the

26  Company.

27

28

19

60.    The Individual Defendants also caused and/or participated in issuing, filing and disseminating the false and misleading information regarding Company issued options on the Form(s) DEF 14A (the "Definitive Proxies") filed with the SEC on:

    a.    April 22, 1999;

    b.    April 12, 2001;

    c.    April 3, 2002;

    d.    April 16, 2003;

    e.    April 26, 2004;

    f.    April 26, 2005; and

    g.    April 10, 2006.

61.    The Definitive Proxies were each false and misleading because they failed to correct prior information regarding the issuance of backdated stock options and caused the Class to approve the Individual Defendants request to be appointed as directors of the Company based on that false and misleading information.

62.    Defendants' backdating of options grants also violated provisions of the Internal Revenue Code relating to deduction of option payments and thereby rendered the Company's financial statements in Form 10-K filings for the years 1998, 1999, 2000 and 2001, as well as interim Form 10-Qs, materially false and misleading.

## TOLLING OF THE STATUTE OF LIMITATIONS

63.    The Defendants concealed their violations of law until at least June 27, 2006, the date the Company issued its press release entitled "VeriSign Responds to Stock Option Inquiries." Further, it was not until August 9, 2006, that the investing public was informed that the Defendants would be unable to meet their financial reporting requirements as a result of backdating schemes. Indeed, while the Defendants partially admitted to their violations of law in their November 21, 2006, 8-K filing with the SEC, outlined *infra*, when they admitted that they would be required to restate the earnings for certain accounting periods relevant to plaintiff's allegations herein, the full extent of their violations is not yet known. Instead, VeriSign shareholders and the investing public

20

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

1   have only been advised that the Company will restate its earnings and take a pre-tax charge of no

2   more than $250 million for the fiscal years 2001 through 2005 as a result of their violations of law.

3       64.     As a result, the Individual Defendants have systematically and wrongfully concealed

4   their manipulation of Company stock option plans, falsely asserting that the grants were being

5   administered by a committee of independent directors, while in fact, as outlined herein, the

6   Compensation Committee Defendants were colluding with other Individual Defendants to violate

7   GAAP and Section 162(m). Moreover, the Compensation Committee Defendants were colluding

8   with the other Individual Defendants to make, *inter alia*, false and misleading filings with the SEC.

9       65.     Similarly, the Audit Committee Defendants were systematically and wrongfully

10  concealing wrongdoings of each of the Individual Defendants by disseminating to VeriSign

11  shareholders and the market false financial statements that improperly recorded and accounted for

12  backdated options grants in violation of GAAP and Section 162(m).

13      66.     At no time prior to June 27, 2006, did VeriSign shareholders or any other member of

14  the investing public have reason to know of Defendants' breaches of their fiduciary duties and

15  violations of the Corporations Code. Therefore, the Individual Defendants cannot rely on a statute

16  of limitations defense as they have withheld from VeriSign shareholders and the investing public the

17  facts that give rise to the claims asserted herein.

18                          <u>COUNT I</u>

19                  (Against All Defendants Except VeriSign)
                  <u>Class Claim for Breach of the Duty of Disclosure</u>

20

21      67.     Plaintiff hereby realleges and incorporates by reference the allegations in the

22  preceding paragraphs as if fully set forth herein.

23      68.     Plaintiff brings this claim as a direct claim, on behalf of himself and the Class,

24  against defendants for breach of their fiduciary duty of disclosure.

25      69.     Defendants caused the Company to publish and/or disseminate its 2002, 2003, 2004,

26  2005 and 2006 Definitive Proxies with the false representation that option grants were made with

27  strike prices no less than the fair market value on the date of the grant. Defendants failed to disclose

28  that they knew and/or recklessly disregarded a pervasive options backdating scheme form 1999 to

                                    21

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN\PLD\DirectComplaint.001.wpd

1   2006 causing the options to be issued during much of that time to carry a much lower price than the
2   strike price.
3        70.    As a result of the Individual Defendants' backdating scheme, the 2002, 2003, 2004,
4   2005 and 2006 Definitive Proxies and the Form 10-K for the years 2001, 2002, 2003, 2004, and
5   2005, and respective Form 10-Qs, materially overstated VeriSign's net income and retained
6   earnings. Moreover, as a result of the Individual Defendants' backdating scheme, the Company has
7   been unable to file its Form 10-Qs for the quarters ending June 30, 2006 and September 30, 2006,
8   and Form 10-K for the fiscal year ending December 31, 2006. Further, as a result of the materially
9   overstatements, the Company faces delisting from the Nasdaq National Market.
10       71.    The foregoing misleading statements were material to VeriSign shareholders'
11  consideration of the: (i) 1999 amendment (as outlined in the 1999 Definitive Proxy), 2001
12  amendment (as outlined in the 2001 Definitive Proxy) and 2002 amendment (as outlined in the 2002
13  Definitive Proxy) to the 1998 Equity Incentive Plan; (ii) 2000 amendment (as outlined in the 2003
14  Definitive Proxy), 2003 amendment (as outlined in the 2003 Definitive Proxy) and 2005
15  amendment (as outlined in the 2005 Definitive Proxy) to the 1998 Directors Plan; and (iii) 2006
16  Plan. Indeed, if shareholders had known the truth regarding the Individual Defendants' false and
17  misleading statements, they would have not approved any of the amendments to the 1998 Option
18  Plans and/or adoption of the 2006 Plan which added over 47,750,000 shares to the amount approved
19  to the amount available under the terms of the 1998 Option Plans.
20       72.    The Class was harmed as a result of the dilution of its voting power and
21  proportionate share of the Company due to the dedication of over 47 million VeriSign shares as a
22  result of the amendments to the 1998 Option Plans and adoption of the 2006 Plan.
23  //
24  //
25
26
27
28

22

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

<u>COUNT II</u>

(Against All Defendants)
<u>Claim for Rescission</u>

73.    Plaintiff hereby realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

74.    Plaintiff brings this claim as a direct claim, on behalf of himself and the Class, against defendants for: (A) rescission of the: (i) 1999 amendment (as outlined in the 1999 Definitive Proxy), 2001 amendment (as outlined in the 2001 Definitive Proxy) and 2002 amendment (as outlined in the 2002 Definitive Proxy) to the 1998 Equity Incentive Plan; (ii) 2000 amendment (as outlined in the 2003 Definitive Proxy), 2003 amendment (as outlined in the 2003 Definitive Proxy) and 2005 amendment (as outlined in the 2005 Definitive Proxy) to the 1998 Directors Plan; and (iii) 2006 Plan; and (B) cancellation of the 47.75 million shares added via amendments to the 1998 Plan and through adoption of the 2006 Plan.

75.    In the Definitive Proxies, defendants made the false representation that option grants were made with strike prices no less than the fair market value on the date of the grant. Defendants failed to disclose that in fact they either knew and/or recklessly disregarded a pervasive backdating scheme from 1999 to 2006 under which options granted were backdated and/or spring-loaded.

76.    The Definitive Proxies and relevant Form 10-Ks each materially misrepresented VeriSign's net income and retained earnings. Indeed, if the Defendants, and each of them, had not disseminated the materially false and misleading information, plaintiff and the Class would not have approved the amendments to the 1998 Option Plans and the adoption of the 2006 Plan.

77.    The Class was harmed as a result of the foregoing as they were deprived of the opportunity to cast a fully informed vote with regards to each of the amendments to the 1998 Option Plans and adoption of the 2006 Plan.

78.    The Class was also harmed as a result of the dilution of its voting power and proportionate share of the Company due to the dedication of over 47 million VeriSign shares as a result of the amendments to 1998 Option Plans and adoption of the 2006 Plan.

23

79.    Defendants secured adoption of the amendments to the 1998 Option Plans and the 2006 Plan through false and misleading statements. Accordingly the amendments to the 1998 Options Plans and the 2006 Plan must be rescinded and the 47.75 million shares added to the 1998 Option Plans must be cancelled.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative;

2.    Declaring that defendants have breached and/or are aiding and abetting breaches of fiduciary and other duties to Plaintiff and the other members of the Class;

3.    Rescinding: (i) all amendments to the 1998 Option Plans; and (ii) the 2006 Plan, and cancelling the 47.75 million shares added to the 1998 Plan as a result of the amendments and adoption of the 2006 Plan.

4.    Preliminarily and permanently enjoining the defendants from granting any stock options and from allowing the exercise of any of the currently outstanding options granted under the 1998 Option Plans or 2006 Plan;

5.    Awarding compensatory damages against defendants, individually and severally, as the facts may justify, in an amount to be determined at trial, together with pre-judgment interest thereon at the maximum rate allowed by law from date of judicial demand until paid;

6.    Awarding costs and disbursements, including Plaintiff's counsel's fees and experts' fees; and

7.    Granting such other and further relief as the Court may deem just and proper.

//
//
//

24

1

## JURY DEMAND

2      Plaintiff demands a trial by jury.

3

4

5      Dated: May 15, 2007

6

Patrice L. Bishop
STULL, STULL & BRODY

7

8      By:    Patrice Bishop
              Patrice L. Bishop
              10940 Wilshire Boulevard

9              Suite 2300

10             Los Angeles, CA 90024
               Tel:   (310) 209-2468
               Fax:   (310) 209-2087

11

12             Jules Brody
               Aaron L. Brody

13             STULL, STULL & BRODY
               6 East 45th Street

14             New York, NY 10017
               Tel:   (212) 687-7230

15             Fax:   (212) 490-2022

16             Joseph H. Weiss
               WEISS & LURIE

17             551 Fifth Avenue
               Suite 1600

18             New York, NY 10176
               Tel:   (212) 682-3025

19             Fax:   (212) 682-3010

20             Counsel for Plaintiff

21

22

23

24

25

26

27

28

25

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY
W:\STULL\VERISIGN3\PLD\DirectComplaint.001.wpd

# EXHIBIT B

# EXHIBIT B

MAY. 15. 2007  2:01PM   A & A LEGAL SERVICE 6506974640        NO. 7913   P. 2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Patrice L. Bishop (SBN 182256)<br>STULL, STULL & BRODY<br>10940 Wilshire Boulevard, Suite 2300<br>Los Angeles, CA 90024 | **FILED** |

TELEPHONE NO.: (310) 209-2468    FAX NO.: (310) 209-2087

ATTORNEY FOR (Name): Plaintiff Thomas Mykityshyn

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

STREET ADDRESS: 191 North First Street

MAILING ADDRESS: same

CITY AND ZIP CODE: San Jose, CA 95113

BRANCH NAME: Downtown Superior

2007 MAY 15  PM 3: 45

KIRI TORRE
EXEC OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
DEPUTY

CASE NAME:
THOMAS MYKITYSHYN, etc. v. D. JAMES BIDZOS, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CV 085894 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☑ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse condemnation (14) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Civil rights (08) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Defamation (13) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Fraud (16) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Intellectual property (19) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Professional negligence (25) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Petition re: arbitration award (11) | |
| **Employment** | ☐ Writ of mandate (02) | |
| ☐ Wrongful termination (36) | ☐ Other judicial review (39) | |
| ☐ Other employment (15) | | |

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence   f. ☑ Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

4. Number of causes of action (specify):

5. This case ☑ is   ☐ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 15, 2007

Patrice L. Bishop, Esq.
_____
(TYPE OR PRINT NAME)

_Patrice Bishop_
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2007] | **CIVIL CASE COVER SHEET** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Cal. Rules of Court, rules 3.220, 3.400–3.403;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov |

# CIVIL LAWSUIT NOTICE

CASE NUMBER: 107  CV085890

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANTS* (the person(s) being sued): You must do each of the following to protect your rights:

1.  You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;

2.  You must send a copy of your written response to the plaintiff; and

3.  You must attend the first Case Management Conference.

   Warning: If you do not do these three things, you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: www.sccsuperiorcourt.org/civil/rule11toc.htm
- Rose Printing, 39 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC. You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

---

*Your Case Management Judge is:* Hon. Jack Komar    for all purposes    *DEPT:* 17C

*The first CMC is scheduled as follows:* (Completed by Clerk of Court)
            Date: SEP 2 5 2007    Time: 10:00am  Dept.: 17C

*The next CMC is scheduled as follows:* (Completed by party if the first CMC was continued or has passed)
            Date: _____    Time: _____    Dept.: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012
Rev. 1/01/04

CIVIL LAWSUIT NOTICE

# EXHIBIT C

# EXHIBIT C

MAY. 15. 2007    2:01PM    A-& A LEGAL SERVICE 6506974640                    NO. 7913    P. 3

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

2007 MAY 15 PM 3: 45

KIRI TORRE
EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
DEPUTY

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
D. JAMES BIDZOS;

[Additional Parties Attachment Form is attached]

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THOMAS MYKITYSHYN, on Behalf of Himself and All Others
Similarly Situated

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Santa Clara
191 North First Street
San Jose, CA 95113

CASE NUMBER:
*(Número del Caso):* CV 085890

FILE VIA FAX

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Patrice L. Bishop (SBN 182256)    Tel: (310) 209-2468
STULL, STULL & BRODY, 10940 Wilshire Boulevard, Suite 2300, Los Angeles, CA 90024

DATE: MAY 1 5 2007                   Clerk, by _____, Deputy
*(Fecha)*                            *(Secretario)*                           *(Adjunto)*
                                     Kiri Torre    Officer/Clerk

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

MAY. 15. 2007   2:02PM   A    LEGAL SERVICE 6506974640                NO. 7913   P. 4

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| MYKITYSHYN, etc. v. BIDZOS, et al. | |

### INSTRUCTIONS FOR USE

✦ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
✦ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

WILLIAM L. CHENEVICH,
DAVID J. COWAN,
MICHELLE GUTHRIE,
SCOTT G. KRIENS,
LEN J. LAUER,
ROGER H. MOORE,
EDWARD A. MUELLER,
GREGORY L. REYES,
WILLIAM A. ROPER, JR.,
STRATTON D. SCLAVOS,
LOUIS A. SIMPSON,
VERISIGN, INC.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT D

# EXHIBIT D

1  Patrice L. Bishop (182256)
   STULL, STULL & BRODY
2  10940 Wilshire Boulevard
   Suite 2300
3  Los Angeles, CA 90024
   Tel:   (310) 209-2468
4  Fax:   (310) 209-2087

5  Counsel for Plaintiff

6

7

8

9

FILED                UCS

2007 JUN -6 PM 2:00

KIRI TORRE
F EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
                    DEPUTY
S. GARGIULO

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  FOR THE COUNTY OF SANTA CLARA

12

13  THOMAS MYKITYSHYN, on Behalf of      )  CASE NO. 1:07CV085890
    Himself and All Others Similarly Situated, )
14                                       )  **CLASS ACTION**
                       Plaintiff,        )
15                                       )  **PROOF OF SERVICE OF SUMMONS**
             v.                          )  **ON DEFENDANT VERISIGN, INC.**
16                                       )
    D. JAMES BIDZOS,                     )
17  WILLIAM L. CHENEVICH,                )
    DAVID J. COWAN,                      )
18  MICHELLE GUTHRIE,                    )
    SCOTT G. KRIENS,                     )
19  LEN J. LAUER,                        )
    ROGER H. MOORE,                      )
20  EDWARD A. MUELLER,                   )
    GREGORY L. REYES,                    )
21  WILLIAM A. ROPER, JR.,               )
    STRATTON D. SCLAVOS,                 )
22  LOUIS A. SIMPSON,                    )
    VERISIGN, INC.,                      )
23                                       )
                       Defendants.       )
24  _____)

25

26

27

28

PROOF OF SERVICE OF SUMMONS ON DEFENDANT VERISIGN, INC.
W:\STULL\VERISIGN3\PLD\Caption.wpd

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| PATRICE L. BISHOP, Bar No.: 182256      11-84257<br>STULL, STULL & BRODY          a<br>10940 WILSHIRE BL., SUITE 2300<br>LOS ANGELES, CA 90024 | | **FILED**<br><br>2007 JUN -6 PM 2:00<br><br>KIRI TORRE<br>F EXEC OFFICER/CLERK<br>SUPERIOR COURT OF CA<br>UNTY OF SANTA CLARA<br>DEPUTY<br>S. GAZ... |
| TELEPHONE NO.: (310) 209-2468 | | |
| ATTORNEY FOR *(Name):* PLAINTIFF | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: SANTA CLARA
STREET ADDRESS: Per Cal. Rule of Court 982.9. (a) (8):
MAILING ADDRESS: The address of the court is not required
CITY AND ZIP CODE:
BRANCH NAME: SAN JOSE - UNLIMITED

| PLAINTIFF/PETITIONER: MYKITYSHYN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BIDZOS | 107CV085890 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>00303810-01 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☒ summons
   - b. ☒ complaint
   - c. ☐ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ cross-complaint
   - f. ☒ other *(specify documents):* SUMMONS & COMPLAINT; CIVIL CASE COVER SHEET; CIVIL LAWSUIT NOTICE; SANTA CLARA SUPERIOR COURT ADR INFORMATION SHEET

3. a. Party served *(specify name of party as shown on documents served):* VERISIGN, INC. BY SERVING C.T. CORPORATION SYSTEMS (Authorized agent to accept service of process)
   b. person served: ☐ party in item 3a   ☒ other *(specify name and relationship to the party named in item 3a):*
      MARGARET WILSON, Service of Process Clerk/Supervisor

4. Address where the party was served: 818 WEST SEVENTH STREET SUITE 200
   LOS ANGELES, CA 90017   (B)

5. I served the party *(check proper box)*
   - a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 05/25/07   (2) at *(time):* 10:40 am
   - b. ☐ by substituted service. On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to the person indicated in item 3):*

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
         *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2



| PLAINTIFF/PETITIONER: MYKITYSHYN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BIDZOS | 107CV085890 |

c. ☐ by mail and acknowledgment of receipt of service. I mailed the documents listed in Item 2 to the party, to the address address shown in Item 4, by first-class mail, postage prepaid.
    (1) on (date):     (2) from (city):
    (3) ☐ with two copies of the Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)
    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ by other means specify means of service and authorizing code section):

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of (specify):
  c. ☐ as occupant.
  d. ☒ on behalf of (specify): VERISIGN, INC.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ CCP 416.10 (corporation) | ☐ CCP 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.60 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. Person who served papers
  a. Name: N. VALLES
  b. Address: 7124 Owensmouth Ave., #106
  c. Telephone number: (818) 763-6931         Canoga Park, CA  91303
  d. The fee for service was: $ 49.95
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code Section 22350(b).
    (3) ☒ registered California process server:
      (i) ☐ Owner  ☒ employee  ☐ independent contractor
      (ii) Registration No.: 3644
      (iii) County: LOS ANGELES

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 05/25/07

N. VALLES
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

# EXHIBIT E

# EXHIBIT E

1  CHRISTOPHER H. McGRATH (SB# 149129)
   chrismcgrath@paulhastings.com
2  OLEG CROSS (SB# 246680)
   olegcross@paulhastings.com
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   3579 Valley Centre Drive
4  San Diego, CA  92130
   Telephone: (858) 720-2500
5  Facsimile: (858) 720-2555

6  THOMAS A. ZACCARO (SB# 183241)
   thomaszaccaro@paulhastings.com
7  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   515 South Flower Street, Twenty-Fifth Floor
8  Los Angeles, CA  90074-2228
   Telephone: (213) 683-6000
9  Facsimile: (213) 627-0705

10  EDWARD HAN (SB# 196924)
    edwardhan@paulhastings.com
11  PAUL, HASTINGS, JANOFSKY & WALKER LLP
    55 Second Street, 24th Floor
12  San Francisco, CA  94105
    Telephone: (415) 856-7000
13  Facsimile: (415) 856-7100

14  *Attorneys for Defendant VeriSign, Inc.*

15           SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                    COUNTY OF SANTA CLARA

17

18  THOMAS MYKITYSHYN, On Behalf of        CASE NO. 1-07-CV-085890
    Himself and All Others Similarly Situated,
19                                          CLASS ACTION
              Plaintiff,
20                                          DEFENDANT VERISIGN, INC.'S
         vs.                                ANSWER TO PLAINTIFF'S CLASS
21                                          ACTION COMPLAINT FOR BREACHES
    D. JAMES BIDZOS, WILLIAM L.             OF FIDUCIARY DUTY
22  CHENEVICH, DAVID J. COWAN,
    MICHELLE GUTHRIE, SCOTT G.
23  KRIENS, LEN J. LAUER, ROGER H.
    MOORE, EDWARD A. MUELLER,
24  GREGORY L. REYES, WILLIAM A.
    ROPER, JR., STRATTON D. SCLAVOS,
25  LOUIS A. SIMPSON, VERISIGN, INC.,       Dept:   17C
                                            Judge:  Honorable Jack Komar
26            Defendants.

27

28

─────────────────────────────────────────────
VERISIGN, INC.'S ANSWER TO CLASS ACTION COMPLAINT

E-FILED
Jun 22, 2007 5:00 PM
KIRI TORRE
Chief Executive Officer
Superior Court of CA, County of Santa Clara
Case #1-07-CV-085890 Filing #G-3747
By S. Gancayco, Deputy

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1        Defendant VeriSign, Inc. ("VeriSign"), by and through its attorneys, and for its Answer to

2 the Class Action Complaint for Breaches of Fiduciary Duty ("Complaint"), responds as follows:

3 **GENERAL DENIAL**

4        1.      Pursuant to Section 431.30 of the California Code of Civil Procedure, VeriSign

5 generally denies each and every allegation of the Complaint.

6        2.      As further and separate defenses to the Complaint and each count stated therein,

7 VeriSign alleges the following affirmative defenses.

8 **AFFIRMATIVE DEFENSES**

9

10 **FIRST AFFIRMATIVE DEFENSE**

11 **(To All Causes of Action)**

12 **(SLUSA Preemption)**

13        3.      As a further and separate defense to the Complaint and each count thereof,

14 VeriSign alleges that this action is preempted in its entirety by the Securities Litigation Uniform

15 Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f).

16 **SECOND AFFIRMATIVE DEFENSE**

17 **(To All Causes of Action)**

18 **(Failure to State a Claim)**

19        4.      As a further and separate defense to the Complaint and each count thereof,

20 VeriSign alleges that the Complaint and each of its purported claims fail to state a claim upon

21 which relief can be granted.

22 **THIRD AFFIRMATIVE DEFENSE**

23 **(To All Causes of Action)**

24 **(Lack of Standing)**

25        5.      As a further and separate defense to the Complaint and each count thereof,

26 VeriSign alleges that Plaintiff and other members of the putative class have no authority or

27 standing to bring this action.

28

-1-

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1

### FOURTH AFFIRMATIVE DEFENSE

2

#### (To All Causes of Action)

3

#### (Form of Action)

4    6.    As a further and separate defense to the Complaint and each count thereof,

5   VeriSign alleges that claims of Plaintiff and other members of the putative class are not properly

6   maintained as a class action.  In addition, VeriSign contends that this lawsuit should not proceed

7   as a class action on the grounds that, inter alia, the named Plaintiff is not typical of, and does not

8   and cannot fairly and adequately represent, the putative class; and a class action will not be

9   superior to other methods available for adjudication of this controversy.

10

### FIFTH AFFIRMATIVE DEFENSE

11

#### (To All Causes of Action)

12

#### (Applicable Statutes of Limitations)

13    7.    As a further and separate defense to the Complaint and each count thereof,

14   VeriSign is informed and believes that claims of Plaintiff and other members of the putative class

15   are barred, in whole or in part, by the applicable statutes of limitation, including but not limited to

16   the limitation periods set forth in California Code Civil Procedure Sections 338 and 343.

17

### SIXTH AFFIRMATIVE DEFENSE

18

#### (To All Causes of Action)

19

#### (Waiver, Laches, Ratification, Acquiescence, Unclean Hands)

20    8.    As a further and separate defense to the Complaint and each count thereof,

21   VeriSign alleges that claims of Plaintiff and other members of putative class are barred in whole

22   or in part by the doctrines of waiver, laches, ratification, acquiescence and/or unclean hands.

23

### SEVENTH AFFIRMATIVE DEFENSE

24

#### (To All Causes of Action)

25

#### (Statements Not Material)

26    9.    As a further and separate defense to the Complaint and each count thereof,

27   VeriSign alleges that Plaintiff and other members of the putative class are not entitled to any

28

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1   recovery from VeriSign because any allegedly false or misleading statements or omissions

2   attributable to it, which VeriSign denies making, were not material.

3                          **EIGHTH AFFIRMATIVE DEFENSE**

4                              **(To All Causes of Action)**

5                                     **(Good Faith)**

6         10.    As a further and separate defense to the Complaint and each count thereof,

7   VeriSign alleges that Plaintiff and other members of the putative class are barred from any

8   recovery against VeriSign because VeriSign, at all times relevant hereto, acted reasonably,

9   properly, and in good faith in light of the circumstances of which it was aware at the time of any

10  actions (or failure to act), and did not culpably participate, nor directly or indirectly induce the act

11  or acts constituting the alleged violations and causes of action.

12                         **NINTH AFFIRMATIVE DEFENSE**

13                             **(To All Causes of Action)**

14                            **(Lack of Cognizable Injury)**

15        11.    As a further and separate defense to the Complaint and each count thereof,

16  VeriSign alleges that claims of Plaintiff and other members of the putative class are barred in

17  whole or in part because they cannot establish that they have suffered cognizable injury, including

18  because they cannot show that they suffered any damages.

19                         **TENTH AFFIRMATIVE DEFENSE**

20                             **(To All Causes of Action)**

21                              **(Speculative Damages)**

22        12.    As a further and separate defense to the Complaint and each count thereof,

23  VeriSign alleges that Plaintiff and other members of the putative class are not entitled to any

24  recovery from VeriSign because the alleged damages, if any, are speculative.

25  / / /

26  / / /

27  / / /

28  / / /

-3-

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1    **ELEVENTH AFFIRMATIVE DEFENSE**

2    **(To All Causes of Action)**

3    **(Lack of Loss Causation)**

4        13.    As a further and separate defense to the Complaint and each count thereof,

5    VeriSign alleges that claims of Plaintiff and other members of the putative class are barred in

6    whole or in part because no conduct attributable to VeriSign was the cause in fact or proximate

7    cause of the loss or damages Plaintiff and other members of the putative class seek to recover in

8    this action.

9    **TWELFTH AFFIRMATIVE DEFENSE**

10   **(To All Causes of Action)**

11   **(Lack of Knowledge)**

12       14.    As a further and separate defense to the Complaint and each count thereof,

13   VeriSign alleges that claims of Plaintiff and other members of the putative class are barred in

14   whole or in part because VeriSign, or any individuals acting on its behalf, did not know, and in

15   the exercise of reasonable care could not have known or had reasonable grounds to believe, that

16   any alleged misstatement or omission of material fact existed.

17   **THIRTEENTH AFFIRMATIVE DEFENSE**

18   **(To All Causes of Action)**

19   **(Estoppel)**

20       15.    As a further and separate defense to the Complaint and each count thereof,

21   VeriSign alleges that claims of Plaintiff and other members of the putative class are or will be

22   barred or diminished, in whole or in part, by the doctrine of judicial and collateral estoppel

23   because of prior statements, admissions, and rulings in this and other cases, proceedings and

24   matters that are inconsistent with and contrary to the allegations of the Complaint. .

25   ///

26   ///

27   ///

28   ///

-4-

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTEENTH AFFIRMATIVE DEFENSE

### (To All Causes of Action)

### (Vague & Uncertain)

16.    As a further and separate defense to the Complaint and each count thereof, VeriSign alleges that with respect to each purported claim for relief allegedly asserted against VeriSign, the Complaint fails to state the alleged claims with sufficient particularity to allow VeriSign to respond with particularity and to ascertain what other defenses may exist, barring the claims of Plaintiff and other members of the putative class.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (To All Causes of Action)

### (Offset)

17.    As a further and separate defense to the Complaint and each count thereof, VeriSign alleges that any recovery for damages allegedly incurred by Plaintiff and other members of the putative class, if any, is subject to offset in the amount of any tax benefits or other benefits received by Plaintiff or other members of the putative class through their investments.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (To All Causes of Action)

### (Intervening or Superseding Cause)

18.    As a further and separate defense to the Complaint and each count thereof, VeriSign alleges that Plaintiff and other members of the putative class are barred from any recovery against VeriSign because their alleged damages, if any, were the result of one or more intervening or superseding causes or caused by the acts and/or failures to act of persons and/or entities other than VeriSign, and were not the result of any act or omission on the part of VeriSign.

/ / /

/ / /

/ / /

/ / /

-5-

E-Filed Jun.22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1      **SEVENTEENTH AFFIRMATIVE DEFENSE**

2      **(To All Causes of Action)**

3      **(Business Judgment)**

4      19.     As a further and separate defense to the Complaint and each count thereof,

5      VeriSign alleges that Plaintiff and other members of the putative class are barred from any

6      recovery against VeriSign because all actions were undertaken in the exercise of business

7      judgment. Therefore, each and every claim in the Complaint is barred by the business judgment

8      rule.

9      **EIGHTEENTH AFFIRMATIVE DEFENSE**

10     **(To All Causes of Action)**

11     **(Adequate Remedy at Law)**

12     20.     As a further and separate defense to the Complaint and each count thereof,

13     VeriSign alleges that claims of Plaintiff and other members of the putative class for equitable

14     relief, including injunctive relief and rescission, are barred because Plaintiff and other members

15     of the putative class have an adequate remedy at law.

16     **NINETEENTH AFFIRMATIVE DEFENSE**

17     **(To All Causes of Action)**

18     **(Failure to Mitigate)**

19     21.     As a further and separate defense to the Complaint and each count thereof,

20     VeriSign is informed and believes that Plaintiff and other members of the putative class have

21     failed to take reasonable and timely actions to mitigate their damages, if any, as alleged in the

22     Complaint and, as a result, are barred from obtaining any of the relief sought in the Complaint.

23     **TWENTIETH AFFIRMATIVE DEFENSE**

24     **(To All Causes of Action)**

25     **(Unjust Enrichment)**

26     22.     As a further and separate defense to the Complaint and each count thereof,

27     VeriSign alleges that Plaintiff and other members of the putative class are barred from obtaining

28     any recovery from VeriSign because they have suffered no cognizable damages or injury, the

-6-

E-Filed Jun 22, 2007 5:00 PM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3747

1    alleged damages, if any, are speculative and, as a result, any recovery would result in unjust

2    enrichment.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (To All Causes of Action)

#### (Attorneys' Fees)

6    23.    The Complaint, and each cause of actions therein, fail to state facts sufficient to

7    allow Plaintiff and other members of the putative class to recover attorneys' fees against

8    VeriSign. Therefore, Plaintiff's claims for attorneys' fees must be stricken as they are not

9    recoverable as a matter of law.

### DEFENSES RESERVED

11    24.    VeriSign hereby reserves and asserts all affirmative defenses available under

12    federal law and under any applicable state law, and gives notice that it intends to rely upon any

13    other defense that may become available during the course of this litigation and hereby reserves

14    its right to amend its answer to assert other related defenses as may become available. To the

15    extent applicable, VeriSign incorporates by reference, as though fully set forth herein, any

16    pertinent defenses raised by any other defendant to this action.

### PRAYER FOR RELIEF

18    WHEREFORE, VeriSign respectfully requests that this Court:

19    1.    Dismiss the Complaint, with prejudice, and enter judgment in favor of VeriSign

20    for each count of the Complaint;

21    2.    Award VeriSign its costs and expenses incurred in defending this action; and

22    3.    Grant VeriSign such other and further relief as the Court deems just and proper.

23    DATED: June 22, 2007                  PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                            CHRISTOPHER H. McGRATH
24                                          OLEG CROSS

25

26                                   By:    /s/Christopher H. McGrath
                                            CHRISTOPHER H. McGRATH
27

28    LEGAL_US_W # 56503426.1             *Attorneys for Defendant VeriSign, Inc.*

-7-

# EXHIBIT F

# EXHIBIT F

# Register of Actions/Docket

**Case Information**                                    **Associated Cases**

Number: **1-07-CV-085890**

Title: **Mykityshyn V. Bidzos, Et Al (Verisign, Inc.)**

Category: **Securities Litigation - Unlimited**

Filed: **5/15/2007** Disposed:  Status: **Open**

Calendared Events                    **Involved Parties**                    Documents

| Type | Name | Disposition |
|------|------|-------------|
| Plaintiff | Thomas Mykityshyn | None |
|  | Attorney: | Patrice L. Bishop<br>Stull Stull & Brody , 10940 Wilshire Boulevard, Suite 2300, Los Angeles, Ca 90024 |
| Defendant | William L. Chenevich | None |
| Defendant | David J. Cowan | None |
| Defendant | Michelle Guthrie | None |
| Defendant | Scott G. Kriens | None |
| Defendant | Len J. Lauer | None |
| Defendant | Roger H. Moore | None |
| Defendant | Edward A. Mueller | None |
| Defendant | Gregory L. Reyes | None |
| Defendant | William A. Roper, Jr. | None |
| Defendant | Stratton D. Sclavos | None |
| Defendant | Louis A. Simpson | None |
| Defendant | Verisign, Inc. | None |
| Defendant | D. James Bidzos | None |

Involved Parties                    **Calendared Events**                    Documents

| Date | Time | Event Description | Result | | | Notice Printed | Reset | |
|------|------|-------------------|--------|---|---|---------|-------|---|
|  |  |  | Description | By | Date |  | To | From |
| 9/28/2007 | 10:00AM | CV CMC-Case Management Conf | None | None | None | None | None | None |
| 9/25/2007 | 10:00AM | CV CMC-Case Management Conf | Vacated; Reset current month | C | 06/20/07 | None | None | None |

Involved Parties                    **Documents**                    Calendared Events

| Number-Sequence | Document Description | Filed | Ruling | Date |
|-----------------|---------------------|-------|--------|------|
| 0005-000 | Cv Proof Of Svc Compl/Pet/Summons | 06/06/2007 | None | 06/06/2007 |

| | | | | |
|---|---|---|---|---|
| | **For:** Thomas Mykityshyn / PLT<br>**Against:** Verisign, Inc. / DEF | | | |
| 0004-000 | Cv Complex First Paper | 05/15/2007 | None | 05/15/2007 |
| | **For:** Thomas Mykityshyn / PLT | | | |
| 0003-000 | Cv Summons Filed | 05/15/2007 | None | 05/15/2007 |
| | **For:** Thomas Mykityshyn / PLT<br>**Against:** D. James Bidzos / DEF<br>**Against:** William L. Chenevich / DEF<br>**Against:** David J. Cowan / DEF<br>**Against:** Michelle Guthrie / DEF<br>**Against:** Scott G. Kriens / DEF<br>**Against:** Len J. Lauer / DEF<br>**Against:** Roger H. Moore / DEF<br>**Against:** Edward A. Mueller / DEF<br>**Against:** Gregory L. Reyes / DEF<br>**Against:** William A. Roper, Jr. / DEF<br>**Against:** Stratton D. Sclavos / DEF<br>**Against:** Louis A. Simpson / DEF<br>**Against:** Verisign, Inc. / DEF | | | |
| 0002-000 | Cv Complaint Filed/Summs Issued | 05/15/2007 | None | 05/15/2007 |
| | **For:** Thomas Mykityshyn / PLT<br>**Against:** D. James Bidzos / DEF<br>**Against:** William L. Chenevich / DEF<br>**Against:** David J. Cowan / DEF<br>**Against:** Michelle Guthrie / DEF<br>**Against:** Scott G. Kriens / DEF<br>**Against:** Len J. Lauer / DEF<br>**Against:** Roger H. Moore / DEF<br>**Against:** Edward A. Mueller / DEF<br>**Against:** Gregory L. Reyes / DEF<br>**Against:** William A. Roper, Jr. / DEF<br>**Against:** Stratton D. Sclavos / DEF<br>**Against:** Louis A. Simpson / DEF<br>**Against:** Verisign, Inc. / DEF | | | |
| 0001-000 | Cv Case Cover Sheet | 05/15/2007 | None | 05/15/2007 |
| | **For:** Thomas Mykityshyn / PLT<br>**Against:** D. James Bidzos / DEF<br>**Against:** William L. Chenevich / DEF<br>**Against:** David J. Cowan / DEF<br>**Against:** Michelle Guthrie / DEF<br>**Against:** Scott G. Kriens / DEF<br>**Against:** Len J. Lauer / DEF<br>**Against:** Roger H. Moore / DEF<br>**Against:** Edward A. Mueller / DEF<br>**Against:** Gregory L. Reyes / DEF<br>**Against:** William A. Roper, Jr. / DEF<br>**Against:** Stratton D. Sclavos / DEF<br>**Against:** Louis A. Simpson / DEF<br>**Against:** Verisign, Inc. / DEF | | | |

RETURN

# EXHIBIT G

# EXHIBIT G

**E-FILED**
Jun 25, 2007 10:13 AM
KIRI TORRE
Chief Executive Officer
Superior Court of CA, County of Santa Clara
Case #1-07-CV-085890 Filing #G-3751
By R. Walker, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| THOMAS MYKITYSHYN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>D. JAMES BIDZOS;<br>WILLIAM L. CHENEVICH;<br>DAVID J. COWAN;<br>MICHELLE GUTHRIE;<br>SCOTT G. KRIENS;<br>LEN J. LAUER;<br>ROGER H. MOORE;<br>EDWARD A. MUELLER;<br>GREGORY L. REYES;<br>WILLIAM A. ROPER, SR.;<br>STRATTON D. SCLAVOS;<br>LOUIS A. SIMPSON;<br>VERISIGN, INC.,<br><br>    Defendants. | Case No.: 1-07-CV-085890<br><br>**ORDER DEEMING CASE COMPLEX** |

WHEREAS, the Complaint was filed by Plaintiff Thomas Mykityshyn ("Plaintiff") in the Santa Clara County Superior Court on May 15, 2007;

*Mykityshyn v. Bidzos, et al.*
*Santa Clara County Superior Court, Case No. 1-07-CV-085890*
*Order Deeming Case Complex*

1

E-Filed: Jun 25, 2007 10:13 AM, Superior Court of CA, County of Santa Clara, Case #1-07-CV-085890 Filing #G-3751

1      WHEREAS, Plaintiff Thomas Mykityshyn filed a Civil Case Cover Sheet deeming the

2 matter provisionally complex on May 15, 2007;

3      WHEREAS, the Civil Lawsuit Notice was issued by the Court on May 15, 2007,

4 assigning the matter to Department 17C (Complex Civil Litigation), the Hon. Jack Komar

5 presiding, pending a ruling on the complexity issue;

6      IT IS HEREBY ORDERED that:

7      The Court determines that the above-referenced case is **COMPLEX** within the meaning

8 of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including

9 discovery and trial, to Department 17C (Complex Civil Litigation), the Hon. Jack Komar

10 presiding.

11      The Case Management Conference is rescheduled from September 25, 2007 to

12 **September 28, 2007 at 10:00 a.m. in Department 17C**.

13      The parties are directed to the Electronic Filing and Service Standing Order and to the

14 Guidelines for the Complex Civil Litigation Department, copies of which may be downloaded

15 from www.scefiling.org.

16      Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the

17 Master Service List shall be under the auspices of (1) Plaintiff Thomas Mykityshyn, as the first-

18 named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.

19      The Complex Case Fee is due from all parties immediately [Government Code Sections

20 70616(a), 70616(b)].

21      Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

22      SO ORDERED.

23

24 Dated: June 25, 2007           /s/ Jack Komar

25                         Judge of the Superior Court

26

27

28

*Mykityshyn v. Bidzos, et al.*
*Santa Clara County Superior Court, Case No. 1-07-CV-085890*
*Order Deeming Case Complex*

2