CHRISTOPHER H. McGRATH (SB# 149129)
chrismcgrath@paulhastings.com
OLEG CROSS (SB# 246680)
olegcross@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
3579 Valley Centre Drive
San Diego, CA  92130
Telephone:  (858) 720-2500
Facsimile:  (858) 720-2555

THOMAS A. ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90074-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

EDWARD HAN (SB# 196924)
edwardhan@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, CA  94105
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

*Attorneys for Defendant VeriSign, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS MYKITYSHYN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>D. JAMES BIDZOS, WILLIAM L. CHENEVICH, DAVID J. COWAN, MICHELLE GUTHRIE, SCOTT G. KRIENS, LEN J. LAUER, ROGER H. MOORE, EDWARD A. MUELLER, GREGORY L. REYES, WILLIAM A. ROPER, JR., STRATTON D. SCLAVOS, LOUIS A. SIMPSON, VERISIGN, INC.,<br><br>Defendants. | CASE NO. C 07-03332 PJH<br><br>CLASS ACTION<br><br>**VERISIGN, INC.'S OPPOSITION BRIEF TO PLAINTIFF'S MOTION TO REMAND ACTION PURSUANT TO 28 U.S.C. § 1447 FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>Date: October 3, 2007<br>Time: 9:00 a.m.<br>Judge: Hon.  Phyllis J. Hamilton<br>Ctrm: 3, 17th Floor |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

    A. Nature Of The Action.......................................................................................... 1

    B. Background And Procedural History .................................................................. 2

II. PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED ................................. 3

    A. SLUSA Must Be Interpreted Broadly To Effectuate Congressional Intent............ 3

    B. The Complaint Falls Squarely Within SLUSA's Core Preemption Provision ................................................................................................................ 4

    C. SLUSA's Delaware Carve-Out Is Inapplicable ....................................................... 6

        1. The Delaware Carve-Out Does Not Apply To This Action Because It Was Brought Outside VeriSign's State Of Incorporation ........................ 6

        2. Neither Exception Provided In The Delaware Carve-Out Applies To Plaintiff's Action ...................................................................................... 9

            a. The Delaware Carve-Out Must Be Construed Narrowly................. 9

            b. The First Exception Does Not Apply............................................. 10

            c. The Second Exception Does Not Apply ....................................... 11

III. CONCLUSION................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alessi v. Beracha*,
   244 F. Supp. 2d 354 (D. Del. 2003) .................................................................................... 13

*Araujo v. John Hancock Life Ins. Co.*,
   206 F. Supp. 2d 377 (E.D.N.Y. 2002) .................................................................................. 4

*Ash v. Alexander*,
   2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) ........................................................................... 8

*Baker v. IRS*,
   74 F.3d 906 (9th Cir. 1996) .................................................................................................. 7

*Bragdon v. Abbott*,
   524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) ................................................... 6

*City of Ann Arbor Emples. Ret. Sys. v. Gecht*,
   2007 U.S. Dist. LEXIS 21928 (N.D. Cal. Mar. 9, 2007) ................................................... 14

*City of Edmonds v. Oxford House, Inc.*,
   514 U.S. 725 (1995) ............................................................................................................. 9

*Drulias v. ADE Corp.*,
   2006 U.S. Dist. LEXIS 43285 (D. Mass. June 26, 2006) .................................................... 7

*Ellison v. Robertson*,
   189 F. Supp. 2d 1051 (C.D. Cal. 2002), *rev'd in part on other grounds*, *Ellison
   v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ....................................................................... 7

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002) ............................................................................................ 10

*Fisher v. Kanas*,
   487 F. Supp. 2d 270 (E.D.N.Y. 2007) ................................................................ 9, 12, 13, 14

*Friedman v. Alcatel Alsthom*,
   752 A.2d 544 (Del. Ch. 1999) .............................................................................................. 7

*G.F. Thomas Inv. L.P. v. Cleco Corp.*,
   317 F. Supp. 2d 673 (W.D. La. 2004) ................................................................................ 10

*Greaves v. McAuley*,
   264 F. Supp. 2d 1078 (N.D. Ga. 2003) .............................................................................. 13

*In re Edward Jones Holders Litig.*,
   453 F. Supp. 2d 1210 (C.D. Cal. 2006) ............................................................................... 5

*In re Lord Abbett Mut. Funds Fee Litig.*,
   463 F. Supp. 2d 505 (D.N.J. 2006) ...................................................................................... 3

*In re Metlife Demutualization Litig.*,
   2006 U.S. Dist. LEXIS 60104 (E.D.N.Y. Aug. 7, 2006) ................................................... 13

*In re WorldCom, Inc. Sec. Litig.*,
   2003 WL 716243 (S.D.N.Y. Mar. 3, 2003) ......................................................................... 7

*John v. United States*,
   247 F.3d 1032 (9th Cir. 2001) .............................................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lazar v. Gregerson*,
  2002 U.S. Dist. LEXIS 6152, 2002 WL 535405 (N.D. Cal. April 8, 2002) .......................... 13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71, 126 S. Ct. 1503 (2006) .................................................................................. passim

*Pierpoint v. Barnes*,
  94 F.3d 813 (2d. Cir. 1996) ........................................................................................................ 7

*Proctor v. Vishay Intertechnology, Inc.*,
  2007 U.S. Dist. LEXIS 14547 (N.D. Cal. Feb. 13, 2007) .......................................................... 7

*Rowinski v. Salomon Smith Barney, Inc.*,
  398 F.3d 294 (3d Cir. 2005) ....................................................................................................... 4

*Sofonia v. Principal Life Ins. Co., et al.*,
  378 F. Supp. 2d 1124 (S.D. Ia. 2005) ...................................................................................... 10

*Superior Partners v. Chang*,
  471 F. Supp. 2d 750 (S.D. Tex. 2007) ..................................................................................... 14

*United States Mortgage, Inc. v. Saxton*,
  2007 U.S. App. LEXIS 16830 (9th Cir. July 13, 2007) ............................................................ 3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C

    Section 77r(b) ............................................................................................................................ 5

    Section 78bb(f)(1) ................................................................................................................. 1, 5

    Section 78bb(f)(2) .................................................................................................................... 5

    Section 78bb(f)(3)(A)(i) .......................................................................................................... 6

    Section 78bb(f)(3)(A)(ii) .................................................................................................... 9, 13

    Section 78bb(f)(3)(A)(ii)(II) ................................................................................................... 11

    Section 78bb(f)(3)(A)(ii)(II)(aa) ............................................................................................. 14

    Section 78bb(f)(5)(B) ............................................................................................................... 5

Private Securities Litigation Reform Act of 1995 .................................................................. 3, 4, 9

**OTHER AUTHORITIES**

2 Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 7.17[2][A]
  (5th ed. 2005) ............................................................................................................................ 7

David M Levine & Adam C. Pritchard, *The Securities Litigation Uniform
  Standards Act of 1998: The Sun Sets on California's Blue Sky Laws*, 54 Bus.
  Law. 1 (1998) ....................................................................................................................... 8, 13

Gilbert's Law Dictionary (1997) (citing U.C.C. § 1-201(20)) ...................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

H.R. Conf. Rep. 105-803, 1998 WL 703964 (1998) .................................................................. 4, 8

S. Rep. 105-182, 1998 WL 226714 (1998)................................................................................. 7, 8

Defendant VeriSign, Inc. ("VeriSign" or "Company") respectfully submits the following opposition to Plaintiff's Motion to Remand.

## I. INTRODUCTION

### A. Nature Of The Action

This action is preempted by, and automatically dismissible under, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").[1] In his Motion to Remand, Plaintiff does not challenge or contest the applicability of SLUSA to the complaint. Instead, Plaintiff focuses his entire Motion to Remand on SLUSA's savings provision commonly referred to as the "Delaware carve-out." That argument, however, is based on a misunderstanding and misapplication of the applicable law. Neither prong of the Delaware carve-out applies to the allegations in this action. Accordingly, removal under SLUSA was appropriate and Plaintiff's Motion to Remand should be denied.

First, the Delaware carve-out does not apply here because the Plaintiff *chose the wrong forum*. The Delaware carve-out only applies to actions brought within an issuer's state of incorporation – it *does not apply* to actions brought outside an issuer's state of incorporation. In other words, for the Plaintiff to even try to assert the application of the savings provision, he must have filed the complaint in Delaware (the state of VeriSign's incorporation) and not California.

Second, the two exceptions to SLUSA preemption allowed under the Delaware carve-out – (1) for lawsuits challenging a purchase or sale by the issuer of securities exclusively to or from its existing shareholders, and (2) for lawsuits challenging a communication to shareholders from an issuer with respect to a sale of securities – are inapplicable here. Despite Plaintiff's one-paragraph argument to the contrary (*see* Pl. Mem. at 6), the first exception does not apply on its face because there was *no* "purchase or sale" of securities. Instead, as Plaintiff's allegations concede (*see* Compl. ¶¶ 33-37), there was only a request in VeriSign's proxies to increase the available number of options that could potentially be issued to employees at some possible future date. The shareholder approval to increase the number of options that could be potentially issued by VeriSign at some future date (and are not, in fact, alleged to have been issued) does *not* itself

---

[1] 15 U.S.C. § 78bb(f)(1) *et seq*.

Case No. C 07-03332 PJH -1- VERISIGN'S OPPOSITION TO MOTION TO REMAND

constitute a purchase or sale. Plaintiff does not allege that these options were ever granted or exercised, or that shares obtained through option exercises were ever sold into the market. This exception also does not apply because Plaintiff fails to allege that the grants were made exclusively to existing shareholders.

The second exception provided for under the Delaware carve-out is equally inapplicable. The alleged proxy communications requesting an increase in the number of options available for possible issuance at a future date were not made "with respect to the sale of the securities of [the] issuer." Again, the connection between the shareholder approval to increase the options available to be granted and the actual "sale of securities" is too attenuated for the allegations to satisfy the requirements of the carve-out.

In sum, this action was properly removed by VeriSign under SLUSA. As the exceptions to removal under SLUSA are inapplicable, Plaintiff's Motion to Remand should be denied.

### B.    Background And Procedural History

The deficiencies in Plaintiff's current action, and the applicability of the SLUSA preemption, are understandable given that the action in its current form was not the Plaintiff's counsel's first choice. In August 2006, Plaintiff's counsel filed a derivative action purportedly on behalf of VeriSign in California state court claiming, *inter alia*, breach of fiduciary duty and demanding rescission based on substantially the same allegations as in this case: that defendants allowed or caused certain stock option grants to be backdated and "caused and/or participated in issuing, filing and disseminating the false and misleading information regarding Company issued options."[2] The *Beagle* complaint was one of several duplicative option-backdating derivative cases filed involving VeriSign. One state court derivative action was stayed pending determination by this Court of the motions to dismiss based on demand futility and insufficiently pled allegations in the related federal action captioned *In re VeriSign, Inc. Derivative Litigation*, C-06-4165-PJH.[3]

---

[2]    *See* Declaration of Oleg Cross in Support of VeriSign, Inc.'s Opposition Brief to Plaintiff's Motion to Remand, Ex. A (Complaint in *Beagle v. Bidzos*, et al., 1-06-CV-068838) ("Cross Decl.").

[3]    *See* Cross Decl., Ex. B (Stipulation and Order Regarding Stay).

Case No. C 07-03332 PJH                -2-                VERISIGN'S OPPOSITION TO MOTION TO REMAND

1    While those motions to dismiss were pending, recognizing the existence of duplicative
2  derivative actions but still seeking somehow to participate in the wave of options-backdating
3  litigation, Plaintiff's counsel decided to forego the derivative action route and voluntarily
4  dismissed its redundant *Beagle* state court complaint on February 8, 2007.[4]  Plaintiff's counsel
5  then located a new plaintiff, Mr. Mykityshyn, and repackaged the allegations from the *Beagle*
6  complaint in the form of the present class action for breach of fiduciary duty.  Other than the fact
7  that this action is brought as a class action as opposed to a derivative lawsuit, nothing has
8  changed.  The underlying allegations in this case are virtually identical to the allegations made in
9  the earlier derivative action and in the pending federal case.  More importantly, like the first
10 action, this new action also faces substantial procedural hurdles, with the most immediate being
11 its preemption by SLUSA.

**II.    PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED**

   **A.    SLUSA Must Be Interpreted Broadly To Effectuate Congressional Intent**

14    Contrary to Plaintiff's instruction that the Court "must narrowly construe the removal
15 statute," (*see* Pl. Mem. at 4), the United States Supreme Court has specifically held that SLUSA
16 must be construed broadly, and that any determination to the contrary would defeat Congress's
17 effort to protect national markets and curb abusive class action strike suits through the Private
18 Securities Litigation Reform Act of 1995 ("PSLRA").  *See Merrill Lynch, Pierce, Fenner &*
19 *Smith, Inc. v. Dabit*, 547 U.S. 71, 126 S. Ct. 1503, 1513 (2006) ("The presumption that Congress
20 envisioned a broad construction follows not only from ordinary principles of statutory
21 construction but also from the particular concerns that culminated in SLUSA's enactment.  A
22 narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus
23 run contrary to SLUSA's stated purpose.").  Unlike general removal statutes, SLUSA may not
24 "be subjected to an artificial narrowing construction based upon a presumption against
25 preemption."  *In re Lord Abbett Mut. Funds Fee Litig.*, 463 F. Supp. 2d 505, 514 (D.N.J. 2006);
26 *see also United States Mortgage, Inc. v. Saxton*, 2007 U.S. App. LEXIS 16830 (9th Cir. July 13,
27 2007) (broadly interpreting SLUSA's preemptive provision in light of *Dabit*).

---

[4]    *See* Cross Decl., Ex. C (Request for Voluntary Dismissal).

Case No. C 07-03332 PJH                     -3-                    VERISIGN'S OPPOSITION TO
                                                                   MOTION TO REMAND

1  Plaintiff fails to cite even a single SLUSA case in support of his argument that this Court
2  should apply a presumption in favor of remand. *See* Pl. Mem. at 2-8. Nor does Plaintiff address
3  *Dabit*, despite the fact that *Dabit* is the definitive word by the Supreme Court on the interpretation
4  of SLUSA. *Dabit*'s core lesson and holding – that federal courts must accept SLUSA removal
5  jurisdiction whenever remand "would undercut the effectiveness of the [PSLRA] and thus run
6  contrary to SLUSA's stated purpose," *Dabit*, 126 S. Ct. at 1513 – governs here. *See Rowinski v.*
7  *Salomon Smith Barney, Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) (SLUSA removal and preemption
8  must be interpreted broadly). Accordingly, the basis of VeriSign's removal of this action under
9  SLUSA must be construed broadly.

**B.     The Complaint Falls Squarely Within SLUSA's Core Preemption Provision**

11  In 1998, Congress enacted SLUSA to "stem th[e] shift [of class action litigation involving
12  nationally traded securities] from Federal to State courts and prevent certain State private
13  securities class action lawsuits alleging fraud from being used to frustrate the objectives of the
14  [PSLRA]." *Dabit*, 126 S. Ct. at 1511 (alterations and internal quotation marks omitted). The
15  PSLRA created numerous procedural safeguards to address the "perceived abuses of the class-
16  action vehicle in litigation involving nationally traded securities" in order "to deter or at least
17  quickly dispose of those suits whose nuisance value outweighs their merits." *Id.* at 1510-11. In
18  response to the PSLRA, however, "some members of the plaintiffs' bar [attempted] to avoid the
19  federal forum altogether," *id.*, leading Congress to "determine[] that class action plaintiffs were
20  avoiding PSLRA's heightened requirements by filing class actions in state court under more
21  lenient state statutory or common law theories." *Araujo v. John Hancock Life Ins. Co.*, 206 F.
22  Supp. 2d 377, 380 (E.D.N.Y. 2002). Congress responded by enacting SLUSA, which was
23  intended to preempt securities class actions based upon state law involving nationally traded
24  securities. *See* H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13 (1998).

25  SLUSA's preemption provision, which the Supreme Court has recognized as the "core
26  provision" of the Act, *Dabit*, 126 S. Ct. at 1511, provides that:

> No covered class action based upon the statutory or common law of
> any State or subdivision thereof may be maintained in any State or
> Federal court by any private party alleging –

Case No. C 07-03332 PJH                    -4-                    VERISIGN'S OPPOSITION TO
                                                                  MOTION TO REMAND

    (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

    (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). The statute goes on to require that "[a]ny covered class action brought in any State court involving a covered security . . . shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to [dismissal under SLUSA's preemption provision]." 15 U.S.C. § 78bb(f)(2).

    Accordingly, SLUSA preemption is triggered when the following conditions are met: (1) the underlying suit is a "covered class action," (2) the action is based on state law, (3) the action concerns a "covered security," and (4) the defendant is alleged to have misrepresented or concealed a material fact or used or employed a manipulative device or contrivance "in connection with the purchase or sale" of a security.

*In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1214 (C.D. Cal. 2006) (internal marks and citations omitted). All of these conditions are met in this action.

  First, a "covered class action" means "any single lawsuit in which" (i) damages are sought on behalf of more than 50 persons or prospective class members; or (ii) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated. *See Dabit*, 126 S. Ct. at 1512 (quoting 15 U.S.C. § 78bb(f)(5)(B)). Here, Plaintiff brings this action "on his own behalf and as a class action on behalf of all holders of VeriSign common stock" that were allegedly harmed by the defendants' actions. Compl. ¶ 26. This action, therefore, is a "covered class action" both because the purported class of VeriSign stockholders exceeds 50 persons and because it is brought by the named Plaintiff on a representative basis.

  Second, this action purports to be based on state law, as Plaintiff only brings claims for breach of fiduciary duty of disclosure and for rescission. Compl. ¶¶ 67-72 (Count I); ¶¶ 73-79 (Count II). There are no claims or causes of action pled which arise under federal law.

  Third, the term "covered security" includes securities traded on a national exchange. *See* 15 U.S.C. § 77r(b). Here, the securities at issue are publicly-traded shares of VeriSign common

stock which trade on the NASDAQ exchange (*see* Compl. ¶¶ 2, 44-49). Accordingly, the securities at issue are "covered securities" under SLUSA.

Fourth, this action alleges a misrepresentation or omission. Specifically, it alleges that "Defendants failed to disclose that they knew and/or recklessly disregarded a pervasive option backdating scheme . . . ." Compl. ¶ 69.

Finally, the alleged misrepresentations or omissions were "in connection with the purchase or sale" of VeriSign securities, even though this purported class action is brought on behalf of "holders" of VeriSign securities. *See Dabit*, 126 S. Ct. at 1503 (determining that under SLUSA, "holder" claims are "in connection with the purchase or sale of securities"). As confirmed by *Dabit*, SLUSA's "in connection with the purchase or sale" requirement incorporates a long-standing history of broad construction of that phrase by the courts. *Id.* at 1513 ("Congress can hardly have been unaware of the broad construction adopted by both this Court and the SEC when it imported the key phrase – 'in connection with the purchase or sale' – into SLUSA's core provision.").[5]

Plaintiff does not dispute that these five requirements are met in seeking remand of this properly removed action. *See* Pl. Mem. at 2-8. Instead, Plaintiff relies and focuses solely on a narrow exception to SLUSA's preemptive reach – the "Delaware carve-out." *See id.* at 2, 5-8. Such reliance is misplaced.

### C. SLUSA's Delaware Carve-Out Is Inapplicable

#### 1. The Delaware Carve-Out Does Not Apply To This Action Because It Was Brought Outside VeriSign's State Of Incorporation

The Delaware carve-out provides that class actions "based upon the statutory or common law of the State in which the issuer is incorporated . . . may be maintained in a State or Federal court by a private party." 15 U.S.C. § 78bb(f)(3)(A)(i). As an initial matter, Plaintiff is precluded from relying on the Delaware carve-out because this action was brought in California, and not in

---

[5] "[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" *Dabit*, 126 S. Ct. at 1513 (citing *Bragdon v. Abbott*, 524 U.S. 624, 645, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (internal marks and other citations omitted)).

Delaware where VeriSign is incorporated. The carve-out *only applies* to state law claims ***brought in the state of incorporation***. *See In re WorldCom, Inc. Sec. Litig.*, 2003 WL 716243, at *15 n.31 (S.D.N.Y. Mar. 3, 2003) ("[the Delaware carve-out] preserve[s] the right to bring a covered class action based on state law claims in an issuer's state of incorporation"); *Drulias v. ADE Corp.*, 2006 U.S. Dist. LEXIS 43285, at *3 (D. Mass. June 26, 2006) ("SLUSA also contains a savings clause commonly referred to as the 'Delaware carve-out' to reflect Congress's desire to let certain state law claims be determined in the state of the issuer's incorporation.").[6]

SLUSA's legislative history confirms that this carve-out applies only to suits brought in the state of incorporation.[7] As the Senate Banking Committee Report states: "***[T]he committee expressly does not intend for suits excepted under [the Delaware carve-out] to be brought in venues other than the issuer's state of incorporation.***" S. Rep. 105-182, 1998 WL 226714, at *6 (1998) (emphasis added). The House Conference Committee Report states the matter just as clearly:

> The legislation provides for ***certain*** exceptions for specific types of actions. The legislation preserves State jurisdiction over: (1) certain actions that are based upon state law of the State in which the issuer of the security in question is incorporated. . . . ***It is the***

---

[6] *See also Friedman v. Alcatel Alsthom*, 752 A.2d 544, 556 (Del. Ch. 1999) (stating that the Delaware carve-out "preserves the availability of state court class actions, when the law of that state already provides that corporate directors have fiduciary disclosure obligations to shareholders"); 2 Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 7.17[2][A] (5th ed. 2005) (SLUSA "preserves state court actions brought [] in the issuer's state of incorporation by shareholders challenging management's statements or recommendations in connection with corporate transactions."). There are cases, however, in which the applicability of the carve-out is discussed without reference to the state-of-incorporation requirement. *See*, *e.g.*, *Proctor v. Vishay Intertechnology, Inc.*, 2007 U.S. Dist. LEXIS 14547, at *23 (N.D. Cal. Feb. 13, 2007) (holding that a suit brought in California against a Defendant Company incorporated in Delaware did not fit under the Delaware carve-out because "[n]o communication alleged by Plaintiffs was made specifically in relation to the tender offer and freeze-out merger."). In those cases, VeriSign respectfully submits that the requirement was not brought to the attention of the courts nor fully briefed.

[7] Federal courts have held that such "committee report[s] represent [ ] a collective statement by the drafters about the intended purpose of proposed legislation," and are therefore "considered a particularly good indicator of congressional intent." *Pierpoint v. Barnes*, 94 F.3d 813, 817 (2d. Cir. 1996); *see also Baker v. IRS*, 74 F.3d 906, 910 (9th Cir. 1996) (statement of a Representative "issued in lieu of a conference committee report . . . constitutes persuasive evidence of Congress's intent"); *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1069 (C.D. Cal. 2002) ("the Court believes that the analysis in the House Judiciary Committee Report provides the clearest guidance concerning Congress' intent"), *rev'd in part on other grounds*, *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004).

> *intention of the managers that the suits under this exception be limited to the state in which [the] issuer of the security is incorporated.*

H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13-14 & n.2 (1998) (emphasis added).

In short, it is the "Delaware carve-out" precisely because it allows suits under Delaware law otherwise preempted by SLUSA to be maintained in the Delaware courts. It is not the "Delaware/California carve-out" – it does not allow suits under Delaware law otherwise preempted by SLUSA to be maintained in California courts. This interpretation of the statute is necessary to advance Congress's express goal to promote "uniform national rules for securities class action litigation." H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13. SLUSA promotes uniformity by channeling securities class actions to federal court and creating uniform national standards for such actions. For those state corporate law claims that are exempt from SLUSA, Congress directed litigants to the state of incorporation. This ensures that only the courts of the state of incorporation will be interpreting the state law to which the corporation is subject, an area in which those courts "possess particular competence."[8] *Ash v. Alexander*, 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000); *see also* David M Levine & Adam C. Pritchard, *The Securities Litigation Uniform Standards Act of 1998: The Sun Sets on California's Blue Sky Laws*, 54 Bus. Law. 1 (1998), at 25 ("Limiting claims against Delaware corporations to the Chancery Court would help maintain the uniformity and predictability of Delaware corporate law.").

The carve-out does not apply to a covered class action brought under Delaware law in California state court. Having elected to bring his Delaware corporate law claims in California state court, Plaintiff is now precluded from invoking the Delaware carve-out. Any result to the

---

[8] To allow "covered class actions" such as this to proceed in state courts outside the state of incorporation would undermine the legislative goal of uniformity, exposing issuers both to concurrent actions in multiple jurisdictions and to inconsistent or even contradictory interpretations of state corporate law. This would be precisely the scenario Congress sought to prevent, in which "[any state other than the issuer's state of incorporation] can impose the risks and costs of its peculiar litigation system on all national issuers." *See* H.R. Conf. Rep. 105-803, 1998 WL 703964, at *15. In fact, Congress recognized that venue could be just as significant as the substantive law, and that "[d]isparate, and shifting, state litigation procedures may expose issuers to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made." S. Rep. 105-182, 1998 WL 226714, at *3. To avoid this outcome, Congress limited the Delaware carve-out to claims based on the law of the state of incorporation that are brought in the state of incorporation. *See id.* at *6; H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13-14 & n.2.

Case No. C 07-03332 PJH -8- VERISIGN'S OPPOSITION TO MOTION TO REMAND

contrary would obviate the intent of Congress.[9] Under Ninth Circuit precedent, Congress's clearly expressed purpose controls. *See*, *e.g.*, *John v. United States*, 247 F.3d 1032, 1039 (9th Cir. 2001) ("It is our duty to effectuate Congress's intent by reading [statutory terms] in the context of the statute as a whole and in light of Congress's express purpose.").

### 2. Neither Exception Provided In The Delaware Carve-Out Applies To Plaintiff's Action

The "Delaware carve-out" applies in only two specific circumstances:

> I.   the ***purchase or sale*** of securities by the issuer or an affiliate of an issuer ***exclusively*** from or to holders of equity securities of the issuer; or
>
> II.  any recommendation, position, or other communication ***with respect to*** the ***sale*** of securities of an issuer that –
>
> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C § 78bb(f)(3)(A)(ii) (emphasis added). Neither exception applies here.

#### a. The Delaware Carve-Out Must Be Construed Narrowly

While SLUSA's removal and preemption provisions must be applied broadly under Supreme Court precedent, the Delaware carve-out exception to SLUSA must be applied narrowly – not only to give effect to the instruction of *Dabit*, but also as a settled matter of statutory construction. *See City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731-32 (1995) ("[A]n exception to a general statement of policy is sensibly read narrowly in order to preserve the primary operation of the policy.") (internal quotation marks omitted). To apply the Delaware carve-out exception broadly "would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose" and risk allowing the exception to swallow SLUSA's preemptive provision. *See Dabit*, 126 S. Ct. at 1513.

---

[9] Some courts have considered but declined to apply the state-of-incorporation requirement. For example, in *Fisher v. Kanas*, 487 F. Supp. 2d 270 (E.D.N.Y. 2007), the court considered the requirement and then stated that it "declines to definitively find that the Delaware carve-out does not apply outside the state of incorporation." *Id*. at 279. However, *Fisher* did not have to reach this issue because it found that the Delaware carve-out was inapplicable for other reasons, denied the plaintiff's motion to remand, and dismissed the complaint under SLUSA.

### b. The First Exception Does Not Apply

Contrary to Plaintiff's stunted argument made almost in passing, (Pl. Mem. at 6), the first carve-out exception is inapplicable to this action for a number of reasons. First, no "purchase or sale of securities by the issuer" is alleged to have occurred. Plaintiff alleges that the shareholders approved the increase in the number of shares available for possible future issuance under the Company's various stock option plans. *See* Compl. ¶ 33-37. There are no allegations that any of those options were then actually granted (not to mention vested and exercised). No definition of "purchase or sale" encompasses the mere granting of authorization for an increase in the available number of shares that could possibly be issued at some future date pursuant to a company's stock option plan. The approvals alone did not cause the issuance or transfer of any security from any buyer to any seller in exchange for any consideration. Instead, the shareholders merely approved an increase in the number of existing shares that could be potentially, but may never be, issued at some future date pursuant to the Company's stock option plans. Only the actual issuance of the stock option would constitute a purchase or sale of a security. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002) (holding that the actual issuance of stock options constitutes a sale or purchase of a security).

Second, Plaintiff did not allege that any options or shares of common stock under the Equity Incentive Plan were purchased or sold "exclusively from or to holders of equity securities of the issuer." *See* Pl. Mem. at 2-8. This provision limits the applicability of the carve-out to cases in which a company offers to purchase or sell its securities to no one other than ***existing equity holders***. *See Sofonia v. Principal Life Ins. Co., et al.*, 378 F. Supp. 2d 1124, 1133-34 (S.D. Ia. 2005) ("[E]ach provision of the Delaware carve-out exception exempts claims arising from an offering of a company's securities to its existing equity security holders."). Where securities are not exclusively sold to or purchased from existing equity shareholders, the first exception of the Delaware carve-out does not apply. *See G.F. Thomas Inv. L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 681-85 (W.D. La. 2004) (holding that the sale or purchase must be to or from existing equity holders). Here, Plaintiff never alleges, nor can he, that VeriSign granted options or shares under its Equity Plans exclusively to its existing equity holders. *See* Pl. Mem. at 2-8. In fact, Plaintiff's

complaint specifically states that grants under the above-referenced plans could be made to only VeriSign's "employees, officers, directors and consultants" (*see* Compl. ¶¶ 30-32) – it does not allege that grants could be made to these persons only if they are already equity holders of VeriSign.[10]  *See* Compl. ¶ 26.

### c.     The Second Exception Does Not Apply

The second carve-out exception is equally inapplicable in this case.  *See* Pl. Mem. at 6-8. By its terms, this second exception applies ***only*** to claims based on misrepresentations alleged to appear in a "recommendation, position, or other communication ***with respect to*** the ***sale*** of securities of an issuer."  15 U.S.C § 78bb(f)(3)(A)(ii)(II) (emphasis added).  Here, Plaintiff alleges that because of purported misstatements in certain of VeriSign's proxies, Plaintiff and other members of the putative class approved amendments to the 1998 Equity Incentive Plan and 1998 Directors Plan, and adopted the VeriSign 2006 Equity Incentive Plan, which, in turn, authorized the availability of additional shares to the two 1998 plans.  Compl. ¶¶ 70-71.  Plaintiff claims that had "shareholders known the truth," "they would not have approved" the amendments or the new plan, and that the putative class was "harmed as a result of the dilution of its voting power and proportionate share [ownership] of the Company" caused by the availability of additional shares which may possibly be granted in the future.[11]  Compl. ¶¶ 71-72.  Critically, however, the proxy statements were ***not*** communications ***with respect to*** the ***sale*** of VeriSign

---

[10]     Such an allegation, even if it existed, would be nonsensical.  Options were granted to both existing and newly hired employees and directors.  Logically, few, if any, newly hired employees were existing shareholders of VeriSign at the time they were hired and received their initial option grant so the "exclusive" requirement is missing.  Moreover, Plaintiff fails to provide any support for his peculiar assertion that VeriSign's stock option plans themselves are "holders of equity securities" under SLUSA.  *See* Pl. Mem. at 6.  Even if the first carve-out were not limited to situations where an alleged purchase or sale was made exclusively to existing equity holders, the shareholder approval to increase the available number of options for possible granting in the future did not transfer stock to the Company's option plans.  Contrary to Plaintiff's assertion, a "holder" is one "who is in legal possession of an investment security or some other financial instrument which is payable to him or her or the bearer of the instrument."  *See* Gilbert's Law Dictionary (1997) (citing U.C.C. § 1-201(20)).  The Company's stock option plans are documents, not separate legal entities capable of "holding" equity securities.  Accordingly, shareholder approval for possible issuance of additional shares at some future date did not effect any transfer of title as the stock option plans were not "holders" of any securities.

[11]     Notably, Plaintiff does not allege that the additional options which were made available by the proxies were ever issued or exercised.

stock options.

As set forth above, the proxies requested shareholder approval to increase shares issuable under the Company's stock option plans. They did not, make any "recommendation, [take any] position, or [make any] other communication with respect to the sale of securities of [VeriSign]." A proxy requesting that shareholders approve changes to stock option plans is not a communication "with respect to the sale" of VeriSign securities. *See Fisher*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007). There must be a direct connection between the "communication" (proxy statement) and the sale of securities. *Id.*

In *Fisher*, the plaintiff claimed breach of fiduciary duty for defendants' misstatements about executive compensation in the Company's proxy statements. In that case, the court found that "although the proxy statements made misrepresentations regarding executive compensation, the proxies did not ***directly*** make any communication or representation regarding the sale of [the Company's] securities." *Id.* at 280 (emphasis added). The *Fisher* court explained:

> The Court's finding that the SLUSA applies because a misrepresentation was made "in connection" with the purchase or sale of a covered security may seem inconsistent with the determination that the Delaware carve-out does not apply because there was no recommendation or communication "regarding" the sale of securities. However, the findings are consistent with the case law. As previously stated, the Supreme Court [in *Dabit*] broadly construes the "in connection" language in the SLUSA. The SLUSA does not require that the defendants make a misrepresentation directly regarding the sale of stock. It only requires some "connection" between a misrepresentation and stock. ***The Delaware carve-out requires a communication "regarding" the sale of securities.*** Although for SLUSA purposes, there is a sufficient "connection" between the misrepresentations in the proxy statements, the executive compensation and the decline in stock prices, it is undisputed that this case does not involve a communication ***directly discussing the sale of securities***.

*Id.* (emphasis added). As in *Fisher*, the communications at issue in this case do not "directly discuss[] the sale of securities." *Id.* Thus, as in *Fisher*, the Delaware carve-out is not applicable. *Id.* at 281.

Further, it is clear from the Congressional records and the cases applying the carve-out that the second exception is only intended to preserve suits challenging communications

regarding sales of securities by the issuer's existing shareholders in the context of mergers and other similar change of control transactions. *See* David M Levine & Adam C. Pritchard, *The Securities Litigation Uniform Standards Act of 1998: The Sun Sets on California's Blue Sky Laws*, 54 Bus. Law. 1,1 n.*, 25 (1998) (discussing Congressional intent in drafting the Delaware carve-out to exempt cases involving communications concerning change-in-control situations – mergers, tender offers, and freeze-outs – which have traditionally been entrusted to the courts of Delaware); *see also Lazar v. Gregerson*, 2002 U.S. Dist. LEXIS 6152, 2002 WL 535405, at *3 (N.D. Cal. April 8, 2002) (accepting misstatements in merger material distributed to shareholders as qualifying communication under the Delaware carve-out); *Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1083 (N.D. Ga. 2003) (accepting press releases and SEC Form S-4 specifically regarding the merger as qualifying communication under the Delaware carve-out); *Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003) (accepting press release regarding the buy out program for minority shareholders as qualifying communication under the Delaware carve-out); *In re Metlife Demutualization Litig.*, 2006 U.S. Dist. LEXIS 60104, at *21 (E.D.N.Y. Aug. 7, 2006) (holding that reorganization is a "change-in-control" situation that fits under the Delaware carve-out). Given this backdrop, it is clear that this exception was not intended to encompass communications about increasing the available number of options in the context of routine proxy statements. *See id.* The requirement that the "sale of securities" be made by "such equity holders with respect to voting their security" requires that plaintiffs ("such equity holders") must have sold securities by virtue of a shareholder vote (in a change of control transaction). *See id.*; *see also* 15 U.S.C. § 78bb(f)(3)(A)(ii). Here, Plaintiff alleges only that the shareholders approved an increase in the number of available options that could potentially be issued by VeriSign in the future. *See* Compl. ¶¶ 33-37. Plaintiff does not allege the sale of ***any*** securities – much less his own.

As in *Fisher*, there is nothing in these proxy statements directly connected to the sale of securities of the issuer. Plaintiff has not and cannot claim that the communication in which the alleged misrepresentations appeared (proxy statements issued over several years about stock options, which could potentially be issued to employees at some future date) were directly related

to any securities transaction. Nothing in the Complaint ties the approval of additional options to any subsequent sale of securities. Therefore, the statements were not made "with respect to the sale of [a] security." *Fisher*, 487 F. Supp. at 280.[12]

### III.  CONCLUSION

Because this action fits squarely within SLUSA's preemptive provision and the Delaware carve-out does not apply, Plaintiff's motion to remand should be denied.

DATED: August 29, 2007

CHRISTOPHER H. McGRATH
OLEG CROSS
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:   /s/Christopher H. McGrath
        CHRISTOPHER H. McGRATH

3579 Valley Centre Drive
San Diego, CA  92130
Telephone:  (858) 720-2500
Facsimile:  (858) 720-2555

---

[12]  The principal case upon which plaintiff relies for the applicability of the second carve-out exception is *City of Ann Arbor Emples. Ret. Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928 (N.D. Cal. Mar. 9, 2007). *See* Pl. Mem. at 2-8. *Ann Arbor* is inapposite, however, because it was brought as a derivative suit and class action, with causes of action not at issue here, such as claims for unjust enrichment and accounting. In addition, the Court apparently did not have the benefit of vigorous briefing on multiple issues. For example, *Ann Arbor* never considered whether the phrase "such equity holder[]," 15 U.S.C § 78bb(f)(3)(A)(ii)(II)(aa), refers to the plaintiff bringing the claim, and not some third party. Moreover, the parties in *Ann Arbor* did not brief, and the Court did not have the opportunity to consider, the argument that the Delaware carve-out does not apply because the action was brought outside the company's state of incorporation. In addition, VeriSign submits that Magistrate Judge Chen incorrectly equated the terms "with respect to" and "in connection with" when analyzing whether the communication in that case was made "with respect to the sale of securities." *Id*. at *11. At least one court has reached a different conclusion and refused to make such an equation. *See Fisher*, 487 F. Supp. 2d at 280. Finally, any persuasive value of this unpublished opinion by Magistrate Judge Chen may have is diminished by the fact that the Court's findings in *Ann Arbor* about the scope of the Delaware carve-out are pure *dicta*, as plaintiff's motion to remand was denied in that case. *See Ann Arbor,* 2007 U.S. Dist. LEXIS 21928 at *28. The only other case cited by Plaintiff, *Superior Partners v. Chang*, 471 F. Supp. 2d 750 (S.D. Tex. 2007) (*see* Pl. Mem. at 8), is also inapposite as it related to the applicability of the Delaware carve-out to a class action alleging misrepresentations in a preliminary proxy statement soliciting shareholder approval for a merger.

1
2
3
4  THOMAS A. ZACCARO
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA 90074-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

EDWARD HAN
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

*Attorneys for Defendant VeriSign, Inc.*

LEGAL_US_W # 56917710.4