Westlaw.

293 B.R. 308                                                                                    Page 1

293 B.R. 308, Fed. Sec. L. Rep. P 92,285, 30 Employee Benefits Cas. 2076

**(Cite as: 293 B.R. 308)**

# Tab 7

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In re WorldCom, Inc. Securities Litigation
S.D.N.Y.,2003.

United States District Court,S.D. New York.
In re WORLDCOM, INC. SECURITIES LITIGATION.
New York City Employees' Retirement System, et al., Plaintiffs,
v.
Bernard J. Ebbers, et al., Defendants.
**Nos. 02 Civ. 3288(DLC), 02 Civ. 8981(DLC).**

March 3, 2003.

Following orders that debtor-related class action cases be centralized in district court and removal of city pension systems' state court securities action against debtor's former executive officers, underwriters, directors, and accountants, 2002 WL 31867720 and 2003 WL 685099, pension systems filed motion to remand or, alternatively, to abstain. The District Court, Cote, J., held that: (1) state court securities fraud action was " related to" debtor's bankruptcy and therefore was subject to removal; (2) jurisdictional provision of Securities Act of 1933 did not bar removal of federal securities law claims; (3) mandatory abstention requirement of statute authorizing federal jurisdiction over bankruptcy cases and proceedings did not apply; and (4) discretionary abstention was not warranted.

Motion denied.

West Headnotes

[1] **Removal of Cases 334 ⚷102**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k101 Grounds for Remand
334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases

**Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

Party seeking to remove an action from state to federal court bears the burden of proving federal jurisdiction, and if there is doubt as to whether federal jurisdiction exists, remand is appropriate.

[2] **Bankruptcy 51 ⚷2053**

51 Bankruptcy
51I In General
51I(C) Jurisdiction
51k2053 k. Issues Between Non-Debtors. Most Cited Cases

**Bankruptcy 51 ⚷2088**

51 Bankruptcy
51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2088 k. Removal from State Courts. Most Cited Cases

Because the effect of contribution claims on the bankruptcy estate was at the very least " conceivable," state court securities fraud action brought by city pension systems against debtor's former executive officers, underwriters, directors, and accountants was " related to" debtor's bankruptcy and therefore was subject to removal; a finding of liability was entirely dependent on a finding that debtor engaged in wrongful conduct since the conduct of debtor and defendants was indisputably intertwined, and the potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors was sufficient to find that litigation among non-debtors was " related to" the bankruptcy proceeding. 28 U.S.C.A. § 1334(b).

[3] **Bankruptcy 51 ⚷2043(3)**

51 Bankruptcy
51I In General
51I(C) Jurisdiction
51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
51k2043(3) k. Related Proceedings. Most Cited Cases

Whether an action has any conceivable effect on the

bankruptcy estate determines whether a federal court has " related to" jurisdiction over the matter. 28 U.S.C.A. § 1334(b).

**[4] Bankruptcy 51 2053**

51 Bankruptcy
51I In General
51I(C) Jurisdiction
51k2053 k. Issues Between Non-Debtors. Most Cited Cases

**Bankruptcy 51 2088**

51 Bankruptcy
51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2088 k. Removal from State Courts. Most Cited Cases

A judgment is not required to have been entered against a third party defendant before the third party action can be found to be " related to" bankruptcy proceeding so as to be subject to removal. 28 U.S.C.A. § 1334(b); Bankr.Code, 11 U.S.C.A. § 502(e)(1)(B).

**[5] Bankruptcy 51 2053**

51 Bankruptcy
51I In General
51I(C) Jurisdiction
51k2053 k. Issues Between Non-Debtors. Most Cited Cases

**Bankruptcy 51 2088**

51 Bankruptcy
51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2088 k. Removal from State Courts. Most Cited Cases

Bar in the bankruptcy statute to payment of contingent claims does not preclude determination that third party action is " related to" bankruptcy proceeding so as to be subject to removal, as present contingency of a claim says little about whether the creditor will be able to have the claim reconsidered and allowed when it is no longer contingent; claims that are contingent today nonetheless have a " conceivable" effect on the bankruptcy. 28 U.S.C.A. § 1334(b); Bankr.Code, 11 U.S.C.A. § 502(e)(1)(B).

**[6] Bankruptcy 51 2088**

51 Bankruptcy
51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2088 k. Removal from State Courts. Most Cited Cases

Jurisdictional provision of Securities Act of 1933 did not bar removal of federal securities law claims brought by city pension systems against debtor's former executive officers, underwriters, directors, and accountants; conditions for bankruptcy jurisdiction had been met, and the action did not fall within the two limited exceptions to removal under statute concerning removal of claims related to bankruptcy cases. Securities Act of 1933, § 22(a), 15 U.S.C.A. § 77v(a); 28 U.S.C.A. § 1452.

**[7] Removal of Cases 334 11**

334 Removal of Cases
334I Power to Remove and Right of Removal in General
334k11 k. Original Jurisdiction of United States Court. Most Cited Cases

Whether removal is appropriate depends on whether the case, or some portion thereof, originally could have been filed in federal court. 28 U.S.C.A. § 1441(a, c).

**[8] Removal of Cases 334 25(1)**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k25 Allegations in Pleadings
334k25(1) k. In General. Most Cited Cases

If the basis for removal is the presence of a federal law claim, the well-pleaded complaint rule requires that the federal question appear on the face of the complaint, rather than in an anticipated defense. 28 U.S.C.A. § 1441(a).

**[9] Bankruptcy 51 2089**

51 Bankruptcy
51I In General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2089 k. Proceedings for Removal or Transfer; Time. Most Cited Cases
Statute concerning removal of claims related to bankruptcy cases does not require the defendants' unanimous consent to removal. 28 U.S.C.A. § 1452.

**[10] Removal of Cases 334 82**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k82 k. Parties to Notice or Petition. Most Cited Cases
Consent to removal is not required from a defendant who has not been served at the time of removal. 28 U.S.C.A. § 1441.

**[11] Federal Courts 170B 47.5**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk47 Particular Cases and Subjects, Abstention
170Bk47.5 k. Bankruptcy. Most Cited Cases
Mandatory abstention requirement of statute authorizing federal jurisdiction over bankruptcy cases and proceedings did not apply to securities law claims brought by city pension systems against debtor's former executive officers, underwriters, directors, and accountants; pension systems failed to prove that the action could be timely adjudicated in state court, or that statute provided the sole basis for jurisdiction. 28 U.S.C.A. § 1334(c)(2).

**[12] Federal Courts 170B 47.5**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk47 Particular Cases and Subjects, Abstention
170Bk47.5 k. Bankruptcy. Most Cited Cases

**Federal Courts 170B 65**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk65 k. Procedure as to Abstention; Reserving or Retaining Jurisdiction. Most Cited Cases
Party seeking mandatory abstention under statute governing jurisdiction over bankruptcy proceedings must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is " related to" but not " arising in" a bankruptcy case or " arising under" the Bankruptcy Code; (4) statute authorizing federal jurisdiction over bankruptcy cases and proceedings provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be " timely adjudicated" in state court. 28 U.S.C.A. § 1334(c)(2).

**[13] Federal Courts 170B 47.5**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk47 Particular Cases and Subjects, Abstention
170Bk47.5 k. Bankruptcy. Most Cited Cases
Discretionary abstention was not warranted with respect to removed securities law claims brought by city pension systems against debtor's former executive officers, underwriters, directors, and accountants; there were no unique or unsettled issues of state law that warranted abstention based on comity concerns and judicial economy and efficiency would be best served by exercising jurisdiction in view of fact that multidistrict litigation (MDL) panel had consolidated scores of related cases in the district court. 28 U.S.C.A. § 1334(c)(1).

**[14] Federal Courts 170B 41**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk41 k. Nature and Grounds in General. Most Cited Cases
Federal courts have a virtually unflagging obligation

293 B.R. 308 Page 4
293 B.R. 308, Fed. Sec. L. Rep. P 92,285, 30 Employee Benefits Cas. 2076
**(Cite as: 293 B.R. 308)**

to exercise the jurisdiction given them, and may abstain only for a few extraordinary and narrow exceptions.

**[15] Federal Courts 170B 41**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk41 k. Nature and Grounds in General. Most Cited Cases
Abstention doctrines share a common matrix consisting of a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes, and those considerations include comity and federalism, judicial economy, and efficiency.

**[16] Federal Courts 170B 47.5**

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
170Bk47 Particular Cases and Subjects, Abstention
170Bk47.5 k. Bankruptcy. Most Cited Cases
Courts commonly consider twelve factors in addressing whether to abstain from exercising jurisdiction over claims related to bankruptcy case: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the non-bankruptcy jurisdictional basis, if any, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted " core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. 28 U.S.C.A. § 1334(c)(1).

***311** Max W. Berger,John P. Coffey, Bernstein Litowitz Berger & Grossman LLP, New York City, Leonard Barrack, Gerald J. Rodos, Jeffrey W. Golan, Barrack Rodos Bacine, Philadelphia, PA, for Lead Plaintiff in Securities Litigation.
Stephen Lowey, David C. Harrison, Neil L. Selinger, Lowey Dannenberg Bemporad & Selinger P.C., White Plains, NY, Michael A. Cardozo, Corporation Counsel of the City of New York, New York City, for Plaintiffs in New York City Employees' Retirement System, et al.
William S. Lerach, Darren J. Robbins, Michael J. Dowd, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Intervenors.
Paul Curnin, Simpson Thacher & Bartlett, New York City, for Director Defendants.
Jay B. Kasner, John Gardner, Skadden Arps Slate Meagher & Flom LLP, New York City, for Underwriter Defendants.
Eliot Lauer, Curtis Mallot Prevost Colt & Mosley, New York City, for Defendant Arthur Andersen LLP.
David Wertheimer, Lyndon Tretter, Hogan & Hartson, New York City, for Defendant Bernard J. Ebbers.
Juliet Rotenberg, Arnold & Porter, Washington, DC, for Defendant Scott Sullivan.
Martin London, Richard A. Rosen, Paul Weiss Rifkind Wharton & Garrison, New York City, for Defendants Salomon Smith Barney, Inc., CitiGroup Inc., and Jack Grubman.
Jennifer L. Kroman, Cleary Gottlieb Steen & Hamilton, New York City, for Securities Industry Association, Amicus Curiae.

*OPINION AND ORDER*

COTE, District Judge.
On October 29, 2002, New York City Employees' Retirement System and other New York City pension systems filed suit in New York state court against defendants connected to the telecommunications giant WorldCom, Inc. (" WorldCom" ). The suit alleges federal securities law and state law claims but does not state claims against WorldCom, which had filed for bankruptcy several months earlier.

Defendants removed this action, and those like it, on the basis of the litigation's relationship to WorldCom's bankruptcy. That relationship is the focus of this Opinion. This Opinion examines the propriety of removal and addresses whether the New York state court action is so related ***312** to the WorldCom bankruptcy that there is federal subject matter jurisdiction over it pursuant to Title 28, United

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

States Code, Section 1334(b).

Having pleaded their complaint to avoid both removal to federal court and the inevitable consolidation with the other civil litigation brought in the wake of WorldCom's financial disclosures in 2002, plaintiffs have moved to remand their action to state court pursuant to 28 U.S.C. § 1447 for lack of subject matter jurisdiction or on equitable grounds pursuant to 28 U.S.C. 1452(b). In the alternative, plaintiffs move for the Court to abstain pursuant to 28 U.S.C. §§ 1334(c)(1) or (c)(2). For the reasons stated below, plaintiffs' motion, brought in the New York City Employees' Retirement System action, is denied. Plaintiffs in the other removed actions will be given an opportunity to show why the analysis in this Opinion does not control any motion to remand filed in their cases.

*Background*

On June 25, 2002, WorldCom, once the second largest telecommunications company in the world, announced that it had, among other things, improperly treated more than $3.8 billion in ordinary costs as capital expenditures in violation of generally accepted accounting principles and would have to restate its publicly-reported financial results for 2001 and the first quarter of 2002. Since its June announcement, WorldCom has made further disclosures suggesting that all of its financial results since at least 1999 must be restated.

WorldCom's announcements provoked responses from a variety of public and private quarters. On June 26, 2002, the SEC filed a civil complaint against the company. The next day, the U.S. House of Representatives Committees on Energy and Commerce and on Financial Services initiated investigations of the company. And in July and August, the United States Attorney for the Southern District of New York filed criminal charges against various former officers of WorldCom.[FN1]

FN1. The facts relating to the criminal charges are set forth more fully in this Court's opinions in *In re WorldCom, Inc. Securities Litigation,* 234 F.Supp.2d 301 (S.D.N.Y.2002), and *In re Worldcom, Inc. Securities Litigation,* No. 02 Civ. 3288(DLC), 2002 WL 31729501, at *2-7 (S.D.N.Y. Dec. 5, 2002). Familiarity with these opinions is presumed.

Even before WorldCom's June 25 announcement, on April 30, 2002, the first securities class action in connection with these events was filed in this district. By August, at least twenty related class actions had been filed here. By Order dated August 15, 2002, they were consolidated under the caption *In re WorldCom, Inc. Securities Litigation* (" *Securities Litigation"* ). The New York State Civil Retirement Fund was appointed lead plaintiff, and filed a Consolidated Amended Complaint (" Complaint" ) on October 11. Two actions alleging that WorldCom and certain WorldCom fiduciaries breached fiduciary duties under the Employment Retirement Income Security Act of 1974 (" ERISA" ), 29 U.S.C. § 1001, *et seq.*, were consolidated by Order dated September 18, under the caption *In re WorldCom, Inc. ERISA Litigation*.

Meanwhile, numerous class actions-including securities or ERISA claims-were being filed around the country. On October 8, the Judicial Panel on Multi-District Litigation (" MDL" ) ordered WorldCom-related class action cases centralized in this Court pursuant to 28 U.S.C. § 1407. In addition, lawsuits asserting individual as opposed to class claims were filed by a number of pension funds, among others, in venues across the country. Many of these lawsuits, referred to herein as the Individual Actions, were filed in state court.

***313** WorldCom took refuge under the federal bankruptcy laws by filing for Chapter 11 bankruptcy in the Bankruptcy Court of this District on July 21, 2002. Once WorldCom filed for bankruptcy, the automatic stay provisions of the bankruptcy laws took effect, preventing litigation against WorldCom itself from going forward. Thus, the *Securities Litigation* before this Court is proceeding against certain former WorldCom executive officers,[FN2] underwriters of WorldCom's bond offerings (" Underwriter Defendants" ),[FN3] WorldCom's directors (or former directors) (" Director Defendants" ),[FN4] WorldCom's accountants (" Andersen Defendants" ),[FN5] and those associated with Salomon Smith Barney who issued or are responsible for financial analyst reports regarding WorldCom (" SSB Defendants" ).FN6 WorldCom, Inc. is identified by the Complaint, however, as a " related non-party."

FN2. As named in the Complaint, these defendants include Bernard J. Ebbers, Scott D. Sullivan, David F. Myers, and Buford

Yates, Jr.

FN3. As identified in the Complaint, the Underwriter Defendants in the *Securities Litigation* consist of Salomon Smith Barney, Inc., J.P. Morgan Chase & Co., Banc of America Securities LLC, Deutsche Bank Securities Inc., now known as Deutsche Bank Alex. Brown Inc., Chase Securities Inc., Lehman Brothers Inc., Blaylock & Partners L.P., Credit Suisse First Boston Corp., Goldman, Sachs & Co., UBS Warburg LLC, ABN/AMNRO Inc., Uitendahl Capital, Tokyo-Mitsubishi International plc, Westdeutsche Landesbank Girzentrale, BNP Paribas Securities Corp., Caboto Holding SIM S.p.A., Fleet Securities, Inc., and Mizuho International plc.

FN4. As identified in the Complaint, the WorldCom Director Defendants in the *Securities Litigation* consist of Clifford Alexander, Jr., James C. Allen, Judith Areen, Carl J. Aycock, Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., Gordon S. Macklin, John A. Porter, Bert C. Roberts, Jr., John W. Sidgmore, and Lawrence C. Tucker.

FN5. As identified in the Complaint in the *Securities Litigation*, the Andersen Defendants include Arthur Andersen LLP, Andersen UK, Andersen Worldwide SC, Mark Schopper, and Melvin Dick.

FN6. Although not defined as a group in the Complaint, the SSB Defendants in the *Securities Litigation* include defendants Salomon Smith Barney, Inc., Citigroup, Inc., and Jack B. Grubman. Consequently, Salomon Smith Barney is listed in two groups of defendants.

In addition to staying litigation, the bankruptcy statute, 28 U.S.C. § 1452 (" Section 1452" ), provides for the removal from state court to federal court of actions " related to" a bankruptcy. Actions that had been commenced in state court were removed pursuant to Section 1452(a) as " related to" the WorldCom bankruptcy and transferred to this Court pursuant to order of the MDL panel. Thus far, over forty actions have been transferred by the MDL panel and, with the exception of any ERISA cases, will be consolidated for pretrial purposes pursuant to the Order of December 23 [FN7] in the *Securities Litigation*. Some, if not all, of the plaintiffs in the Individual Actions that were removed have moved to remand their actions to the state courts from which they came.

FN7. The December 23 Order entered in the *Securities Litigation* granted the application of certain defendants to consolidate the Individual Actions with the *Securities Litigation* for pretrial purposes. In light of the motions for remand being made in certain Individual Actions, the December 23 Order provided that after the decision on the motion for remand being made in the instant case-that is, after today-counsel for lead plaintiff in the *Securities Litigation* and for plaintiffs in any Individual Actions remaining before this Court would present a proposed order for consolidation for pretrial purposes.

Pursuant to the MDL Order, cases continue to be transferred to and consolidated in this Court. Meanwhile, the litigation is moving forward. As noted, the *Securities* ****314*** *Litigation* was consolidated and plaintiffs' counsel was appointed in August. By Order dated November 21, the discovery stay imposed pursuant to Section 21D(b)(3)(B) of the Securities Exchange Act of 1934 (" 1934 Act" ), as amended by the Private Securities Litigation Reform Act of 1995 (" PSLRA" ), 15 U.S.C. § 78u-4(b)(3)(B), was modified to permit plaintiffs in the *Securities Litigation* to obtain copies of certain documents and materials that WorldCom had already produced to governmental authorities and certain documents produced in connection with WorldCom's internal investigation. By Opinion and Order dated December 5, motions for stays of litigation and discovery regarding certain individual defendants were decided. SSB Defendant's motion to sever Counts IX, X and XI of the Complaint is fully briefed and was argued on February 13, 2003. At the same hearing, the Court heard argument on discovery issues regarding the confidentiality of the documents to be produced pursuant to the November 21 Order. Motions to dismiss the *Securities Litigation* Complaint, or parts thereof, were fully briefed by certain defendants on January 31. The *ERISA Litigation* is moving forward at a similar tempo.

Motions to dismiss the *ERISA Litigation* were fully submitted on February 28, 2003.[FN8]

FN8. Merrill Lynch's motion to dismiss will be fully submitted on March 14, 2003.

A motion to remand one of the Individual Actions is addressed in this Opinion. New York City Employees' Retirement System (" NYCERS" ) and eight other New York City pension funds,[FN9] filed an action in New York state court on October 29, 2002, alleging violations of the Securities Act of 1933 (" 1933 Act" ) and common law fraud arising out of their purchase of WorldCom stocks and bonds from 1999 through June 25, 2002. NYCERS's complaint states four causes of action: (1) against all defendants for violation of Section 11 of the 1933 Act, 15 U.S.C. § 77k (" Section 11" ) based on false and misleading statements in connection with the May 2000 and May 2001 WorldCom bond offerings; (2) against its officer and director defendants for violations of Section 11 while acting in their alleged capacities as " controlling persons" as defined by Section 15 of the 1933 Act, 15 U.S.C. § 77o (" Section 15" ); (3) for common law fraud against certain defendants for making false or misleading statements in connection with WorldCom securities; and (4) against certain defendants for aiding and abetting that common law fraud.

FN9. The plaintiffs in the NYCERS action are actuarial pension systems for municipal employees of New York City. The plaintiffs are, in addition to NYCERS, the New York City Teachers' Retirement System, New York City Fire Department Pension Fund, New York City Police Department Pension Fund, New York City Board of Education Retirement System, New York City Police Superior Officers' Variable Supplements Fund, New York City Fire Officers Variable Supplements Fund and New York City Teachers' Retirement System Variable Annuity A Program.

With the exception of the underwriters, there is a substantial overlap between the defendants named in the NYCERS action and those named in the Complaint. [FN10] NYCERS***315** names two of the four individual defendants named in the Complaint. The " NYCERS Director Defendants" include an additional director. Of the Anderson Defendants, NYCERS named only one, Arthur Andersen. NYCERS named the same SSB Defendants. Of the sixteen Underwriter Defendants, however, NYCERS named only six and added three additional underwriters (together, " NYCERS Underwriter Defendants" ). The action was removed by the NYCERS Director Defendants on November 8. NYCERS filed a motion to remand, which was fully submitted on January 31.

FN10. This footnote sets forth the difference between the defendants named by NYCERS and the defendants named in the Complaint and identified in nn. 2, 4-6 *supra*. NYCERS names Bernard J. Ebbers and Scott D. Sullivan. Unlike lead plaintiff, NYCERS did not name David F. Myers or Buford Yates. All of the Director Defendants are named in NYCERS's complaint. In addition, NYCERS names Juan Villalonga as a defendant. All of the SSB Defendants are named in NYCERS's complaint. The only Andersen Defendant NYCERS named is Arthur Andersen LLP: Andersen UK, Andersen Worldwide SC, Mark Schopper and Melvin Dick were not named by NYCERS.

Plaintiffs in numerous Individual Actions who are each represented by Milberg Weiss Bershad Hynes & Lerach LLP (" Milberg Weiss" ) have been permitted to intervene in NYCERS's motion so that their arguments concerning the issue of removal can be heard on an expedited basis.[FN11] These plaintiffs (jointly as represented by Milberg Weiss, " Intervenors" ), which are private and public pension funds, have separately filed at least twelve Individual Actions (the " Milberg Weiss Actions" ) in state courts.[FN12] Milberg Weiss represents that it is continuing to add similar clients and lawsuits. Unlike the NYCERS complaint, the Milberg Weiss Actions include simply federal claims, specifically, claims under Sections 11 and 12 of the 1933 Act, 15 U.S.C. §§ 77k and 77l.

FN11. By stipulation so ordered by this Court on December 20, Milberg Weiss agreed to withdraw its objections to the MDL's November 2 Conditional Transfer Order on the condition that it be allowed to intervene in NYCERS's motion to remand.

FN12. The Milberg Weiss Actions were filed in Illinois, California, Ohio, West

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Virginia, Montana, Washington, Minnesota and Wisconsin, among other places.

For example, one of the earliest Milberg Weiss Actions was the action filed by California Public Employees Retirement Systems (" CALPERS" ) on July 15, 2002 in Los Angeles Superior Court. It named WorldCom as a defendant, as well as many of the defendants in the NYCERS action and in the Complaint.[FN13] It pleads a single cause of action-a Section 11 claim-based on the May 2001 WorldCom bond offering.

FN13. CALPERS names WorldCom, Inc., Bernard J. Ebbers, Scott D. Sullivan, J.P. Morgan Chase & Co., Banc of America Securities LLC, Deutsche Bank Alex. Brown, Inc., ABN/AMNRO Inc., J.P. Morgan Securities, Inc., Deutsche Bank AG, Bank of America Corp., Arthur Andersen LLP, and all of the NYCERS Director Defendants.

If the Milberg Weiss Actions or NYCERS had pleaded federal securities law claims that are customarily included in complaints where there are allegations of substantial wrongdoing in connection with securities, for example a claim for fraud under Section 10(b)(5) of the 1934 Act, 15 U.S.C. § 78(j)(b) (1994), or class rather than individual claims, the lawsuits would have been removable pursuant to the federal question removal provision of 28 U.S.C. § 1441, or pursuant to 15 U.S.C. § 77p, the class action removal provision of the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105-353, 112 Stat. 3227 (" SLUSA" ) (codified in scattered sections of Title 15 of the United States Code).

By limiting their complaints to individual (as opposed to class action) 1933 Act claims, Intervenors sought to take advantage of a provision of the 1933 Act that bars ordinary federal question removal of Section 11 and Section 12 claims brought in state court actions, a provision which remained unchanged by the revisions Congress enacted in 1998 when it passed SLUSA. *See* 15 U.S.C. § 77(v)(a). Intervenors contend that their narrowly styled ***316** complaints may not be removed and seek to continue to litigate them separately in the numerous state court jurisdictions in which they have been filed.

*The Arguments*

NYCERS argues that the removal of its action was unjustified and that its action must be remanded to state court. NYCERS claims that this Court lacks subject matter jurisdiction over this action because the action does not " arise under" the bankruptcy laws and does not " arise in" and is not " related to" the bankruptcy action. In addition, NYCERS contends that even if this action is " related to" WorldCom's bankruptcy, abstention is required by Section 1334(c)(2) of Title 28, United States Code (" Section 1334(c)(2)" ), or warranted in the exercise of discretion under Section 1334(c)(1) of Title 28, United States Code (" Section 1334(c)(1)" ). Failing that, it argues for remand based on equitable grounds. Intervenors raise similar arguments, [FN14] but also argue that because their Individual Actions raise claims solely under Sections 11 and 12, removal is barred by 15 U.S.C. § 77(v)(a) ( " Section 22(a)" ) of the 1933 Act.

FN14. Where NYCERS and Intervenors raise the same arguments, this Opinion refers to " NYCERS," including in that reference the arguments made by Intervenors. Arguments made solely by Intervenors are attributed as such.

The NYCERS Underwriter Defendants and NYCERS Director Defendants (collectively, " NYCERS Defendants" ) both argue that this action is properly before this Court. They argue that subject matter jurisdiction exists because the NYCERS action is " related to" WorldCom's bankruptcy principally through the indemnification and contribution rights these Defendants have asserted against WorldCom, as well as the insurance policies under which NYCERS Director Defendants are covered by reason of their association with WorldCom. These Defendants contest Intervenors' interpretation of the securities laws as an absolute bar to removal, and urge against abstention or remand.

The Securities Industry Association (" SIA" ) has submitted an *amicus curiae* brief. The SIA represents securities firms including investment banks, broker-dealers, and mutual fund companies. Like the NYCERS Defendants, the SIA argues that the various indemnification and contribution rights affect WorldCom's bankruptcy, and thus create " related to" jurisdiction. In particular, the SIA focuses on the significance of indemnification and contribution agreements as mechanisms to allocate risk among participants in the securities industry.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The issues raised by the motion to remand are addressed in the following order: (1) whether there is jurisdiction over the action as a proceeding " related to" the WorldCom bankruptcy; (2) whether Section 22(a) of the 1933 Act bars removal; (3) whether removal requires the unanimous consent of the named defendants; (4) whether abstention is required pursuant to Section 1334(c)(2); (5) whether abstention is appropriate pursuant to Section 1334(c)(1); and (6) whether a remand is warranted on equitable grounds.

*Discussion*

[1] A party seeking to remove an action from state to federal court bears the burden of proving federal jurisdiction. *See Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998) (" It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." ); *Pan Atl. Group, Inc. v. Republic Ins. Co.,* 878 F.Supp. 630, 638 (S.D.N.Y.1995) (DLC) (removal jurisdiction). If there is doubt as to whether federal jurisdiction exists, remand is appropriate.***317** *See Pan Atl. Group,* 878 F.Supp. at 638.

**I. Removal and Federal Jurisdiction under the Bankruptcy Code**

Pursuant to statute, cases filed in state court may be removed to federal court if they are sufficiently related to bankruptcy proceedings. Section 1452(a) permits the removal to federal court of any claim over which a federal district court has jurisdiction pursuant to Section 1334 of Title 28 of the United States Code (" Section 1334" ). Section 1452(a) states:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Jurisdiction under Section 1334 is contingent upon a proceeding's relationship to a bankruptcy case. Section 1334(b) provides:Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under title 11, or arising in or related to cases under title 11*.

28 U.S.C. § 1334(b) (emphasis supplied).

[2] None of the parties to the NYCERS action contends that it is a proceeding " arising under" Title 11 or " arising in" a Title 11 case. Thus, the jurisdictional debate centers on whether the NYCERS action-consisting of allegations against NYCERS Underwriter Defendants and NYCERS Director Defendants, among others, for violations of Sections 11 and 15 and violations of state laws-are " related to" the WorldCom bankruptcy.

In enacting Section 1334(b) " Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (citation omitted). Consequently, while " related to" jurisdiction is not " limitless" it does encompass " more than simply proceedings involving the property of the debtor or the estate." *Id.* Moreover, " related to" jurisdiction may extend more broadly when it concerns a reorganization under Chapter 11 as opposed to a liquidation under Chapter 7. *Id.* at 310, 115 S.Ct. 1493.

The dominant standard for " related to" jurisdiction is that set forth by the Third Circuit in *In re Pacor, Inc.,* 743 F.2d 984 (3d Cir.1984). The *Pacor* test states that a civil proceeding is " related to bankruptcy" if " the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy." *Id.* at 994 (emphasis in original partially removed); *see Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493. For a federal court to have " related to" jurisdiction over an action,

the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493 (citation omitted). Many circuit courts have derived their standard for " related to" jurisdiction from the *Pacor* standard.***318** *See, e.g., Arnold v. Garlock,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

278 F.3d 426, 434 (5th Cir.2001); *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999); *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir.1996); *In re G.S.F. Corp.*, 938 F.2d 1467, 1476 (1st Cir.1991); *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.1986).

[3] The Second Circuit clarified its reliance on the *Pacor* test in *In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir.1992).[FN15]

> FN15. As the Supreme Court pointed out in *Celotex Corp.*, in *In re Turner*, 724 F.2d 338 (2d Cir.1983), the Second Circuit appeared to have adopted a " slightly different" test. *Celotex Corp.*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493. *In re Turner* stated that a proceeding was related to a bankruptcy if there was a " significant connection" between the two. *In re Turner*, 724 F.2d at 341 (citation omitted). Although the " significant connection" criterion seemed more rigorous than the *Pacor* test, the *In re Turner* test also allowed connections other than the monetary effect on the bankruptcy estate to inform the jurisdictional evaluation. *See Nemsa Est. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277, 1995 WL 489711, at *3 (S.D.N.Y. Aug. 15, 1995); *Weisman v. Southeast Hotel Prop.*, No. 91 Civ. 6232(MBM), 1992 WL 131080, at *3 (S.D.N.Y. June 1, 1992).

The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have *any " conceivable effect"* on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the " related to" jurisdiction of the bankruptcy court.

*Id.* at 114 (emphasis supplied). Thus, in this Circuit, as elsewhere, whether an action has " any conceivable effect" on the bankruptcy estate determines whether a federal court has " related to" jurisdiction over the matter.

In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to " related to" jurisdiction over litigation to which the debtor is not a party, courts in this circuit, particularly since *In re Cuyahoga*, have generally found jurisdiction where there is a " reasonable" legal basis for the claim. *See In re River Center Holdings, LLC*, 288 B.R. 59, 63-65 (Bankr.S.D.N.Y.2003) (contractual duty of debtor to indemnify guarantor who was third party defendant); *In re Masterwear Corp.*, 241 B.R. 511, 516-17 (Bankr.S.D.N.Y.1999) (corporate by-laws and Delaware law allowed third party defendants to recover legal fees and expenses from debtor); *In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y.1997) (no jurisdiction " in absence of any articulated legal basis for an indemnity action" ); *Bond Street Assoc. v. Ames Dept. Stores, Inc.*, 174 B.R. 28 (S.D.N.Y.1994) (finding jurisdiction even in the absence of an indemnification agreement where third party defendant would " normally have a claim" for indemnification against the debtor). *But see General Elec. Cap. Corp. v. Pro-Fac Coop.*, No. 01 Civ. 10215(LTS), 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002) (recognizing that contribution and indemnification claims could conceivably affect estate administration but nonetheless finding that they were an " insufficient" basis for jurisdiction).

Several Circuit Courts of Appeals have also found jurisdiction over third party litigation based on an indemnification or contribution claim that has a conceivable effect on the debtor's estate. In *In re El Paso Refinery, LP*, 302 F.3d 343 (5th Cir.2002), the Fifth Circuit weighed a " chain of indemnification provisions" that Texaco could have used to assert a claim against the debtor and determined that there was jurisdiction over a third party claim against Texaco even though Texaco did ***319** not actually assert any claim against the debtor. *Id.* at 348-49. In *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir.1997), the Third Circuit found jurisdiction over employee suits filed against corporate officers for non-payment of wages based on the indemnification provision in the corporate by-laws of the debtor. The court rejected the arguments that jurisdiction did not exist because the indemnification claims were contingent or a collusive attempt to manufacture jurisdiction. *Id.* at 636-37. The Sixth Circuit held in *In re Dow Corning Corp.*, 86 F.3d 482, that tens of thousands of claims filed against manufacturers and suppliers of silicone gel breast implants were related to the bankruptcy of the Dow Corning Corporation (" Dow" ) because of the claims for contribution and indemnification against Dow under theories of joint and several liability. In its view, " [t]he potential for Dow ... being held liable in claims for contribution and indemnification ... suffices to establish a conceivable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

impact on the estate in bankruptcy." *Id.* at 494. In so holding, the *Dow* court was influenced by the size of a threat " posed by the thousands of potential indemnification claims" and the threat that those claims posed to Dow's successful reorganization. *Id.* In *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991), a contractual indemnification provision supported jurisdiction even though the debtor " would not be affected until and unless [the third party] invoked the indemnification" provision. *Id.* at 1143. *Wolverine* observed that where the parties are " intertwined," it would " not require a finding of definite liability of the estate as a condition precedent to hold an action related to a bankruptcy proceeding." *Id.* (citation omitted). *See also* *Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir.2001) (generally approving of " related to" jurisdiction for contribution claims in the mass tort context, but declining to enter stay of the remand of third-party actions where the removing defendant had not shown a likelihood of success on any contribution claim); *In re Canion*, 196 F.3d 579, 586-87 (5th Cir.1999) (third party litigation that might decrease the claims against the estate is related to bankruptcy); *A.H. Robins v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (actions are related to bankruptcy when brought against officers of debtor who may be entitled to indemnification under debtor's insurance policy).

Against the weight of those decisions is the recent Third Circuit decision in *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir.2002). The debtor and other manufacturers and distributers of friction products containing asbestos had been sued in tens of thousands of actions in state courts across the country. After the debtor filed for bankruptcy, and plaintiffs dismissed it from their actions, the co-defendants removed the litigation to federal court on the ground that their indemnification and contribution claims against the debtor made the litigation " related to" the bankruptcy. *Id.* at 372-73. Reading its own decision in *Pacor* more narrowly than other courts have done, it refused to grant a writ of mandamus to overturn a lower court's finding that " related to" jurisdiction did not exist. *Id.* at 384.

In *Pacor* itself, the Third Circuit had held that a lawsuit against a distributor of asbestos was not " related to" the bankruptcy of the asbestos manufacturer, since it was " [a]t best ... a mere precursor" to a claim for indemnification. *Pacor*, 743 F.2d at 995. The *Pacor* court noted that the manufacturer had no " automatic" liability for any judgment against the distributor since it had no indemnification agreement, and that there could be no effect on the bankruptcy estate until the distributor filed a claim. *Id.* at 995-96.

***320** Focusing not on the broad standard for " related to" jurisdiction articulated by *Pacor* and cited with approval by the Supreme Court in *Celotex, see supra*, or the limited nature of *Pacor's* holding, or even its own precedents in which it had found jurisdiction, *see, e.g.*, *Belcufine*, 112 F.3d at 636, the *Federal-Mogul* court opined that jurisdiction exists where " the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." *Federal-Mogul*, 300 F.3d at 382. While the Intervenors in particular place great weight on *Federal-Mogul*, the *Pacor* standard and the more persuasive authority described above indicate that jurisdiction over a third party action exists where a claim for indemnification or contribution arising from that litigation has a conceivable effect on a bankruptcy proceeding.

The NYCERS Director Defendants allege that this action will affect the bankruptcy estate in at least four ways: (1) the ongoing, court-ordered payment of the NYCERS Director Defendants' legal fees; (2) the indemnification rights stated in Article X of WorldCom's by-laws; (3) the WorldCom insurance policies that provide Director and Officer (" D & O" ) coverage for the NYCERS Director Defendants; and (4) the statutory right to contribution under 15 U.S.C. § 77k(f)(1).[FN16] In addition, the NYCERS Director Defendants stress that all of the allegations against them stem from their association with the debtor.

> FN16. 15 U.S.C. § 77k(f)(1) provides:
> Except as provided in paragraph (2), *all* or any one or more of the *persons* specified in subsection (a) of this section *shall be jointly and severally liable*, and *every person* who becomes liable to make any payment under this section *may recover contribution* as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.
> (emphasis supplied).

NYCERS contests that there is a reasonable basis for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the first three of the grounds on which the NYCERS Director Defendants rely. It contends (1) that the attorneys' fees are being paid to special counsel for the debtor and not on behalf of the NYCERS Director Defendants; (2) that the NYCERS Director Defendants have not met the conditions precedent to entitle them to indemnification under WorldCom's by-laws and that indemnification is barred, in any event, as a matter of law; and (3) that WorldCom does not share rights to the insurance that is providing the D & O coverage.[FN17] NYCERS has not contested, however, that there is a reasonable basis for the statutory contribution claim.

FN17. Intervenors add that WorldCom has disclaimed all rights to the insurance providing the majority of the D & O coverage.

The NYCERS Underwriter Defendants also argue that their indemnification and contribution rights against WorldCom have a " conceivable effect" on the WorldCom estate and thus create " related to" jurisdiction. The NYCERS Underwriter Defendants rely on (1) the indemnification clauses in the underwriting agreements for WorldCom's May 2000 and May 2001 bond offerings; (2) the statutory provision regarding contribution in 15 U.S.C. § 77k(f)(1); and (3) common law theories for WorldCom's joint and several liability. The NYCERS Underwriter Defendants filed Proofs of Claim on August 2, 2002, and on January 17, 2003, in the WorldCom bankruptcy proceeding seeking reimbursement for defense costs and asserting tort and contract claims against WorldCom in addition to the contractual and statutory ***321** indemnity and contribution claims.[FN18] Like the NYCERS Director Defendants, the NYCERS Underwriter Defendants argue that the identity of interests between the NYCERS Defendants and WorldCom creates a greater likelihood that this action will affect the bankruptcy estate.

FN18. In their Proofs of Claim, the NYCERS Underwriter Defendants claim " broad indemnities and rights to contribution against the Debtors for damages and costs incurred as a result of [civil actions] commenced (or that may be commenced in the future) against them arising out of or related to" WorldCom securities offerings ranging in date from April 1, 1997 through May 15, 2001. In addition, the NYCERS Underwriter Defendants included claims for legal costs, including over five million dollars in legal costs accrued by January 17, 2003.

NYCERS disputes that there is a reasonable basis for the first of these grounds-the contractual right to indemnification-but does not contest that the statutory and common law rights to contribution have a reasonable basis. The parties do not dispute, therefore, that the NYCERS Defendants have identified a reasonable basis for claims for contribution that have a conceivable effect on the WorldCom bankruptcy. The NYCERS Underwriter Defendants already have asserted these claims by filing a proof of claim in the WorldCom bankruptcy proceeding.

There is a reasonable basis for at least the contribution claims.[FN19] A finding that either the NYCERS Director or Underwriter Defendants are liable is entirely dependent on a finding that WorldCom engaged in wrongful conduct. Since the conduct of WorldCom and these Defendants was indisputably intertwined, the theories of liability pressed by NYCERS are necessarily interconnected with these Defendants' rights to contribution. Because the effect of contribution claims on the bankruptcy estate is at the very least " conceivable," the NYCERS action is related to the bankruptcy and subject to the jurisdiction of this Court.

FN19. In light of this conclusion, there is no need to address the competing arguments about whether there is a reasonable basis for the NYCERS Defendants' indemnification claims, or even decide the extent to which a defendant has a burden to show that there is a reasonable basis for a claim.

The existence of strong interconnections between the third party action and the bankruptcy has been cited frequently by courts in concluding that the third party litigation is related to the bankruptcy proceeding. *See, e.g., In re Dow Corning,* 86 F.3d at 492-94; *In re Wolverine Radio Co.,* 930 F.2d at 1143; *In re Ames Dept. Stores, Inc.,* 190 B.R. 157, 161 (S.D.N.Y.1995). Here, but for WorldCom's bankruptcy, it would have been named as a defendant in the NYCERS action,[FN20] and despite its absence as a party, its conduct will remain at the heart of the NYCERS litigation. As NYCERS states in its Complaint, " because WorldCom filed for protection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under the bankruptcy laws, it is not named as a party defendant in this action...."

FN20. WorldCom has been named as a defendant in several of the Milberg Weiss Actions.

[4] NYCERS asserts that there are two additional barriers to a finding of jurisdiction. First, it contends that any claim for contribution must be a liquidated claim, that is, already reduced to judgment, to be related to the bankruptcy. In a parallel argument, it points to the bar contained in Section 502(e)(1)(B) of the Bankruptcy Code, 11 U.S.C. § 502(e)(1)(B), to contingent claims, and argues that the NYCERS Defendants' claims for contribution will be disallowed. Next, NYCERS asserts that, ***322** as a matter of law, to support " related to" jurisdiction, the claim must enlarge or diminish the size of the bankruptcy estate and cannot merely alter the distribution among creditors.[FN21]

FN21. The remaining argument pursued by NYCERS, that certain of the NYCERS Defendants' claims are too insignificant to affect the bankruptcy, is asserted solely in connection with the claims for attorneys' fees and certain indemnification theories. Since the contribution claims support jurisdiction, it is unnecessary to decide what role, if any, the size of a claim's effect on the estate plays in a determination of the existence of subject matter jurisdiction.

The argument that any claim for contribution or indemnification must be reduced to judgment to provide a basis for jurisdiction can be swiftly rejected. The *Pacor* standard, including the language cited with apparent approval by the Supreme Court in *Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493, does not require the level of certainty that NYCERS proposes. If the litigation against the NYCERS Director and Underwriter Defendants had already concluded and resulted in a judgment against them, then the effect of their contribution claims on the bankruptcy proceeding would not simply be " conceivable," it would be certain and quantifiable. It is not uncommon, as has been the case with WorldCom, that the debtor's filing for bankruptcy and the onslaught of third party litigation are essentially simultaneous. Not infrequently, the debtor files for bankruptcy after being sued, and the claims against it are thereafter severed and transferred to bankruptcy court or dismissed but the litigation continues against the remaining defendants. *See, e.g., In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir.1995). In many of the decisions already discussed, the on-going litigation has supported a finding of jurisdiction without any requirement that a judgment against a third party defendant already exist. *See, e.g., In re Canion,* 196 F.3d at 586-87; *In re Celotex,* 124 F.3d at 627; *Belcufine,* 112 F.3d at 637; *In re Dow,* 86 F.3d at 494.

NYCERS relies principally on *dicta* in *Pacor,* 743 F.2d 984, to support its argument that, since the NYCERS Defendants have only contingent, unliquidated claims against WorldCom for contribution, there is no jurisdiction. As already discussed, *Pacor's* holding is fairly narrow. It found that, " at best," the defendant in the third party litigation had a claim for indemnification against the debtor. It noted, among other things, that there was no contract providing a right to indemnification or any agreement to indemnify. *Id.* at 995. *Pacor* contrasted its facts with the situation in *In re Brentano's,* 27 B.R. 90 (Bankr.S.D.N.Y.1983), in which there was a guarantee and a contractual indemnification clause. *Pacor* noted that, in those circumstances " it is clear" that the third party action " would affect the estate in bankruptcy." *Id.* Therefore, despite the *dicta* in *Pacor* on which NYCERS relies, *Pacor* should not be read as requiring a judgment to have been entered against a third party defendant before the third party action can ever be found to be " related to" the bankruptcy proceeding. It is more consistent with the holding and all of the language in *Pacor* to read it as requiring, in effect, that there be a reasonable basis for a claim against the estate in order to find that the third party litigation could conceivably affect the bankruptcy estate. *See In re Celotex Corp.,* 124 F.3d at 627 (discussing *Pacor*).

[5] In a related argument, NYCERS contends that the bar in the bankruptcy statute to payment of contingent claims prevents a finding of jurisdiction since the NYCERS Defendants' claims for contribution***323** (and indemnification) are " not yet ripe." Section 502(e)(1)(B) of the Bankruptcy Code states that:

Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that ... such claim for reimbursement or contribution *is contingent as of the time of allowance or disallowance* of such claim for reimbursement or contribution....

11 U.S.C. § 502(e)(1)(B) (emphasis supplied).

Section 502(e)(1)(B) prevents a distribution from the estate from being made on the basis of contingent claims. *See Aetna Cas. & Sur. Co. v. Ga. Tubing Corp.,* 93 F.3d 56, 57 (2d Cir.1996); *In re Drexel,* 148 B.R. 982, 987 (Bankr.S.D.N.Y.1992). Contingency in the context of a claim for contribution by a joint tortfeasor relates to both liability and payment. *In re Drexel,* 148 B.R. at 990. " A contingent claim becomes fixed and allowable to the extent that the co-debtor has paid the underlying claim." *Id.* Where a contingent claim is disallowed, it may be reconsidered when the contingency is " resolved." *Id.* at 991 (citation omitted); *see* 11 U.S.C. § 502(j).

The present contingency of a claim, therefore, says little about whether the creditor will be able to have the claim reconsidered and allowed when it is no longer contingent. Claims that are contingent today nonetheless have a " conceivable" effect on the bankruptcy. As the Third Circuit has noted, Section 502(e)(1)(B) does not prevent a finding of jurisdiction in the case of contingent claims. *Belcufine,* 112 F.3d at 636-37. Whether or not a claim ultimately will be disallowed " is one for none other than the bankruptcy court." *Id.* at 637; *see also In re Celotex Corp.,* 124 F.3d at 626 (finding jurisdiction over a contingent claim because it had a conceivable effect on the bankruptcy due in part to the requirement under 11 U.S.C. § 502(c) to estimate contingent claims).

NYCERS's argument regarding the nature of the effect on the bankruptcy estate also fails. The contribution claims have the potential to alter the distribution of assets among the estate's creditors. Under the *Pacor* standard, " related to" jurisdiction exists when there is any impact on the " handling and administration of the bankrupt estate." *Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493. The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is " related to" the bankruptcy proceeding. *See, e.g., In re Celotex,* 124 F.3d at 626; *In re Cuyahoga,* 980 F.2d at 114; *American Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.,* 198 B.R. 55, 58 (S.D.N.Y.1996).

Finally, NYCERS argues that the recent decision in *Retirement Sys. of Alabama v. J.P. Morgan Chase & Co.,* 285 B.R. 519 (M.D.Ala.2002) (" *RSA II*" ), FN22 should be followed. In *RSA II*, the Honorable W. Harold Albritton rejected the argument that indemnification clauses in the underwriting agreements between WorldCom and its underwriters supported jurisdiction, even when there was a Proof of Claim based on the indemnification ***324** claim filed in the WorldCom bankruptcy. *Id.* at 523, 530. Chief Judge Albritton construed the indemnification clause and determined that before a claim filed by an underwriter could affect the WorldCom estate, the underwriter would have to establish that it had made no untrue statements or omissions to WorldCom. *Id.* at 529. Finding that that hurdle made the " potential effect" of third party litigation on the bankruptcy " speculative," *id.* at 529, the court determined that there was no jurisdiction and remanded the action based in part on that reason. *Id.* at 530-31.

FN22. On May 31, 2002, the Honorable W. Harold Albritton issued an opinion addressing similar issues in an action arising out of the collapse of Enron Corporation also brought by the Retirement System of Alabama. *Retirement Sys. of Alabama v. Merrill Lynch & Co.,* 209 F.Supp.2d 1257 (M.D.Ala.2002) (" *RSA I*" ). Thus, the later, WorldCom-related opinion is referred to as *RSA II*.

*RSA II* did not have the benefit of the more fully developed record presented by the parties in connection with the instant motion. As described above, not only the NYCERS Underwriter Defendants but also the NYCERS Director Defendants have presented multiple grounds for jurisdiction, and those grounds extend beyond indemnification clause construed in *RSA II*.[FN23] Given the present record, the NYCERS Defendants have carried their burden to show the existence of subject matter jurisdiction over the NYCERS action.

FN23. Given that subject matter jurisdiction is amply supported by the contribution claims, it is unnecessary to address the NYCERS Defendants' arguments that *RSA II* erred in its construction of the indemnification clauses.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**II. Section 22(a) of the Securities Act of 1933**

[6] NYCERS and Intervenors argue that Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a), bars removal of their federal securities law claims to federal court. They contend that the express carve-out of Section 22(a) from the general federal question removal statute also trumps a federal court's bankruptcy jurisdiction and removal authority. In apparent reliance on this construction, each of the federal claims pleaded by NYCERS and the Intervenors arises solely from the 1933 Act. Indeed, the Intervenors have pleaded only 1933 Act claims, and have not even added state law claims to their complaints. FN24 The argument based on Section 22(a) is without merit.

FN24. Most Milberg Weiss Actions plead a single claim for a violation of Section 11, although at least one Milberg Weiss Action also contains a claim for violation of Section 12(a)(2) of the 1933 Act.

Construction of the relevant statutes " must begin with the words of the text." *Saks v. Franklin Covey Co.,* 316 F.3d 337, 345 (2d Cir.2003); *see Mallard v. United States Dist. Court,* 490 U.S. 296, 300-01, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Whether the meaning of the statute is plain or ambiguous " is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); *United States v. Dauray,* 215 F.3d 257, 260-61 (2d Cir.2000). A particular section of a statute should " be understood in context with and by reference to the whole statutory scheme...." *Auburn Housing Auth. v. Martinez,* 277 F.3d 138, 144 (2d Cir.2002); *see also Saks,* 316 F.3d at 345. In addition, comparison to other similar statutory provisions, *Mallard,* 490 U.S. at 305-07, 109 S.Ct. 1814, and the statute's legislative history may be used to resolve ambiguity. *Dauray,* 215 F.3d at 264; *Auburn Housing Auth.,* 277 F.3d at 143-44.

The clear and unambiguous language of the bankruptcy removal statute-Section 1452-permits removal of 1933 Act claims. The argument presented by NYCERS, and more emphatically by the Intervenors, ***325** however, implicates two separate statutory schemes: the securities laws-specifically, the 1933 Act, the 1934 Act, the PSLRA, and SLUSA-and the Bankruptcy Code, as well as Sections 1331 and 1441 of the Judicial Code, 28 U.S.C. §§ 1331 and 1441 (" Section 1331" ) and (" Section 1441" ). As the discussion that follows demonstrates, under the securities laws, federal jurisdiction is increasingly favored. Under the bankruptcy laws, efficiency and reorganization goals favor coordinating actions related to a bankruptcy in federal court. In the end, however, the determination is straightforward: removability of a Section 11 claim depends upon whether Section 22(a)-the 1933 Act removal provision-is an exception to both Section 1441 removal (original jurisdiction removal) and Section 1452 removal (bankruptcy removal). It is an exception to Section 1441; it is not an exception to Section 1452 removal.

**A. The 1933 and 1934 Acts**

Sections 11 and 12 of the securities laws, under which Intervenors state their claims, were enacted as part of the 1933 Act, the first federal law devoted to regulating the securities industry. The 1933 Act was passed in the wave of legislation enacted in President Franklin D. Roosevelt's first one hundred days in office. Although the federal government had not previously made any serious attempt to regulate the securities industry, Congress did not enter an empty field. By the time Congress passed the 1933 Act, every state except Nevada had enacted a so-called " blue sky law" to regulate the sale of securities. FN25

FN25. Although how the state statutes came to be known as " blue sky" laws is not clear, accounts agree that the name arose from the type of problems the statutes addressed: either " speculative schemes which have no more basis than so many feet of blue sky," 69A Am.Jur.2d *Sec. Reg.* State § 1 (1993), or " fast-talking eastern industrialists selling everything including the blue sky." 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 8.1, at 490-92 (3d ed.1995).

The key jurisdictional provision of the 1933 Act is found in Section 22(a) (as amended), which provides for concurrent state and federal jurisdiction over some 1933 Act claims:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*The district courts of the United States* and United States courts of any Territory, *shall have jurisdiction* of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, *concurrent with State* and Territorial *courts, except as provided* in section 77p of this title *with respect to covered class actions*, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.

15 U.S.C. § 77v(a) (emphasis supplied). The exception to concurrent jurisdiction in the case of " covered class actions" was added in 1998, as described below.

Section 22(a) also bars removal of certain 1933 Act claims from state to federal court:

*Except as provided* in section 77p(c), *no case* arising under this subchapter and brought in any State court of competent jurisdiction *shall be removed* to any court of the United States.

15 U.S.C. § 77v(a) (emphasis supplied). Commentators note that in enacting the 1933 Act, Congress sought both to provide a uniform federal approach to securities regulation, and to leave in place the existing state blue sky laws. *See* Richard W. Painter, *Responding to a False Alarm: Federal Preemption of State Securities Fraud Causes of Action,* 84 Cornell L.Rev. 1, 25-29 (1998); Michael A. Perino, ***326***Fraud and Federalism: Preempting Private State Securities Fraud Causes of Action,* 50 Stan. L.Rev. 273, 280-84 (1998).

The 1934 Act, on the other hand, provided exclusive federal jurisdiction over 1934 Act claims. 15 U.S.C. § 78a(a) (1994); *de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 482, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Section 10(b), for example, a commonly invoked cause of action for fraud in connection with the purchase or sale of securities,[FN26] was enacted as part of the 1934 Act and is subject exclusively to federal jurisdiction. *See* 15 U.S.C. § 78j(b); *see also* 17 C.F.R. § 240.10b-5 (" Rule 10b-5" ). Like the 1933 Act, however, the 1934 Act was drafted to protect, rather than to preempt, the state blue sky laws. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 182, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *see also* Painter, 84 Cornell L.Rev. at 20-28 (discussing blue sky laws, 1933 and 1934 Acts).

FN26. To state a claim under Section 10(b), and the corresponding enforcement Rule 10b-5, " a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 161 (2d Cir.2000).

**B. PSLRA & SLUSA**

In 1995, when it enacted the PSLRA, Congress did not amend the jurisdictional provisions of Section 22(a). It did, however, promulgate a number of procedural reforms for federal securities litigation. Those reforms included (1) a heightened pleading standard for fraud allegations,[FN27] 15 U.S.C. § 78u-4(b); (2) an automatic stay of discovery while motions to dismiss are pending, 15 U.S.C. §§ 77z-1(b), 78u-4(b)(3)(B); and (3) the " safe-harbor" provisions for forward-looking information. 15 U.S.C. §§ 77z-2(c)(2)(1)(A)(i) and 2(c)(1)(B)(1), 78u-5(c)(1)(A)(i) and 5(c)(1)(B)(2).[FN28]

FN27. The PSLRA pleading standard was based upon the pleading standard applied by the Second Circuit. *See Kalnit v. Eichler,* 264 F.3d 131, 138 (2d Cir.2001); *Ganino,* 228 F.3d at 169-70.

FN28. For a discussion of other significant reforms, *see* Painter, 84 Cornell L.Rev. at 32-35.

The PSLRA was perceived to have encouraged plaintiffs to pursue securities litigation in state rather than federal court. *See* Perino, 50 Stan. L.Rev. at 298-315; Painter, 84 Cornell L.Rev. at 42-47. In 1998, Congress enacted SLUSA, partly in response to this apparent shift. *See* Pub.L. No. 105-353 § 2(2). SLUSA's Congressional findings explained that the PSLRA had not had its intended effect because class action plaintiffs were avoiding the PSLRA's heightened procedural requirements by bringing suit in state court under state statutory or common law. *See Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107-08 (2d Cir.2001); Pub.L. No. 105-353 §§ 2(1)-(5).

SLUSA amended Section 16 of the 1933 Act, 15 U.S.C. § 77p (" Section 16" ), in several substantial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ways to concentrate securities litigation in federal court. It preempted many state law claims to the extent that they were asserted in a securities class action and it made the removal of certain class actions based on federal claims mandatory. *See Lander,* 251 F.3d at 108. The preemption provision applies to any " covered class action." FN29 It provides

FN29. A covered class action is defined at 15 U.S.C. § 77p(f)(2).

*No covered class action based upon the statutory or common law of any State* or subdivision thereof *may be maintained in any State or Federal court* by ***327** any private party alleging-(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b) (emphasis supplied).FN30 The mandatory removal provision states that " [a]ny covered class action brought in any State court involving a covered security ... *shall* be removable to the Federal district court...." 15 U.S.C. § 77p(c) (emphasis supplied).FN31

FN30. 15 U.S.C. § 77p(f)(3) defines " covered security" as a security that satisfies the standards set forth in paragraphs (1) or (2) of 15 U.S.C. § 77r(b).

FN31. Other provisions in Section 16 preserve the right to bring a covered class action based on state law claims in an issuer's state of incorporation, *see* 15 U.S.C. § 77p(d)(1)(A), and preserve certain rights for State pension plans, *see* 15 U.S.C. § 77p(d)(2).

Finally, for our purposes, SLUSA also amended the 1933 Act's removal provision-Section 22(a)-to integrate it with the mandatory removal of covered class actions. As amended, Section 22(a) states that " *[e]xcept as provided in section 77p(c) of this title* [for covered class actions], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a) (emphasis supplied). Thus, SLUSA narrowed the Section 22(a) removal bar so that is would only apply to actions not covered by the Section 16 mandatory class action removal provision. Together, Sections 16 and 22 provide that federal court is, with limited exceptions not relevant here, the sole forum in which class actions involving covered securities may be pursued. *See Lander,* 251 F.3d at 108.

### C. Federal Jurisdiction and Removal Authority

The 1933 Act's concurrent jurisdiction and removal bar is best understood in the context of the larger federal scheme for jurisdiction over actions arising under federal law and for the removal of such actions to federal court. Since 1875, federal district courts have had original jurisdiction over all cases arising under federal law pursuant to the statute now numbered as Section 1331. *See* 28 U.S.C. § 1331; *see also Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 826, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

[7][8] Section 1441(a), in turn, provides that if federal jurisdiction exists, an action may be removed from state to federal court unless Congress has " expressly provided" otherwise:

*Except as otherwise expressly provided by Act of Congress,* any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States....

28 U.S.C. § 1441(a) (emphasis supplied). Section 1441 also allows removal of claims that are joined with claims over which federal courts have jurisdiction:*Whenever a separate and independent claim* or cause of action within the jurisdiction conferred by section 1331 of this title *is joined* with one or more otherwise non-removable claims or causes of action, the entire case may be removed....

28 U.S.C. § 1441(c) (emphasis supplied). Whether removal is appropriate thus depends on whether the case, or some portion thereof, originally could have been ***328** filed in federal court. *See City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). If the basis for removal is the presence of a federal law claim, the " well-pleaded complaint" rule requires that the federal question appear on the face of the complaint, rather than in an anticipated defense. *Id.; see also Jefferson County v. Acker,* 527 U.S. 423, 430-31, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999); *Franchise Tax Board v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9-11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 22(a) is an exception to the Section 1441(a) removal provision. In Section 22(a), Congress " expressly provided," as required by Section 1441(a), that " [e]xcept as provided in section 77p(c), *no case* arising under [the 1933 Act] and brought in any State court of competent jurisdiction *shall be removed.*" 15 U.S.C. § 77v(a) (emphasis supplied). Thus, a complaint stating solely 1933 Act claims, so long as they are not class action claims otherwise covered by SLUSA's mandatory removal provision, may not be removed if the only ground for removal is the existence of a federal law claim. The basis for removal in this case, however, was not simply the existence of a federal law claim, but the existence of bankruptcy jurisdiction.

As already described, the bankruptcy removal provision-Section 1452-is a separate but parallel provision to Section 1441. It was enacted in 1984 and promotes federal court jurisdiction over specified bankruptcy-related claims. *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 131-32, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsberg, J., concurring). " Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts-a chapter now comprising 28 U.S.C. §§ 1441-1452-meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Id.* Instead of providing for removal of any action over which the federal courts have *original* jurisdiction, as Section 1441 does, Section 1452 provides for removal of any action subject to the *bankruptcy* jurisdiction of the federal courts, as that jurisdiction is defined in Section 1334.

Like Section 1441, Section 1452 contains exceptions. Unlike Section 1441, however, the Section 1452(a) exceptions are limited and express. Section 1452(a) removal does not apply to (1) proceedings " before the United States Tax Court" or (2) " a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." 28 U.S.C. § 1452(a).

**D. The Interaction of Section 22(a) and Section 1452(a)**

Applying the edict that statutory construction begins with an examination of the text, it is plain from the face of Section 1452(a) that it does not include Section 22(a) in its limited list of exceptions.[FN32] Indeed, Section 1452(a) does not even mention the securities laws. Section 1452(a) was enacted decades after Section 22 became law, and could easily have included a third exception to incorporate 1933 Act claims. It did not do so. *Inclusio unius est exclusio alterius:* the absence of such an exclusion leads to the conclusion that Section 1452(a) removal may apply to the securities claims at issue here. *See* ***329***United States v. Tappin,* 205 F.3d 536, 540 (2d Cir.2000) (applying this rule of statutory construction).

FN32. Intervenors argue that Section 22(a) should provide an exception for Section 1452 removal. Intervenors provide no support for this contention. Intervenors' treatment would render Section 1452 a mere exception to an exception from removal, a result without any basis in the statutory language and at odds with the purpose and history of the relevant statutes.

Interpreting Section 1452 to allow removal for all actions over which there is bankruptcy jurisdiction, saving two delineated exceptions, is consistent with the purpose of the Bankruptcy Code. The Second Circuit has observed, " Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings" and that " both the Supreme Court and this court have ... broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments." *In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir.1995); *see also In re Best Prods., Co.,* 68 F.3d 26, 31 (2d Cir.1995). Broadly construing the federal courts' bankruptcy jurisdiction is essential to their ability to preserve assets and reorganize the estate, particularly where there is a " complex factual scenario, involving multiple claims, policies and insurers." *In re United States Lines, Inc.,* 197 F.3d 631, 641 (2d Cir.1999) (discussing enforcement of arbitration clause). The efficiency and reorganization goals of the Bankruptcy Code require interpreting Section 1452 in favor of federal jurisdiction and removal except in the limited cases it expressly excepts.

The NYCERS Defendants correctly rely on *Gonsalves v. Amoco Shipping Co.,* 733 F.2d 1020 (2d Cir.1984), as supporting their removal of these actions. *Gonsalves* considered the explicit statutory bar to the removal of Jones Act claims. The Jones Act removal bar, contained in 28 U.S.C. § 1445(a), like Section 22(a), provides plaintiff with a choice-of-forum privilege. *See* 28 U.S.C. § 1445(a). It prevents the removal to federal court of Jones Act

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims filed in state court. *Gonsalves,* 733 F.2d at 1022.

In *Gonsalves*, the non-removable Jones Act claim was joined with a claim for unseaworthiness, under general maritime law, and also sought maintenance and cure. No explicit bar to removal applies to either of these latter two claims, and diversity jurisdiction existed over the maintenance and cure claim. The defendant removed pursuant to Sections 1441(a) and 1441(c), the former of which allows for the removal of an action over which federal courts have original jurisdiction, and the latter of which provides that " [w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed...." 28 U.S.C. § 1441(c). The Second Circuit found that the maintenance and cure and Jones Act claims were not sufficiently " independent" to defeat the choice-of-forum preference found in Section 1445(a). *Gonsalves,* 733 F.2d at 1026. The Second Circuit nonetheless declined to hold that Section 1445(a) overrides Section 1441(c). *Id.* In other words, the Second Circuit found that the Jones Act removal bar provided an express exception to removal under Section 1441(a), but did not create an exception from the " additional removal jurisdiction" available under Section 1441(c) for cases that otherwise could not be removed. *Id.* at 1022 (citation omitted). Applied to Section 22(a), a similar analysis would mean that Section 22(a)'s bar to the removal of 1933 Act claims would not prevent an action from being removed to federal court if there was a separate, appropriate basis for the removal.

Indeed, the principal case on which *Gonsalves* relied for this analysis, and a case from which it quoted extensively, *U.S. Indus., Inc. v. Gregg,* 348 F.Supp. 1004 (D.Del.1972), used this very analysis to ***330** conclude that while 1933 Act claims were non-removable pursuant to Section 22(a), when they were joined with a single, separate and independently removable claim, they could be removed pursuant to Section 1441(c). The *Gregg* court held that, although Section 22(a) was one of the express exceptions to Section 1441(a) removal, it did not trump Section 1441(c). *Id.* at 1015-16.

Like Section 1441(c), Section 1452(a) provides for the removal of otherwise non-removable claims. Specifically, Section 1452(a) allows for the removal of claims " related to" a bankruptcy even if those claims would not otherwise be subject to federal jurisdiction. Like Section 1441(c), Section 1452(a) is not " trumped" by Section 22(a). Although Section 22(a) for the 1933 Act, like Section 1445(a) for the Jones Act, expresses a preference for allowing the plaintiff to choose the forum, Section 1452(a) reflects a preference for coordinating bankruptcy-related actions in the federal courts. Here, the conditions for bankruptcy jurisdiction have been met, and the action does not fall within the two limited exceptions to removal under Section 1452(a).[FN33]

FN33. None of the cases on which Intervenors rely is sufficiently persuasive to indicate that the foregoing analysis should not govern here. *See McRae v. Lykes Bros. S.S. Co.,* No. Civ. A. 98-3240, 1998 WL 898467 (E.D.La. Dec. 22, 1998); *Ariail Drug Co. v. Lease Partners, Corp.,* No. Civ. A. 96-G-0708-S, 1996 WL 1060890 (N.D.Ala. May 23, 1996); *Kinder v. Wisconsin Barge Line,* 69 B.R. 11 (E.D.Mo.1986).

### III. Defendants' Consent to Removal

[9] The Intervenors contend that a remand is necessary unless each defendant consents to the removal. This argument is not being pursued with respect to the NYCERS action.

Section 1452(a) states that " *a party* may remove" a claim to federal court if it is related to a bankruptcy. The language of Section 1452(a) does not on its face indicate that the consent of all defendants is required to remove the action. It does not even require that the removal be initiated by a defendant or receive the consent of any defendant since it refers to " a party." In contrast, the general removal provision, Section 1441(a), refers to removal by " defendant or defendants" and has been interpreted to require that all defendants join in the removal petition. *See Still v. DeBuono,* 927 F.Supp. 125, 129 (S.D.N.Y.1996).

[10] It seems clear that Section 1452(a) does not require the defendants' unanimous consent to removal. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 661 (4th Cir.1985). It is not necessary, however, to resolve this issue now. Intervenors contend that the Andersen Defendants did not consent to the removal of some unspecified actions. It

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is not clear, however, whether the Andersen Defendants had even been served in those actions at the time of removal. Even under Section 1441(a), consent is not required from a defendant who has not been served at the time of removal. *See Varela v. Flintlock Construc., Inc.,* 148 F.Supp.2d 297, 301 (S.D.N.Y.2001) (DLC); *Ell v. S.E.T. Landscape Design, Inc.,* 34 F.Supp.2d 188, 194 (S.D.N.Y.1999).[FN34]

FN34. Andersen Defendants filed an opposition to the motion to remand on January 17, 2003.

**IV. Mandatory Abstention**

[11][12] The mandatory abstention requirement in Section 1334(c)(2) does not apply to the NYCERS action.[FN35] Section 1334(c)(2) states

FN35. NYCERS abandoned its argument under Section 1334(c)(2) in its reply brief. The Intervenors do not rely at any point on Section 1334(c)(2) abstention.

***331** Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction.

28 U.S.C. 1334(c)(2). A party seeking mandatory abstention must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is " related to" but not " arising in" a bankruptcy case or " arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be " timely adjudicated" in state court. *See In re Adelphia Commun. Corp.,* 285 B.R. 127, 141 (Bankr.S.D.N.Y.2002); *Renaissance Cosmetics, Inc. v. Development Specialists Inc.,* 277 B.R. 5, 12 (S.D.N.Y.2002).

A party is not entitled to mandatory abstention if it fails to prove any *one* of the statutory requirements. *See, e.g., In re Adelphia Commun. Corp.,* 285 B.R. at 143-44. Here, NYCERS has failed to satisfy its burden to prove at least two of the statutory requirements: that its action could be timely adjudicated in state court, or that Section 1334 provides the sole basis for jurisdiction.[FN36]

FN36. Construing the language of Section 1334(c)(2), some courts have determined that Section 1334(c)(2) mandatory abstention cannot be invoked unless there is an on-going case in state court separate from the removed action. *See In re Adelphia Commun. Corp.,* 285 B.R. 127, 140-43 (Bankr.S.D.N.Y.2002). There is an alternative parsing of the statute, however, that would not require any second action to exist. Since Section 1452(a) permits the removal of any " claim or cause of action," 28 U.S.C. § 1452(a), it is possible to abstain from litigating the removed claim, and to allow the remainder of the state court " action" to proceed. The language of Section 1334(c)(2) would support such a reading. It reads in pertinent part,

Upon timely motion of a party *in a proceeding based upon a State law claim or State law cause of action,* ... the district court shall abstain from hearing such proceeding *if an action is commenced* and can be timely adjudicated in a state forum....

28 U.S.C. § 1334(c)(2) (emphasis supplied). Since it is clear for entirely separate reasons that Section 1334(c)(2) is inapplicable, it is unnecessary to decide whether Section 1334(c)(2) requires that a separate action exist in state court where, as here, it is appropriate to remove the entire action.

First, NYCERS asserts that " the gargantuan size of the WorldCom bankruptcy virtually guarantees that this action will be more quickly adjudicated in the State court." This naked assertion is inadequate to carry the point. *See Renaissance Cosmetics,* 277 B.R. at 14. The size of the WorldCom bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation suggest the contrary: remanding to state court could slow the pace of litigation dramatically. If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requiring common issues to be resolved separately by courts across the country. NYCERS has not shown that its case could be both fairly and timely

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

293 B.R. 308 Page 21

293 B.R. 308, Fed. Sec. L. Rep. P 92,285, 30 Employee Benefits Cas. 2076

**(Cite as: 293 B.R. 308)**

adjudicated by a state court in such circumstances.

As significantly, the mandatory abstention provision is not available because the NYCERS action could have been commenced in federal court. It pleads two ***332** federal securities law claims under the 1933 Act. The 1933 Act gives concurrent jurisdiction over those claims to both federal and state courts. *See* 15 U.S.C. § 77v(a); *United States v. Markiewicz,* 978 F.2d 786, 802-03 (2d Cir.1992) (concurrent jurisdiction does not preclude exercise of federal jurisdiction).

### V. Discretionary Abstention

[13] NYCERS argues that, even if there is subject matter jurisdiction over this action, the Court should exercise its discretion to abstain pursuant to Section 1334(c)(1). Section 1334(c)(1) provides that " [n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... related to a case under title 11." 28 U.S.C. § 1334(c)(1).

[14][15] Section 1334(c)(1) is informed by and interpreted according to " principles developed under the judicial abstention doctrines." *In re Pan American Corp.,* 950 F.2d 839, 846 (2d Cir.1991). Those principles provide that federal courts have a " virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and may abstain only for a few " extraordinary and narrow exception[s]." *Id.* at 813 (citation omitted); *see also Woodford v. Community Action Ctr.,* 239 F.3d 517, 522 (2d Cir.2001). The various abstention doctrines " share a common matrix: a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *In re Pan Am.,* 950 F.2d at 846 (citation omitted). Those considerations include comity and federalism, judicial economy, and efficiency. *See Colorado River,* 424 U.S. at 814-19, 96 S.Ct. 1236; *Woodford,* 239 F.3d at 522; *In re Pan Am.,* 950 F.2d at 846.

[16] Courts in this district commonly consider twelve factors in addressing a motion based on Section 1334(c)(1):
(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced instate court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted " core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Masterwear Corp.,* 241 B.R. at 520. The balance of these factors weighs heavily against abstention. The most important considerations in this regard are the following.

NYCERS has not identified any unique or unsettled issues of state law that warrant abstention based on comity concerns. (Intervenors emphasize that " there are *no state law claims of any kind*" asserted in ***333** any of the Milberg Weiss Actions.) FN37

FN37. The analysis *RSA I* and *RSA II*, two decisions in which a federal court exercised its discretion to abstain and on which NYCERS and Intervenors place great reliance, does not persuade this Court that it should in the circumstances presented here take the extraordinary step of declining to exercise jurisdiction. Among other things, unlike the case in *RSA II*, subject matter jurisdiction is clearly established here.

Important federal interests counsel against abstention. The NYCERS action contains two federal law claims. In *Woodford,* 239 F.3d 517, the Second Circuit cautioned that " [e]ven where there are some state-law issues, the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction. *Id.* at 523 (citation omitted) (discussing *Colorado River* abstention). The Court added that " if there is any substantial doubt as to whether complete and prompt protection of the federal rights is available in the state

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceeding, dismissal would be a serious abuse of discretion." *Id.* (citation omitted); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In addition, it is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists. The MDL panel has consolidated scores of cases before this Court to promote the expeditious and efficient resolution of the claims arising from the collapse of WorldCom. The litigation is proceeding apace. Motions to remand, to sever and to dismiss have been fully briefed, and preliminary but important discovery issues addressed. With the consolidation of the litigation in one court, the motion practice and discovery process can be managed to protect the rights of all parties and to preserve, to the extent possible, the maximum amount of assets for recovery by plaintiffs with meritorious claims.FN38

FN38. The Intervenors contend that there will be no efficiencies from consolidation since the Milberg Weiss Actions concern bond offerings not encompassed by the *Securities Litigation*, specifically, those in April 1998, August 1998 and December 2000. These three bond offerings are not the basis for the claims made in the Complaint. The Complaint seeks damages from the WorldCom bond offerings of May 2000 and May 2001. These two bond offerings, however, are also at the heart of both the NYCERS action and the Milberg Weiss Actions. The May 2000 and May 2001 bond offerings are the only two bond offerings at issue in the NYCERS action, and one or both of these two offerings are at issue in eleven out of the twelve Milberg Weiss Actions whose complaints have been submitted with this motion.

The Intervenors represent that the litigation of the claims addressed to the three bond offerings of April 1998, August 1998 and December 2000, will be " well beyond the scope of the other pending actions that have been sent to this Court." The Intervenors are wrong. All of the claims in these lawsuits stem from a course of conduct at WorldCom which is alleged to have resulted in multiple misrepresentations about WorldCom's financial condition in public statements and filings over several years. There is no suggestion by the Intervenors that the false statements that they allege were made in connection with these three bond offerings arose from any separate course of conduct. To the contrary, as even a brief examination of the complaints filed in the Milberg Weiss Actions illustrates, they are asserting that the wrongdoing that led to the actionable conduct underlying their claims for recovery based on the May 2000 and May 2001 bond offerings is also responsible for the claims they bring for the other bond offerings.

In contrast, if this Court were to abstain pursuant to Section 1334(c)(1) and remand the litigation originally filed in state court, motion practice and discovery would proceed separately in many jurisdictions.FN39 ***334** The litigation that would ensue in the various fora would be entirely duplicative and wasteful. It would eat into the funds available to pay the alleged victims identified in this litigation. As deep as some of the pockets in this action may be, they are in all likelihood not limitless. A remand would encourage a race for assets, a race that may deprive many victims of the alleged fraud of their fair share of any recovery.

FN39. The Defendants point out that, if these actions are remanded, they will seek a stay. The analysis in this Opinion is not dependant on the likelihood of that application being made or granted.

Finally, it is important to weigh the impact of any remand on the ability of WorldCom to reorganize. While WorldCom's Trustee has not taken a position on this motion, the efficient and expeditious resolution of this litigation, and of its concomitant claims for contribution and indemnification, will assist the reorganization effort. Considering all of these factors, the Court declines to abstain pursuant to Section 1334(c)(1) and will exercise its jurisdiction.

## VI. Equitable Remand

NYCERS also urges a remand under the equitable remand provisions of Title 28, United States Code, Section 1452(b). Section 1452(b) provides that " the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

293 B.R. 308                                                                                      Page 23

293 B.R. 308, Fed. Sec. L. Rep. P 92,285, 30 Employee Benefits Cas. 2076

**(Cite as: 293 B.R. 308)**

equitable remand analysis, as the parties agree, is essentially the same as the Section 1334(c)(1) abstention analysis. *See Nemsa,* 1995 WL 489711, at *9. For the reasons already stated, this Court declines to remand the NYCERS action.

*Conclusion*

The motion made by NYCERS to remand or abstain is denied.

SO ORDERED.

S.D.N.Y.,2003.
In re WorldCom, Inc. Securities Litigation
293 B.R. 308, Fed. Sec. L. Rep. P 92,285, 30 Employee Benefits Cas. 2076

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.